# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BINAH GORDON, KAY MAYERS, ALMA AVALLE, JAMIE HOMNICK, GENNIFER HERLEY and S.N., *individually and on behalf of all similarly situated individuals*,<br><br>Plaintiffs,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No. 3:24-CV-01447-VAB |

## DECLARATION OF CHERYL ARONSON

I, Cheryl Aronson, do hereby declare and state as follows:

1. I have worked for defendant Aetna Life Insurance company or other affiliates (collectively, "Aetna") for approximately 28 years. I am currently an Account Director at Aetna. As an Account Director, my job duties include knowledge of the Metropolitan Transportation Authority Medical Plan (the "MTA Plan"). In addition, I am familiar with Aetna's business practices and processes related to the MTA Plan.

2. This declaration is submitted in support of Aetna's surreply in further opposition to plaintiffs Dr. Herley and Dr. Homnick's motion for preliminary injunction. I have personal knowledge of the following facts. If called as a witness in this action, I could and would testify competently to these facts.

3. MTA, as Dr. Herley's Plan Sponsor, determines which procedures the MTA Plan will and will not cover generally; Aetna, as third party administrator, then applies those plan coverage directives to individual member requests as they arise. Although the MTA Plan Summary

Plan Description (the "SPD") does not explicitly talk about coverage for gender affirming care, the SPD is not the only source of Plan Sponsor directives regarding what procedures the MTA Plan does and does not cover.

4. MTA provided Aetna with plan coverage guidance in at least four ways: (1) through the SPD, (2) benefit elections derived from the MTA Plan's Single Source Document (a series of installation instructions conveying the employer's decisions regarding specific coverage provisions), (3) emails from MTA instructing Aetna on how to handle specific coverage questions (sometimes called "deviations") and (4) any state mandates that MTA instructs Aetna to follow.

5. In the case of coverage for gender affirming care, the SPD has been supplemented over time with additional coverage directives from MTA that are not listed in the SPD. Aetna, as third-party administrator, is contractually obligated to follow MTA's coverage directives, regardless of whether they are specified in the SPD.

Pursuant to 28 U.S.C. § 1746(2), I declare, under penalty of perjury under the laws of the United States of America that the above statements are true and correct to the best of my knowledge, information, and belief.

Executed this 5th day of May, 2025
Milford, CT

*Cheryl Aronson*
Cheryl Aronson