## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

BINAH GORDON, KAY MAYERS,
ALMA AVALLE, JAMIE HOMNICK,
GENNIFER HERLEY and S.N.,
*individually and on behalf of all*
*similarly situated individuals*,

        Plaintiffs,

v.

AETNA LIFE INSURANCE COMPANY,

        Defendant.

Case No. 3:24-CV-01447-VAB

May 9th, 2025

## DEFENDANT AETNA'S SURREPLY IN FURTHER OPPOSITION TO
## MOTION FOR PRELIMINARY INJUNCTION BY
## PLAINTIFFS JAMIE HOMNICK AND GENNIFER HERLEY

**TABLE OF CONTENTS**

A.    The medical literature cited in Plaintiffs' brief only reemphasizes that current data are insufficient to establish the efficacy of GAFR. ................................................................. 1

B.    Plaintiffs' plan sponsors directly control what benefits are offered under the terms of their plans.......................................................................................................................... 3

C.    Plaintiffs have an external review available to them, which is quick and effective opportunity for the independent review they are seeking. .................................................. 4

**CONCLUSION** .............................................................................................................. **5**

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*FMC Corp. v. Holliday*,
   498 U.S. 52 (1990).........................................................................................................3

*Liberty Mut. Ins. Co. v. Donegan*,
   746 F.3d 497 (2d Cir. 2014)..........................................................................................3

*Metro. Life Ins. Co. v. Massachusetts*,
   471 U.S. 724 (1985).......................................................................................................3

*Williby v. Aetna Life Ins. Co.*,
   867 F.3d 1129 (9th Cir. 2017) .......................................................................................3

Defendant Aetna Life Insurance Company ("Aetna") respectfully submits this surreply in in response to Plaintiffs Jamie Homnick and Gennifer Herley's Reply in Support of their Motion for Preliminary Injunction [Dkt. 114] (the "Reply").

**A.    The medical literature cited in Plaintiffs' brief only reemphasizes that current data are insufficient to establish the efficacy of GAFR.**

Plaintiffs offer a rebuttal declaration from their expert, Dr. Gorton, who refers Aetna to five articles published since 2022 that he says provide "additional evidence with regards to improvement in psychosocial outcomes" produced by facial gender-affirming surgery. *See* Reply, Exhibit 1 [Dkt. 114-1] at ¶ 58.[1]  Those articles, however, merely reemphasize the current paucity of quality data demonstrating the efficacy of facial surgery as a treatment for gender dysphoria.  *See* Rebuttal Declaration of Robert McDonough, M.D. ("McDonough Decl."), Exhibit A hereto, which addresses each of the new articles.

Those articles reiterate that current studies on the effectiveness of facial feminization surgery rely on poorly-validated, general and subjective quality of life surveys, like those utilized by Dr. Gorton, rather than more specific and objective measures designed to be specific to facial surgery and validated for use in a transfeminine patient population.  *See* McDonough Decl. at ¶¶ 3-7.  Although different authors propose various methodologies, one 2023 study (Alper) notes, "Unfortunately, there are no widely accepted or validated methods."  *Id.* at 5.

Another 2023 study (Caprini) candidly acknowledged the central issue: "The question of whether patients were ultimately improved with long-term gender-affirming surgery will require additional study."  *Id.* at ¶ 3.  Those authors further observed, "Frequently, facial gender-affirming surgeries are classified as cosmetic due to a lack of high-level evidence in

---

[1] Both parties refer to medical literature in their briefing and declarations. That literature is publicly available but, should the Court desire, Aetna can provide copies of the literature it references for the Court's convenience.

quality of life (QoL) improvements." *Id.* at ¶ 4. Indeed, the most recent and comprehensive systematic review of the literature addressing facial feminization surgery (Uhlman)—which was published in 2024 but that Dr. Gorton does not acknowledge—reviewed 12 different outcome measures utilized in various studies of facial gender-affirming surgery and concluded that "[n]one of these outcome measures were found to be valid, reliable, and responsive in individuals who had undergone FFS, as the outcome measures had not been assessed for this patient population." *Id.* at ¶ 10.

Plaintiffs and their experts simply are ahead of the science. The literature on facial feminization surgery is recent and evolving, and the substantial research and consensus supporting the efficacy of other gender-affirming treatments and procedures for the treatment of gender dysphoria simply does not yet exist for facial surgery. Aetna continues to monitor the evolving science, but Plaintiffs and their experts overstate the current data.

Finally, on May 1, 2025, the U.S. Department of Health and Human Services ("HHS") issued a report, which includes a comprehensive, long-term assessment of the WPATH guidelines for gender-affirming procedures that reiterates and expands on previously reported criticisms of the WPATH process and recommendations.[2] *Id.* at ¶ 11. The report notes that a 2024 systematic review of international guideline quality commissioned by England's National Health Service assessed the WPATH guidelines as "lacking in developmental rigor" and rated WPATH as "not recommended for implementation." *Id.* The report also found, "Internal documents reveal that [WPATH] SOC-8 authors manipulated guideline language with the explicit aim of shaping court rulings, legislative actions, and insurance coverage decisions,

---

[2] Treatment for Pediatric Gender Dysphoria: Review of Evidence and Best Practices, Department of Health and Human Services, May 1, 2025, https://opa.hhs.gov/sites/default/files/2025-05/gender-dysphoria-report.pdf.

revealing a clear departure from the principles of unbiased, evidence-driven clinical guideline development." *Id.* Specifically, based upon a review of correspondence exchanged among WPATH committee members, the HHS report found that "a key motivation for including a 'medical necessity' statement in the guidelines was described as a strategic move to provide 'a tool for our attorneys to use in defending access to care' within the U.S. legal context." *Id.*

**B.**     **Plaintiffs' plan sponsors directly control what benefits are offered under the terms of their plans.**

Plaintiffs' Reply incorrectly argues that the Bausch & Lomb Plan (Dr. Homnick's plan) and the MTA Plan (Dr. Herley's Plan) both fail to mention or exclude GAFR, and both plans expressly defer to Aetna to enforce its CPB 615. Reply at 4-5. This misconstrues the way self-funded plans operate. Both Bausch & Lomb and MTA, as plan sponsors, determined which procedures their respective plans will cover. See Declaration of Cheryl Aronson ("Aronson Decl."), Exhibit B hereto, ¶ 3, Declaration of Hannah Goellner ("Goellner Decl."); Exhibit C hereto, ¶ 3. Aetna, as third party administrator, then applies those coverage directives to individual member requests as they are submitted to Aetna. Aronson Decl. ¶ 3; Goellner Decl. ¶ 3. With regard to coverage for gender affirming care, both the Bausch & Lomb and MTA SPDs have been supplemented over time with coverage directives from the respective plan sponsors—which Aetna is contractually obligated to follow—that are not listed in the SPDs themselves. Aronson Decl. ¶ 5; Goellner Decl. ¶ 4.

This is consistent with the way self-funded plans work generally; the self-funding plan sponsor designs its own coverage plan with benefit claims paid from its own coffers, and retains a third-party administrator ("TPA") to process claims. *Liberty Mut. Ins. Co. v. Donegan*, 746 F.3d 497, 501 (2d Cir. 2014); *Williby v. Aetna Life Ins. Co.*, 867 F.3d 1129, 1131 (9th Cir. 2017);

*see also Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732 (1985); *FMC Corp. v. Holliday*, 498 U.S. 52, 54 (1990) (describing self-funded plans).

This was the case under both Bausch & Lomb and MTA's agreements with Aetna. Under Bausch & Lomb's Master Services Agreement with Aetna, as plan administrator Bausch & Lomb "retains complete authority and responsibility for the Plan, its operation, and the benefits provided thereunder." See Dkt. 86-3 at 1-2. Bausch & Lomb also has "ultimate responsibility for the content of the Plan and compliance with law in connection therewith." *Id.* at 10. Aetna's responsibility, however, was merely to "process claims for Plan benefits . . . in a manner consistent with the terms of the Plan." *Id.* Similarly, under MTA's Administrative Services Agreement with Aetna, MTA has "sole authority over the design of the plan" and "possess[es] ultimate discretionary authority to decide . . . benefits covered under the plan." Dkt. 87-2 at 7. Aetna is required to "process Claims . . . according to the terms and conditions of the Plan documents and this Agreement." *Id.* at 9. Aetna is bound by these agreements to apply the terms of the respective plans as written. It does not have the ability to unilaterally expand the plans to provide coverage for benefits the plan sponsors themselves do not wish to cover.

**C.      Plaintiffs have an external review available to them, which is quick and effective opportunity for the independent review they are seeking.**

Disingenuously, Plaintiffs' Reply questions whether Dr. Homnick and Dr. Herley even have an external review available to them. Reply at 13. Aetna's opposition brief and supporting declarations make abundantly clear that both Plaintiffs presently have the ability to seek an external review. See Aetna Opposition Brief [Dkt. 81] at 30-31 ("Both Plaintiffs' Plans offer a process whereby Plaintiffs can have their claims reviewed by an independent External Review Organization (ERO) that follows the Federal ERO process. . . . Both Plaintiffs still have available to them the opportunity to seek the independent ERO review their Plans offer."); *see also* Dkt 82 at ¶ 3. Aetna,

once again, reiterates that both Dr. Herley and Dr. Homnick had medical necessity denials that are eligible for an individualized external review under the terms of their plans. See Declaration of Deborah Rudolph ("Rudolph Decl."), Exhibit D hereto, ¶ 6. All Plaintiffs must do to begin the ERO process is ask; Aetna cannot initiate the process for them. *Id.*

Additionally, Plaintiffs cite the 24.1% federal ERO overturn rate and presumptively conclude that engaging in the external review process would be futile, and any external reviewer will defer to Aetna's CPB 615. Reply at 12-13. In response, Aetna has reviewed its records of external review requests from 2023 to the present, which showed nine instances of members requesting overturn of a coverage denial for gender affirming facial surgeries. Rudolph Decl. ¶ 4. Eight of the nine previously denied requests were overturned after an independent, individualized evaluation by an external reviewer. *Id.* An external review would not be futile for Plaintiffs, but rather it would provide them a quick and effective opportunity for the independent review they are seeking.

## CONCLUSION

For the foregoing reasons, Aetna respectfully requests the Court deny Plaintiffs' motion for preliminary injunction.

Dated at Hartford, Connecticut this 9th day of May, 2025.

*Theodore J. Tucci*
Theodore J. Tucci (ct05249)
Abby M. Warren (ct30077)
Christopher A. Costain (ct31612)
Robinson & Cole LLP
One State Street
Hartford, CT 06103-3195
Tel.: (860) 275-8200
Fax: (860) 275-8299
ttucci@rc.com
awarren@rc.com
ccostain@rc.com

Sarah Reeves (*pro hac vice*)
Earl B. Austin (*pro hac vice*)
Baker Botts LLP
30 Rockefeller Plaza
New York, NY 10112
Tel.: (212) 408-2649
Fax: (212) 408-2449
sarah.reeves@bakerbotts.com
earl.austin@bakerbotts.com

*Counsel for Defendant*
*Aetna Life Insurance Company*