## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BINAH GORDON *et al.*, | |
| Plaintiffs, | |
| v. | No. 3:24-cv-01447-VAB |
| AETNA LIFE INSURANCE COMPANY, | |
| Defendant. | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT ..................................................................................................................... 13

I.      PLAINTIFFS HAVE STANDING TO CHALLENGE AETNA'S POLICY. .................. 14

    A.      Plaintiffs Have Sufficiently Pleaded Injuries-In-Fact. ........................................... 14

    B.      Plaintiffs Have Pleaded Injuries Traceable to CPB 0615. ..................................... 18

    C.      Plaintiffs' Requested Compensatory and Equitable Relief is Redressable
       by Aetna. ............................................................................................................... 20

         1.      *The economic losses suffered by the Damages Plaintiffs are
            redressable by Aetna.* ................................................................................ 20

         2.      *The Injunctive Relief Plaintiffs' claims for equitable relief are
            redressable by Aetna.* ................................................................................ 22

II.     AETNA IS THE PROPER DEFENDANT IN THIS ACTION. ........................................ 25

    A.      Aetna is the Proper Defendant in this Action and No Absent Parties Must
       Be Joined Under Rule 19. ..................................................................................... 27

         1.      *The absent parties are not necessary parties under Rule
            19(a)(1)(A).* ............................................................................................... 27

         2.      *The absent parties are not necessary parties under Rule
            19(a)(1)(B).* ............................................................................................... 31

    B.      The Absent Parties Are Not Indispensable. ........................................................... 32

III.    AETNA'S ATTEMPTS TO DISMISS MS. GORDON'S AND MS. AVALLE'S
     CLAIMS UNDER RULE 12(B)(6) FAIL. ...................................................................... 34

    A.      Ms. Gordon is Not Required to Sue OPM for a Section 1557 Claim. .................... 34

    B.      Ms. Avalle Is Not Required to Exhaust Administrative Remedies Under
       Section 1557. ........................................................................................................ 37

CONCLUSION ................................................................................................................... 38

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004)........................................................ 38

*Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351 (2d Cir. 2015) ................. 33

*Barrows v. Becerra*, 24 F.4th 116 (2d Cir. 2022). .................................................... 14

*Barry v. City of New York*, 933 F. Supp. 2d 416 (E.D.N.Y. 2013)........................................ 15, 17

*Baur v. Veneman*, 352 F.3d 625 (2d Cir. 2003) ........................................................ 15

*Berton v. Aetna Inc.*, No. 23-cv-01849, 2024 WL 869651

    (N.D. Cal. Feb. 29, 2024)........................................................ 20, 28, 29, 30

*C.P. by & through Pritchard v. Blue Cross Blue Shield of Ill.*, No. 3:20-cv-06145,

    2022 WL 17788148, (W.D. Wash. Dec. 19, 2022) ........................................ 38

*Cacchillo v. Insmed, Inc.*, 638 F.3d 401 (2d Cir. 2011)........................................... 20

*Carr v. United Healthcare Servs. Inc.*, No. C15-1105, 2016 WL 7716060

    (W.D. Wash. May 31, 2016) .................................................... 28

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016)........................................ 17, 18, 19

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ................................................ 15

*City of New York by and through FDNY v. Henriquez*, 98 F.4th 402

    (2d Cir. 2024)........................................................ 25

*Conkright v. Frommert*, 559 U.S. 506 (2010).................................................... 38

*Costin v. Glens Falls Hosp.*, 103 F.4th 946 (2d Cir. 2024) ........................................ 16

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006).................................................. 14

*Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286 (3d Cir. 2005).................................. 17

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59 (1978) .................................... 22

*Errico v. Stryker Corp.*, No. 10 Civ. 3690, 2010 WL 5174361 (S.D.N.Y. Dec. 14, 2010) .......... 30

*Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931 (W.D. Wis. 2018) ............................ 16

*Friends of Animals, Inc. v. City of Bridgeport Police Dep't*, No. 06-cv-1708,

    2007 WL 201245 (D. Conn. Jan. 23, 2007) .................................................................... 31

*Greenlaw v. United States*, 554 U.S. 237 (2008) ........................................................................ 25

*Harty v. W. Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022) .................................................... 12, 13

*HCA Genesis, Inc. v. Group Health, Inc*, No. 7:06-cv-150, 2006 WL 561243

    (N.D.N.Y. Mar. 6, 2006) ................................................................................................ 37

*Hicklin v. Precynthe*, No. 4:16-cv-01357, 2018 WL 806764 (E.D. Mo. Feb. 9, 2018) ............... 16

*In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953 (N.D. Cal. 2016) ........................... 36

*In re Caesars Palace Sec. Litig.*, 360 F. Supp. 366 (S.D.N.Y. 1973) .................................... 13, 31

*J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107 (2d Cir. 2004) ............................................ 13

*Jaghory v. N.Y. Dep't of Educ.*, 131 F.3d 326 (2d Cir. 1997) ..................................................... 12

*Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*, 815 F.2d 240 (2d Cir. 1987) ................................ 33

*Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588 (2d Cir. 1993) .............................. 38

*Kermanshah v. Kermanshah*, No. 08-CV-409, 2010 WL 1904135

    (S.D.N.Y. May 11, 2010) ............................................................................................... 30

*Kraebel v. New York City Department of Housing Preservation & Development*,

    No. 90 CIV 4391, 1994 WL 132239 (S.D.N.Y. Apr. 14, 1994) ................................. 30, 32

*Kulwicki v. Aetna Life Ins. Co.*, 720 F. Supp. 3d 108 (D. Conn. 2024) ............................... *passim*

*Lacewell v Off. of Comptroller of Currency*, 999 F.3d 130 (2d Cir. 2021) ................................ 15

*Langer v. Hartland Bd. of Educ.*, No. 3:22-cv-1459, 2023 WL 6140792

(D. Conn. Sept. 20, 2023) ....................................................................................... 18, 19

*Lea v. Republic Airlines, Inc.*, 903 F.2d 624 (9th Cir. 1990)......................................................... 38

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ....................................................................... 14, 15

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ................................................................................ 18

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377 (2d Cir. 2006) .......... 27, 31, 32

*Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70 (S.D.N.Y. Nov. 14, 2006).......... 31, 34

*Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*,

    No. 13-cv-6551, 2014 WL 4058321 (S.D.N.Y. Aug. 15, 2014)...................................... 37

*Meisels v. Meisels*, No. 19-cv-4767, 2024 WL 3889007 (E.D.N.Y. Aug. 20, 2024) .................. 30

*Moore v. PaineWebber, Inc.*, 189 F.3d 165 (2d Cir. 1999) .......................................................... 12

*Murthy v. Missouri*, 603 U.S. 43 (2024)............................................................................... 24, 25

*Negron v. Patel*, 6 F. Supp. 2d 366 (E.D. Pa. 1998)..................................................................... 36

*Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030 (9th Cir. 1983)........................... 31

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .............................................................................. 15, 17

*Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41 (2d Cir. 1996)...................................................... 31

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) ..................................................................... 38

*Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102 (1968) ................................ 32

*Quinn v. Fishkin*, 117 F. Supp. 3d 134 (D. Conn. 2015) ............................................................. 13

*Raines v. Byrd*, 521 U.S. 811 (1997) ........................................................................................... 15

*Roach v. Mail Handlers Ben. Plan*, 298 F.3d 847 (9th Cir. 2002) .............................................. 36

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) ...................................................................... 18

*Rumble v. Fairview Health Servs.*, No. 14-cv-2037, 2015 WL 1197415

    (D. Minn. Mar. 16, 2015)............................................................................................... 38

*Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945 (9th Cir. 2020) ........................... 35

*Schnabel v. Sullivan*, No. 04-cv-5076, 2006 WL 8439516 (E.D.N.Y. Feb. 3, 2006)................. 13

*Scott v. St. Louis Univ. Hosp.*, 600 F. Supp. 3d 956 (E.D. Mo. 2022)........................................ 38

*Shanshan Shao v. Beta Pharma, Inc.*, No. 3:14-CV-01177, 2017 WL 4955506

       (D. Conn. Nov. 1, 2017) ........................................................................................ 33

*Spirit Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269 (2008) ............................................... 22

*Takeda v Nw. Nat. Life Ins. Co.*, 765 F.2d 815 (9th Cir. 1985)................................................. 34

*Tovar v. Essentia Health*, 342 F. Supp. 3d 947 (D. Minn. 2018) ........................................ 16, 38

*Tovar v. Essentia Health*, 857 F.3d 771 (8th Cir. 2017)...................................................... 19, 20

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020) ............................................................. 25

*Vega-Ruiz v. Montefiore Med. Ctr.*, No. 17-cv-1804, 2019 WL 3080906

       (S.D.N.Y. July 15, 2019) ...................................................................................... 16

*Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721 (2d Cir. 2000).......................................... 26, 32, 33

*Walker v. Azar*, 480 F. Supp. 3d 417 (E.D.N.Y. 2020) ............................................................. 16

*Yonofsky v. Wernick*, 362 F. Supp. 1005 (S.D.N.Y. 1973) ........................................................ 29

**Statutes**

29 U.S.C. § 1104............................................................................................................................ 38

29 U.S.C. § 1144...................................................................................................................... 37, 38

42 U.S.C. § 18116.................................................................................................................... 35, 38

5 U.S.C. § 8901............................................................................................................................. 36

Section 1557 of the Affordable Care Act ("ACA")................................................................ *passim*

**Other Authorities**

13A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3531.4

v

(3d ed. 2025) ................................................................................................. 17

7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1609

(3d ed. 2015) ................................................................................................. 33

Federal Rules of Civil Procedure Rule 19 ............................................................ *passim*

*Medical clinical policy bulletins*, Aetna Inc., https://perma.cc/C5QQ-SDQS

(last visited Mar. 3, 2025) ................................................................................ 5

**Treatises**

Restatement (Second) of Torts § 920A(2) (Am. Law Inst. 1979) ................................ 21

**Regulations**

45 C.F.R. § 92.3 .................................................................................................... 38

5 C.F.R. § 890.107 ....................................................................................... 34, 35, 36

## INTRODUCTION

Plaintiffs Binah Gordon, Kay Mayers, Alma Avalle, Jamie Homnick, Gennifer Herley, and S.N.[1] ("Plaintiffs") brought this action against Defendant Aetna Life Insurance Company ("Aetna") for its discriminatory failure to provide coverage for their medically necessary gender-affirming facial reconstruction ("GAFR") surgeries and procedures. Plaintiffs allege Aetna's coverage determination is based on sex, which subjects Aetna to liability under Section 1557 of the Affordable Care Act ("ACA"). The essence of Plaintiffs' complaint is straightforward: Aetna categorically excludes coverage for GAFR and Aetna is the party responsible for determining medical necessity and making coverage determinations within the bounds of the law.

Aetna maintains a national coverage policy, *Gender Affirming Surgery: Clinical Policy Bulletin 0615* ("CPB 0615"), which expressly categorizes GAFR—in all instances—as "cosmetic" and "not medically necessary" when sought as treatment for gender dysphoria, regardless of individual medical necessity (hereinafter, the "GAFR Exclusion"). Aetna alone creates, administers, and enforces CPB 0615, as evidenced by Plaintiffs' own coverage denials from Aetna, which expressly cite to the GAFR Exclusion as the sole criteria used to deny their care.

The GAFR Exclusion discriminates against transgender women on its face and in application because it denies them coverage for medically necessary surgeries based solely on their transgender status, requiring Aetna to determine an insured's sex assigned at birth to decide whether CPB 0615 applies.

In its Motion to Dismiss Plaintiffs' Amended Complaint, Aetna makes no attempt to argue that Plaintiffs fail to state a claim on these substantive allegations of discrimination. Instead, it

---

[1] On September 26, 2024, the Court granted Ms. N's motion to proceed pseudonymously. ECF No. 32.

1

misconstrues the nature of Plaintiffs' claims and seeks to rely on what it incorrectly identifies as procedural obstacles to relief. Aetna's motion fails because: (1) Plaintiffs satisfy Article III's standing requirements, as their justiciable injuries are directly traceable to Aetna's conduct and redressable by Aetna; (2) none of the purportedly absent parties are necessary; (3) Plaintiffs' suit is not precluded by the Federal Employee Health Benefits Act and its regulations; and (4) Section 1557 does not require Plaintiffs to exhaust administrative remedies. It is the existence of *Aetna's* GAFR Exclusion and *Aetna's* enforcement of the discriminatory Exclusion against Plaintiffs that caused Plaintiffs' injuries, and a court order declaring the GAFR Exclusion unlawful, enjoining Aetna from enforcing it, and ordering Aetna to compensate the Plaintiffs in the putative Damages Class, can redress those injuries. Because Aetna's arguments fail, Aetna's Motion to Dismiss should be denied.

## STATEMENT OF FACTS[2]

Plaintiffs Binah Gordon, Kay Mayers, S.N., Alma Avalle, Jamie Homnick, and Gennifer Herley are transgender women for whom GAFR is a medically necessary treatment for their gender dysphoria.[3] Second Am. Compl. ¶¶ 2, 15, ECF No. 60; *see also* Decl. of R. Nicholas Gorton ¶¶ 9-11, ECF No. 115; Decl. of Jens U. Berli ¶¶ 3, 14, 16, ECF No. 62-1. All Plaintiffs are or were members of health insurance plans offered through their, or their spouse's, employers and designed, sold, or administered by Aetna. Second Am. Compl. ¶ 2. None of Plaintiffs' healthcare plans exclude GAFR from coverage; indeed, the plans are all silent on such coverage and generally

---

[2] Citations to ECF filings refer to the page numbers generated by the headers, not the internal page numbers.

[3] For a more thorough background on gender dysphoria and GAFR, refer to Plaintiffs' Second Amended Complaint ¶¶ 120-41, and Plaintiffs Homnick and Herley's Memorandum in Support of their Motion for Preliminary Injunction, ECF No. 62 at 8-13.

cover all non-excluded services deemed medically necessary by Aetna. *Id.* ¶ 3. Aetna, in making

that determination, relies on CPB 0615, which contains the GAFR Exclusion that categorically

excludes coverage for GAFR[4] as a treatment for gender dysphoria, deeming it "cosmetic" and not

"medically necessary" in all cases, regardless of individual need or circumstances. *Id.* ¶¶ 3, 9.

Aetna applied CPB 0615 to deny coverage to all Plaintiffs, despite their well-documented need for

GAFR as critical, life-saving treatment for their gender dysphoria. *Id.* ¶ 17.

### *Aetna's Role as Third-Party Plan Administrator*

Aetna primarily relies on two documents to determine a procedure's coverage: (1) the plan

document, which outlines care covered by the beneficiary's plan and may contain express

exclusions on certain treatments, and (2) Aetna's own clinical policy bulletins, which it creates

and uses to detail the criteria an individual beneficiary must fulfill for a particular procedure not

excluded under the plan document to qualify as medically necessary and therefore covered. *See*

Second Am. Compl. ¶¶ 3, 8; *see also* Decl. of Dorothea Verbrugge ¶¶ 8-10, ECF No. 84.[5] Each

Plaintiff's plan expressly delegates to Aetna the primary responsibility for making medical

necessity assessments and thus, coverage determinations.[6] As Aetna concedes, it is Aetna's job to

---

[4] GAFR procedures correct stereotypically male facial characteristics, such as an Adam's apple, in transfeminine people who experienced testosterone dominant puberty. Second Am. Compl. ¶¶ 138-39.

[5] The Declaration of Dorothea Verbrugge, Aetna's Vice President of Clinical Quality, Medical Affairs, was filed by Aetna as an exhibit in support of Aetna's Opposition to Plaintiffs Homnick and Herley's Motion for Preliminary Injunction. *See* Verbrugge Decl.; *see also* Mem. in Opp'n to Mot. for Prelim. Inj., ECF No. 81. Although this declaration was filed in response to a motion regarding two plaintiffs, Verbrugge provides sworn statements regarding "Aetna's policies, processes and procedures for evaluating clinical precertification coverage requests for surgeries and other medical procedures," Verbrugge Decl. ¶ 4, generally, and thus, is relevant and applicable to how Aetna processed all Plaintiffs' claims for GAFR.

[6] Each of the plan sponsors' contracts with Aetna contain terms delegating discretionary authority to Aetna to make medical necessity determinations in implementing the terms of the plans. *See* Excerpts of Contract

determine whether a requested service is "medically necessary" when making a coverage decision, in the absence of an express exclusion in a plan document. *See* Second Am. Compl. ¶¶ 16-17; *see also* Verbrugge Decl. ¶¶ 8-10. For example, the master services agreement between Aetna and Ms. Avalle's employer and plan sponsor, Conde Nast, provides:

> [T]he Customer hereby delegates to Aetna discretionary authority to determine entitlement to benefits under the applicable Plan documents for each claim received, including *discretionary authority* to determine and evaluate facts and evidence, and *discretionary authority* to construe the terms of the Plan . . . . It is also agreed that, as between the Customer and Aetna, Aetna's decision on any claim is final and that Aetna has no other fiduciary responsibility.

Decl. of Christine Libretti-Schon Ex. B at 34, ECF No. 79-4 (emphasis added); *see also* App. A. Likewise, all of the contracts between Aetna and Plaintiffs' plan sponsors require Aetna to adhere to the bounds of the law in its exercise of its delegated authority.[7] For example, the contract between Aetna and Ms. Mayers' plan sponsor requires that "Aetna shall comply with all applicable federal and state laws including, without limitation, the Patient Protection and Affordable Care Act of 2010[.]" Decl. of Daniel Strickland Ex. B at 9, ECF No. 79-16; *see also* App. B.

This is equally the case for GAFR coverage; none of Plaintiffs' plans expressly refer to GAFR in their terms. *See* Second Am. Compl. ¶ 3; *see also, e.g.*, Decl. of Cheryl Sheehy Ex. B, ECF No. 79-7; Strickland Decl. Ex. A, ECF No. 79-15; Libretti-Schon Decl. Ex. A, ECF No. 79-3; Decl. of Hannah Goellner, ECF No. 79-12; Decl. of Cheryl Aronson Ex. A, ECF No. 79-29;

---

Terms Delegating Authority to Aetna, attached hereto as Appendix A, for the specific language contained in each contract.

[7] Each of the plan sponsors' contracts with Aetna contain terms requiring Aetna to adhere to the law. *See* Excerpts of Contract Terms Requiring Aetna to Follow the Law, attached hereto as Appendix B, for the specific language contained in each contract.

Decl. of Brian Hodge Ex. A, ECF No. 79-18. Instead, the plans cover medically necessary surgery, which then defers the coverage decision to Aetna as the authority on medical necessity. *See id.* In making coverage decisions for gender-affirming surgeries, including GAFR, Aetna relies on CPB 0615 and its GAFR Exclusion. *See* Second Am. Compl. ¶ 142; *see also* Decl. of Gennifer Herley Attach. B at 11-23, ECF No. 62-5; Decl. of Jamie Homnick Attach. B at 19-31, ECF No. 62-3.

### The GAFR Exclusion in Clinical Policy Bulletin 0615

Aetna publishes, implements, and enforces CPBs, which govern coverage of various medical services under health plan benefits offered and administered by Aetna. Second Am. Compl. ¶ 130. According to Aetna, "Medical Clinical Policy Bulletins (CPBs) detail the services and procedures we consider medically necessary, cosmetic, or experimental and unproven" and help Aetna decide "what [they] will and will not cover."[8]

CPB 0615 is Aetna's policy on gender-affirming surgery; it only applies to transgender people seeking to treat gender dysphoria by changing their sex characteristics. Second Am. Compl. ¶ 142. CPB 0615 includes criteria to make individual medical necessity determinations for certain other gender-affirming treatments, such as documentation of gender dysphoria and an assessment of related medical risks, Ex. 1 (CPB 0615); *see also* Second Am. Compl. ¶ 8, but Aetna provides that "facial gender affirming procedures"[9] are considered "not medically necessary and cosmetic," and therefore not covered, when "performed as a component of gender transition." Second Am.

---

[8] *Medical clinical policy bulletins*, Aetna Inc., https://perma.cc/C5QQ-SDQS (last visited Mar. 3, 2025).

[9] The terms "facial gender affirming procedures," "gender-affirming facial surgery, "facial gender-affirming surgery," and "gender affirming facial reconstruction (GAFR)" are all synonymous, as evidenced by the fact that Aetna treated each facial surgical procedure Plaintiffs sought as covered by CPB 0615's GAFR Exclusion. *See* Second Am. Compl. ¶ 146.

Compl. ¶¶ 9, 12 (internal quotation marks omitted). Aetna applies the GAFR Exclusion only when the listed procedures—such as rhinoplasty or other facial reconstruction surgeries—are sought as treatment for gender dysphoria. If similar procedures are sought as treatment for other diagnoses (such as cancer or traumatic injury), another CPB on Cosmetic Surgery, *Cosmetic Surgery and Procedures: Clinical Policy Bulletin 0031* (hereinafter "CPB 0031"), applies, *see* Ex. 2 (CPB 0031). CPB 0031 states that "Aetna plans exclude coverage of cosmetic surgery and procedures that are not medically necessary, but generally provide coverage when the surgery or procedure is needed to improve the functioning of a body part *or otherwise medically necessary* even if the surgery or procedure also improves or changes the appearance of a portion of the body." *Id.* (emphasis added). Essentially, CPB 0615's blanket mischaracterization of GAFR as "not medically necessary and cosmetic" for the treatment of gender dysphoria, a condition only experienced by transgender people, is not a barrier to coverage for medically necessary facial reconstruction procedures for others who meet Aetna's medical necessity criteria, even if those surgeries incidentally "improve" appearance. *See* Exs. 1, 2.

Because of the GAFR Exclusion, Aetna will categorically deny coverage requests for GAFR without any assessment of an individual beneficiary's medical need. Second Am. Compl. ¶¶ 3, 9, 136, 139-41. The GAFR Exclusion exists even though prevailing standards of care for the treatment of gender dysphoria—including the World Professional Association for Transgender Health ("WPATH")[10] Standards of Care for the Health of Transgender and Gender Diverse People, Version 8 ("SOC8")—consider GAFR medically necessary and effective. *Id.* ¶¶ 10-12. Indeed,

---

[10]  WPATH is an interdisciplinary professional and educational organization devoted to transgender health that publishes the internationally accepted standards of care for the treatment of gender dysphoria. Second Am. Compl. ¶ 129.

Aetna already uses medical necessity criteria for GAFR in plans regulated by seven states. *Id*. ¶¶147, 149; Ex. 3 (Aetna's Policies for States with Regulations Requiring Coverage of Gender-Affirming Surgeries). Without the GAFR Exclusion, Plaintiffs' request for coverage of GAFR would be scrutinized individually for determinations of medical necessity as Aetna does with other types of gender-affirming surgeries and in states in which Aetna is mandated to cover GAFR. *See* Exs. 1-3.

Aetna's enforcement of the discriminatory GAFR Exclusion against Plaintiffs has resulted in their delayed and denied care, and attendant injuries. Second Am. Compl. ¶¶ 18, 44, 67, 81-83, 90-91, 101, 118. Ms. Mayers, Dr. Homnick, Ms. Avalle, Dr. Herley, and the members of the putative Injunctive Relief Class they seek to represent, remain unable to obtain needed surgeries since they cannot afford it without insurance coverage. *Id*. ¶¶ 18, 66-67, 81-83, 90-92. Ms. Gordon and Ms. N., as well as members of the putative Damages Class they seek to represent, have obtained GAFR at their own expense and considerable cost they would not have incurred if Aetna had not applied the GAFR Exclusion to wrongly determine that GAFR was not medically necessary and therefore not covered. *Id*. ¶¶ 18, 49, 118. The GAFR Exclusion has seriously harmed all Plaintiffs. *Id*. ¶¶ 18, 49, 66-67, 81-83, 90-92, 99, 101, 118.

### *Ms. Gordon*

Ms. Gordon's healthcare team agreed that GAFR was medically necessary to treat her gender dysphoria. Second Am. Compl ¶¶ 35-38. In the summer of 2022, Ms. Gordon's doctors submitted a request for prior authorization to Aetna, which administered the Federal Employee Health Benefits plan offered through her tribal employer, for coverage of GAFR surgery. *Id*. ¶¶ 39-40. On September 30, 2022, Aetna denied coverage for the requested services, stating that each

procedure "is considered cosmetic by our CPB [0615] and your plan because it is meant to improve appearance, not to correct a physical problem that affects your daily activities." *Id.* ¶ 41. Ms. Gordon appealed that determination to Aetna on March 27, 2023, which Aetna denied on April 21, 2023, stating again that the procedures were not covered under her plan based on the GAFR Exclusion in CPB 0615. *Id.* ¶¶ 42-43.

Ms. Gordon experienced exacerbated gender dysphoria and distress after each denial. *Id.* ¶ 44. On June 27, 2023, Ms. Gordon followed her plan's procedures and asked the U.S. Office of Personnel Management ("OPM") to review Aetna's denial of her prior authorization. *Id.* ¶ 45. OPM issued an untimely determination of Ms. Gordon's request on November 21, 2023, concluding the GAFR procedures sought by Ms. Gordon were medically necessary and ordering Aetna to cover nearly all of them. *Id.* ¶ 50. However, OPM did not notify Ms. Gordon of the decision until January 4, 2024, nearly seven months after she submitted her appeal to OPM. *Id.*

While Ms. Gordon was waiting on OPM's decision, a year and a half after she initially sought pre-authorization from Aetna for GAFR, Ms. Gordon moved forward with GAFR surgery on December 11, 2023, without insurance, because her exacerbated gender dysphoria, emotional suffering, and fear of discrimination, harassment, and violence in her community based on her male-appearing facial features became too much to bear. *Id.* ¶¶ 44, 46, 49. She could not afford to pay the astronomical cost out-of-pocket, so she spent months acquiring community donations supplemented by monetary support from a friend. *Id.* ¶¶ 47-49. Ms. Gordon's GAFR surgeries have been effective and life-changing for her. *Id.* ¶ 51.

### *Ms. Mayers*

All of Ms. Mayers' doctors agree that GAFR is medically necessary for her because of the

extreme distress she suffers due to her gender dysphoria, specifically the incongruence between her facial features and sex and the associated risks to her safety and life-functioning. *Id.* ¶ 61. Ms. Mayers' surgeon applied for preauthorization on her behalf for the necessary procedures. *Id.* ¶¶ 63-64. Aetna denied the pre-certification request on March 12, 2024, and on October 15, 2024 denied her appeal for coverage for each GAFR procedure, citing CPB 0615. *Id.* ¶¶ 65-66. In or around December 2024, however, Aetna reversed its denial and preauthorized coverage for some GAFR procedures. *Id.* ¶ 66.[11] Aetna delayed her access to care for over a year, causing Ms. Mayers to suffer severe gender dysphoria and distress because of the delay in her ability to receive partial GAFR. *Id.* ¶¶ 66-67.

### *Ms. N*

In 2019, Ms. N's healthcare providers determined GAFR surgeries were medically necessary to treat her gender dysphoria, related distress, and anti-transgender harassment from strangers related to her male-appearing facial features and masculine voice. *Id.* ¶¶ 107-09. Ms. N's treating physician referred her to a surgeon who recommended she have several GAFR procedures to treat her gender dysphoria. *Id.* ¶¶ 109-10.

On October 3, 2022, the surgeon performed the GAFR procedures and submitted a health insurance claim to Aetna on the same date for charges totaling $41,948.00. *Id.* ¶ 110. On December 8, 2022, Ms. N received a denial of coverage for each procedure. *Id.* ¶ 111. It stated, "[c]harges for cosmetic surgery and other cosmetic services are excluded from coverage under your plan." *Id.* On December 9, 2022, Ms. N appealed the denial and asked for an external review, explaining

---

[11] Ms. Mayers finally had GAFR in April 2025; the bill for the procedures has not yet been paid and it remains uncertain whether Ms. Mayers will require additional GAFR procedures. Ms. Mayers, through counsel, will update this Court and amend pleadings as appropriate.

that "facial feminization is a medical necessity, and not cosmetic[], when transitioning from male to female." *Id.* ¶ 113. Ms. N submitted a complaint letter to Aetna while the appeal was pending, explaining how GAFR had improved her health and well-being. *Id.* ¶¶ 114-16. On January 17, 2023, Aetna denied Ms. N's appeal, referring solely to the GAFR Exclusion. *Id.* ¶ 117. Aetna also refused to cover the cost of anesthesia for the surgeries. *Id.*

On January 10, 2023, Ms. N had voice feminization surgery and a tracheal shave from a surgeon in Portland, Oregon to treat her gender dysphoria. *Id.* ¶ 119. Again, Aetna denied her claims and appeals related to these surgeries. *Id.*

Without Aetna covering the surgeries, Ms. N had to pay the full $41,948.00 cost of the October 2022 GAFR surgeries out-of-pocket, which imposed a significant financial burden on her. *Id.* ¶ 118. She also needed to pay for some of the costs of her voice feminization and tracheal shave. *Id.* ¶ 119. But each surgery has lifted the harm of her gender dysphoria; Ms. N experienced gender-based and anti-transgender harassment in public before the surgery, but after the successful surgery, she does not "hear[] any derogatory remarks about [her] look." *Id.* ¶¶ 114-16.

### Ms. Avalle

Ms. Avalle's healthcare providers unanimously agree that GAFR is medically necessary to treat the gender dysphoria she experiences related to her typically masculine facial features. *Id.* ¶¶ 75, 77. In July 2024, Ms. Avalle's surgeon submitted a request to Aetna for pre-certification of GAFR. *Id.* ¶¶ 77, 79. On July 26, 2024, Aetna issued a denial of pre-certification, citing the GAFR Exclusion. *Id.* ¶ 79. In September 2024, Ms. Avalle's surgeon submitted an appeal asking Aetna to overturn the denial of pre-certification for GAFR. *Id.* ¶ 79. On September 22, 2024, Aetna upheld the denial, reiterating that GAFR is always "cosmetic" and "not medically necessary"

pursuant to CPB 0615. *Id.* ¶ 79.

Without insurance coverage, Ms. Avalle's GAFR and related care will cost an estimated $56,000.00 out-of-pocket. *Id.* ¶ 80. While waiting to obtain GAFR, Ms. Avalle has suffered from severe depression, and increased gender dysphoria which caused her to take a leave of absence from work. *Id*. ¶¶ 81-83.[12]

### *Dr. Homnick*[13]

Dr. Homnick's primary care provider and therapist recommend GAFR to treat her gender dysphoria. *Id.* ¶ 87. In August 2024, Dr. Homnick consulted with a plastic surgeon who sought prior authorization from Aetna for Dr. Homnick's GAFR surgeries. *Id.* ¶¶ 87-88. Aetna denied the preauthorization in September 2024, her surgeon appealed it, and Aetna denied the appeal shortly thereafter. *Id.* ¶ 88. In November 2024, Dr. Homnick filed her second-level appeal with Aetna, which was denied the next day. *Id.* Dr. Homnick's employer-based plan covers other gender affirming surgeries, but Aetna's GAFR Exclusion continues to block coverage of GAFR. *Id*. ¶ 89. Dr. Homnick cannot afford to pay for GAFR out-of-pocket and is suffering without the medically necessary surgeries as she experiences depression and extreme distress that has made it a struggle to take care of her family and herself. *Id.* ¶¶ 90-92.

---

[12]  Ms. Avalle was scheduled to undergo GAFR on May 15, 2025. As of the filing of this brief, Plaintiffs' counsel does not have confirmation whether the surgery occurred as planned. Ms. Avalle, through counsel, will continue to update the Court as more information becomes available about whether the surgery occurred, whether the bills for those surgeries have been paid, and whether Ms. Avalle will require additional GAFR. Ms. Avalle will amend pleadings as appropriate.

[13]  More information about Drs. Homnick's and Herley's claims for GAFR are available in Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction and appended exhibits. *See* ECF No. 62.

***Dr. Herley***

In November 2024, Dr. Herley's surgeon found that GAFR is medically necessary to treat Dr. Herley's gender dysphoria. *Id.* ¶ 100. Dr. Herley requested prior authorization from Aetna for GAFR, which it denied in December 2024 pursuant to the GAFR Exclusion. *Id.* Due to the denial and Dr. Herley's continued inability to receive this necessary health care, she has experienced increased symptoms of depression and anxiety related to her gender dysphoria. *Id.* ¶ 101. Her transition remains incomplete in the absence of GAFR, and she is suffering because of it. *Id.*

## LEGAL STANDARD

The standards governing a motion to dismiss "under [Rule] 12(b)(1) and [Rule] 12(b)(6) are identical." *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 n.3 (2d Cir. 1999). For Rule 12(b)(1) motions, "the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff" and "may not dismiss a complaint unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle [her] to relief." *Jaghory v. N.Y. Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997) (internal quotation marks and citation omitted).

"Courts have broad discretion when determining how to consider challenges to subject matter jurisdiction."[14] *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022). Although extrinsic evidence is permitted for motions brought under Rule 12(b)(1), if it "does not controvert the material allegations of the complaint," this court may "base its ruling solely on the allegations

---

[14] For example, if a jurisdictional factual dispute exists, the court could hold an evidentiary hearing, *see Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000), or permit the parties to submit evidence outside the pleadings, *see Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

of the complaint." *Id.* at 441. "[C]onclusory or hearsay statements contained in [] affidavits" are not to be considered in resolving jurisdictional challenges. *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

When reviewing a Rule 12(b)(7) motion for failing to join an absent party, "a court must accept all factual allegations in the complaint as true and draw inferences in favor of the non-moving party" *Quinn v. Fishkin*, 117 F. Supp. 3d 134, 139 (D. Conn. 2015) (internal quotation marks and citation omitted). "The court can deny the motion when there is insufficient or contradictory evidence concerning whether a party is a necessary party within the meaning of Rule 19(a)." *Id*. Aetna bears the burden of demonstrating joinder of absent parties is mandatory under Rule 12(b)(7). *See Schnabel v. Sullivan*, No. 04-cv-5076, 2006 WL 8439516, at *2 (E.D.N.Y. Feb. 3, 2006). The court may also consider extrinsic evidence for motions under Rule 12(b)(7); however, conclusory allegations and "*ex parte* statements, made without any documentation, are insufficient to sustain" the motion. *In re Caesars Palace Sec. Litig.*, 360 F. Supp. 366, 395 (S.D.N.Y. 1973).

## ARGUMENT

In its motion, Aetna does not contest that CPB 0615 constitutes discrimination on the basis of sex prohibited by Section 1557. *See generally* Mem. in Supp. of Def's Mot. to Dismiss, ECF No. 79-1. Rather, Aetna argues that Plaintiffs' claims should be dismissed due to a hodge-podge of meritless procedural defenses: lack of Article III standing, failure to join indispensable or necessary parties, FEHBA preemption, and concocted exhaustion requirements under the Employment Retirement Income Security Act ("ERISA") and Section 1557. *See id.* The facts alleged in the Second Amended Complaint and corroborated by Aetna's own supporting materials

demonstrate that Aetna's arguments fail for four reasons: (1) Plaintiffs have Article III standing; (2) Plaintiffs have sued the proper parties; (3) FEHBA regulations do not preclude Ms. Gordon's Section 1557 claims against Aetna for its discrimination; and (4) Section 1557 does not require Plaintiffs to exhaust administrative remedies.

## I.    PLAINTIFFS HAVE STANDING TO CHALLENGE AETNA'S POLICY.

Each Plaintiff has Article III standing for the type of relief she seeks. Article III of the Constitution limits the jurisdiction of federal courts to certain justiciable "Cases" and "Controversies," of which standing to sue is "an essential and unchanging part." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341-42 (2006). To establish Article III standing, a plaintiff must demonstrate three essential elements: injury-in-fact, traceability, and redressability. *Barrows v. Becerra*, 24 F.4th 116, 127 (2d Cir. 2022).

Here, Aetna vaguely and incorrectly argues Plaintiffs lack standing because, it claims, Plaintiffs' injuries are neither traceable to nor redressable by Aetna, and Plaintiffs have no risk of future injury. ECF No. 79-1 at 34. Aetna's argument attempts to distance itself from its own discriminatory GAFR Exclusion and distract from the relevant, pertinent facts. A proper application of the law to this case demonstrates Plaintiffs have established each element of Article III standing.

### A.    Plaintiffs Have Sufficiently Pleaded Injuries-In-Fact.

While Aetna only alludes that Plaintiffs have not adequately pleaded injury-in-fact, *see* ECF No. 79-1 at 34-39, Plaintiffs set the record straight herein that all Plaintiffs have adequately pleaded injuries-in-fact sufficient to confer Article III standing.

At the pleading stage, Plaintiffs need only allege "general factual allegations of injury

resulting from the defendant's conduct" because "on a motion to dismiss [courts] presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 540 U.S. at 561 (internal quotation marks and citation omitted). "Because '[t]he standing inquiry focuses on whether the plaintiff is the proper party to bring . . . suit,' the injury analysis 'often turns on the nature and source of the claim asserted.'" *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Accordingly, the analysis for injury-in-fact is "highly case-specific," without collapsing the inquiry into the merits. *Baur*, 352 F.3d at 637. An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized[] and (b) actual or imminent, not conjectural or hypothetical." *Lacewell v Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (citing *Lujan*, 504 U.S. at 560). "Where a plaintiff seeks equitable or 'prospective' relief, [s]he must show an additional element: 'a sufficient likelihood that [s]he will again be wronged in a similar way.'" *Barry v. City of New York*, 933 F. Supp. 2d 416, 426 (E.D.N.Y. 2013) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

*Injunctive Relief Plaintiffs.* Ms. Mayers, Dr. Homick, Ms. Avalle, and Dr. Herley (the "Injunctive Relief Plaintiffs"), individually and on behalf of the putative Injunctive Relief Class they seek to represent, have pleaded concrete, particularized injuries due to Aetna's denial of health insurance coverage for medically necessary GAFR based on the discriminatory GAFR Exclusion, in violation of Section 1557. *See Heckler v. Mathews*, 465 U.S. 728, 738 (1984) (plaintiff's allegations of sex discrimination in provision of Social Security benefits was a cognizable injury); *see O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (named plaintiffs with individual standing may seek relief on behalf of a class); *see also Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931,

942-46 (W.D. Wis. 2018) (transgender plaintiffs demonstrated a "likelihood of irreparable injury" where plaintiffs were "being denied coverage for medically necessary treatment that was prescribed by their doctors and meets the prevailing standards of care"); *Hicklin v. Precynthe*, No. 4:16-cv-01357, 2018 WL 806764, at *9 (E.D. Mo. Feb. 9, 2018) (transgender plaintiff demonstrated "threat of irreparable injury" where she suffered from depression, anxiety, and intrusive thoughts without appropriate treatment for her gender dysphoria). Each Plaintiff has alleged that Aetna denied her coverage for GAFR on the basis of sex, which caused her injury in the form of increased suffering from gender dysphoria and mental distress. *See Walker v. Azar*, 480 F. Supp. 3d 417, 426 (E.D.N.Y. 2020) ("[B]oth plaintiffs attest that they have, based on their transgender status, suffered past discrimination in receiving healthcare. That alone constitutes an injury in fact."); *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 956 (D. Minn. 2018) (plaintiff alleging discriminatory denial of benefits under a health plan for treatment of his gender dysphoria had standing to sue under Section 1557). The Injunctive Relief Plaintiffs have sufficiently pleaded past and ongoing injuries. Second Am. Compl. ¶¶ 18, 67, 81-83, 90-91, 101.

The Injunctive Relief Plaintiffs all continue to face a real threat of injury from Aetna's continued application of the GAFR Exclusion, as they remain enrolled in Aetna-administered plans and their requests for GAFR will continue to be subject to the GAFR Exclusion as long as it remains in place. *See Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952-53 (2d Cir. 2024) (likelihood of recurring discrimination at a medical facility constitutes injury-in-fact to confer standing for injunctive relief); *Vega-Ruiz v. Montefiore Med. Ctr.*, No. 17-cv-1804, 2019 WL 3080906, *5 (S.D.N.Y. July 15, 2019) (same); *see also Flack*, 328 F. Supp. 3d at 942-46; *Hicklin*, 2018 WL 806764, at *9. CPB 0615 already erects a discriminatory barrier to the Injunctive Relief Plaintiffs

accessing GAFR under their health insurance plans, which provides evidentiary support to infer with reasonable certainty the discrimination will continue absent equitable relief. *See O'Shea*, 414 U.S. at 496 ("[P]ast wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury."). Specifically, without declaratory and injunctive relief, any attempts by Plaintiffs to appeal Aetna's denials will continue to be tainted by the GAFR Exclusion and Plaintiffs will continue to be denied coverage for the procedures on the impermissible basis of sex. The Injunctive Relief Plaintiffs have sufficiently pleaded a likely risk of future harm, sufficient to establish injuries-in-fact for the equitable relief they seek.

*Damages Plaintiffs.* Ms. Gordon and Ms. N. (the "Damages Plaintiffs") seek compensatory relief for their own and the putative class's economic losses, including but not limited to expenses incurred paying out-of-pocket for GAFR surgeries that would have been covered by their health plans but for Aetna's enforcement of its GAFR Exclusion. Second Am. Compl. ¶¶ 154-56. Therefore, Ms. Gordon and Ms. N have no obligation to prove future injury. *See Barry*, 933 F. Supp. 2d at 426. In terms of past injury, monetary damages stemming from Aetna's denial of coverage for their GAFR are a traditional form of injury-in-fact for Article III standing. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (any monetary loss suffered by plaintiff satisfies the injury-in-fact element of Article III standing); *see also Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005) ("While it is difficult to reduce injury-in-fact to a simple formula, economic injury is one of its paradigmatic forms."); 13A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3531.4 (3d ed. 2025). Accordingly, Ms. Gordon and Ms. N have sufficiently pleaded concrete, particularized injuries to seek compensatory relief for themselves and the class they intend to represent.

For these reasons, Plaintiffs have satisfied the injury-in-fact requirement for Article III standing.

**B.    Plaintiffs Have Pleaded Injuries Traceable to CPB 0615.**

Plaintiffs have sufficiently pleaded that their injuries are fairly traceable to Aetna's challenged conduct, rather than resulting from the independent actions of a third party not before this court. *See Carter*, 822 F.3d at 55. Regardless of each individual plan sponsors' potential ability to override Aetna's discriminatory coverage determinations (or to expressly and affirmatively cover GAFR and thereby take away Aetna's discretion to deny coverage pursuant to its own policies), Plaintiffs' injuries are nevertheless directly traceable to Aetna due to its enforcement of the discriminatory GAFR Exclusion in processing their coverage claims for GAFR and denying them coverage based on the blanket policy contained in the GAFR Exclusion that GAFR is never medically necessary.

"The traceability requirement for Article III standing means that the plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury." *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (internal citation omitted). Article III's causation requirement "does not create an onerous standard" for plaintiffs. *Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*, 88 F.4th 344, 352-53 (2d Cir. 2023). "It requires no more than *de facto* causality, a standard that is, of course, lower than for proximate causation." *Id.* at 353 (citations omitted). Ultimately, "a plaintiff 'need not show that a particular defendant is the *only* cause of their injury.'" *Langer v. Hartland Bd. of Educ.*, No. 3:22-cv-1459, 2023 WL 6140792, at *10 (D. Conn. Sept. 20, 2023) (citations omitted); *see also Massachusetts v. EPA*, 549 U.S. 497, 523 (2007).

The causation requirement for Article III standing does not require Plaintiffs to

demonstrate that Aetna's alleged wrongdoing is the proximate cause of their injury—much less the sole cause. *See Carter*, 822 F.3d at 56. A plaintiff can establish causality even if an absent third party played some role in causing that injury. *Id.* at 55-56. Indeed, Aetna and other insurers have raised nearly identical causation arguments to evade liability for their role in Section 1557 violations, including before courts in this District, and have failed each time. *See, e.g.*, *Kulwicki v. Aetna Life Ins. Co.*, 720 F. Supp. 3d 108, 114 (D. Conn. 2024) (plaintiff's injuries arising from a denial of coverage for in vitro fertilization "may be traceable to [Aetna] because it allegedly designed . . . and administered claims under" plaintiff's self-funded employer health plan); *see also Tovar v. Essentia Health*, 857 F.3d 771, 778 (8th Cir. 2017) (plaintiff's injuries could be traceable to defendant third-party administrator even where employer adopted and controlled terms of plaintiff's health plan).

Aetna's assertion that it is merely implementing exclusions in Plaintiffs' plan sponsors' plans is false. *See e.g.*, ECF No. 79-1 at 25, 37-38. *None* of the plans exclude GAFR. *See* Second Am. Compl. ¶ 3. *All* of the plans defer entirely to the eligibility criteria created and maintained by Aetna, and delegate coverage determinations to Aetna.[15] App. A; Second Am. Compl. ¶ 17. Aetna—not the plan sponsors—enforces the GAFR Exclusion under its delegated authority to administer Plaintiffs' plans, and its denial of GAFR coverage is the direct cause of Plaintiffs' injuries. Plaintiffs' injuries are thus fairly traceable to Aetna.

---

[15] But even if it were true that Aetna was implementing an exclusion rooted in the Plaintiffs' plans—which it is not—Plaintiffs' injuries would still be traceable to Aetna. *See Langer*, 2023 WL 6140792, at *10 (rejecting argument that teacher's injuries were not traceable to the board since the board's *implementation* of the mandate was the "most immediate cause" of the termination where school board fired a teacher for failing to comply with state COVID-19 mandate).

C.    **Plaintiffs' Requested Compensatory and Equitable Relief is Redressable by Aetna.**

Plaintiffs have shown a favorable court decision will likely remedy their injuries. *See Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). For Ms. Gordon, Ms. N, and other members of the putative Damages Class, monetary damages would compensate them for the out-of-pocket expenses they were forced to incur to pay for GAFR after Aetna denied them coverage. For Ms. Avalle, Ms. Mayers, Dr. Herley, Dr. Homnick, and other members of the putative Injunctive Relief Class, the requested declaratory and injunctive relief would remove the primary barrier categorically denying them coverage for GAFR—the GAFR Exclusion—so that Aetna will be required to conduct individualized medical necessity assessments for their claims, as it does for other gender-affirming surgeries and other "cosmetic surgeries" that are medically necessary. *See* Exs. 1-3.

1.    *The economic losses suffered by the Damages Plaintiffs are redressable by Aetna.*

The out-of-pocket expenses incurred by Ms. Gordon, Ms. N, and other members of the putative Damages Class to obtain GAFR surgeries, for which Aetna denied them coverage based on the GAFR Exclusion, are wholly redressable through an award of compensatory damages from Aetna. Under Section 1557, Aetna is liable for compensatory damages for its violations of Section 1557, including out-of-pocket costs incurred by the Plaintiffs to obtain GAFR. *See Tovar*, 857 F.3d at 778 (third party administrator could be held liable for damages arising from discriminatory plan terms in a self-funded plan); *see also Berton v. Aetna Inc.*, No. 23-cv-01849, 2024 WL 869651, at *6 (N.D. Cal. Feb. 29, 2024) ("meaningful relief could be granted by ordering [Aetna] to pay damages" for Aetna's enforcement of its own discriminatory infertility policy). Another court in

this District has already rejected Aetna's argument to the contrary, holding "if Defendant is responsible for requiring Plaintiff and other similarly situated individuals to pay [out-of-pocket costs for care], then . . . Defendant can redress them by paying damages." *Kulwicki*, 720 F. Supp. 3d at 114.

Aetna argues that Ms. Gordon and Ms. N are not entitled to relief because they are no longer enrolled in Aetna plans. ECF No. 79-1 at 34-35, 38-39. But Ms. Gordon and Ms. N—and the class they seek to represent—pursue only retrospective relief from Aetna for the injuries they have already suffered, so whether they currently hold Aetna plans is irrelevant. *See Kulwicki*, 702 F. Supp. 3d at 113-14 (plaintiff's claim for monetary damages was redressable by Aetna even though plaintiff was no longer a member of the plan). Ms. Gordon and Ms. N do not seek payment of plan benefits from the coffers of their former employers or plan sponsors. Rather, they and the putative Damages Class seek compensatory damages from Aetna stemming from *Aetna's* application of the GAFR Exclusion in CPB 0615 to deny coverage for GAFR in contravention of Section 1557. *See* Second Am. Compl. at 52. Aetna can redress Plaintiffs' economic injuries resulting from its discriminatory actions. *See Kulwicki*, 702 F. Supp. 3d at 113-14.

Finally, with respect to Ms. Gordon alone, Aetna contends that she is not entitled to damages because she received a loan from a friend and raised funds from her community to help finance her GAFR. ECF No. 79-1 at 34. Ms. Gordon's sources of funding are immaterial—whether she used her own income, savings, loans, or gifts, she used those funds to pay her medical bills. *See* Restatement (Second) of Torts § 920A(2) (Am. Law Inst. 1979) (providing that payments or benefits received by an injured party from sources independent of the defendant—like insurance, disability payments, or gifts—do not reduce the amount of damages the defendant must pay).

21

Aetna can redress Ms. Gordon's economic injuries, regardless of whether she will reimburse her benefactors. *Cf. Spirit Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008) ("That [redressability] inquiry focuses, as it should, on whether the *injury* that a plaintiff alleges is likely to be redressed through the litigation—not on what the plaintiff ultimately intends to do with the money [s]he recovers."). Other people's generosity towards Ms. Gordon does not nullify Aetna's ability to redress damages incurred due to its discrimination.

The Damages Plaintiffs have sufficiently pleaded injuries redressable by Aetna to seek compensatory damages for themselves and similarly situated plaintiffs.

2. *The Injunctive Relief Plaintiffs' claims for equitable relief are redressable by Aetna.*

Aetna's redressability argument similarly fails in the equitable relief context. Redressability under Article III is not an all-or-nothing standard—as long as the relief sought would be substantially likely to improve plaintiffs' positions, the requirement is satisfied. *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 74-75, 75 n.20 (1978). An order enjoining enforcement of Aetna's GAFR Exclusion in CPB 0615 would redress Plaintiffs' injuries because Aetna's application of that exclusion caused the injury. *See* Second Am. Compl. ¶¶ 41, 43, 62, 65-66, 79, 88-89, 100, 111, 142, 152. As Dorothea Verbrugge explains in her declaration, "[n]one of these requests for coverage were denied due to any categorical Plan exclusion," Verbrugge Decl. ¶ 13—rather, they were denied only after Aetna consulted CPB 0615 to determine whether the surgeries were medically necessary, *see id.* Declaratory and injunctive relief would be substantially likely to improve the Injunctive Relief Plaintiffs' ability to obtain coverage for GAFR

22

under the terms of their plans.[16] *See id.*

Aetna implies, repeatedly, that the plan sponsors' ability to make an exception regarding Plaintiffs' healthcare coverage is tantamount to the plan sponsor steering the terms of the policy. *See e.g.*, ECF No. 79-1 at 8-9, 37-38. Yet, the plan document controls the terms of the plan and none of the plan documents in question exclude coverage for GAFR. *See* Second Am. Compl. ¶ 17. Rather, all plan sponsors' plan documents expressly delegate to Aetna the primary responsibility for making coverage determinations and medical necessity assessments, all within the bounds of the law. *See* Apps. A, B. Also, while any employer could seek to *affirmatively* cover GAFR in its plan—which would override CPB 0615—or create an exception for an individual, its decision to do so is wholly separate from Aetna's authority to enforce the GAFR Exclusion.

If this Court enjoins Aetna's enforcement of the GAFR Exclusion, Aetna will be required to conduct individualized medical necessity determinations without the blanket policy that GAFR is "not medically necessary" in all cases, just as it does for other surgeries. For example, for genital, gonad and breast surgeries to treat gender dysphoria, Aetna applies the following criteria (with immaterial wording differences for procedures for transfeminine or transmasculine people):

- Signed letter from a qualified mental health professional . . . assessing the transgender/gender diverse individual's readiness for physical treatments; *and*
- Documentation of marked and sustained gender dysphoria . . . ; *and*
- Other possible causes of apparent gender incongruence have been excluded; *and*
- Mental and physical health conditions that could negatively impact the outcome of gender-affirming medical treatments are assessed, with risks and benefits discussed; *and*
- Capacity to consent for the specific physical treatment; *and*
- Six months of continuous hormone therapy as appropriate to the member's

---

[16] The GAFR that Ms. Mayers has received, and that Ms. Avalle will likely receive in the near future, does not yet alter their posture to seek equitable relief, as the medical bills have not yet been paid and at this stage, it is unclear whether they will require additional GAFR procedures.

gender goals (12 months for adolescents less than 18 years of age), unless hormone therapy is not desired or medically contraindicated.

Ex. 1. These are essentially the same criteria Aetna uses to determine medical necessity for GAFR in state-regulated plans that override the GAFR Exclusion. *See* Ex. 3.[17] Indeed, even if Aetna were to simply remove the GAFR Exclusion and allow CPB 031 (Cosmetic Surgery)'s medical necessity criteria to serve as default for GAFR procedures, Plaintiffs are likely to receive coverage for their needed procedures. *See* Ex. 2.

If Aetna were to update or modify those criteria—as it does routinely—Plaintiffs' individual plans contemplate that Aetna's clinical coverage policies in place at any point would control Aetna's coverage decisions over what is medically necessary and therefore covered by the plans. *See e.g.*, Aronson Decl. Ex. C, ECF No. 87-3; Goellner Decl. Ex. A at 5, ECF No. 86-1. Aetna has revised or updated CPB 0615 at all relevant times—including five times in 2024 alone and once (so far) in 2025[18]—and there is simply *no* evidence that Aetna requires plan sponsors' sign-off every time Aetna makes such revisions or updates to its own clinical coverage criteria. If Aetna were to amend CPB 0615 to remove the GAFR Exclusion (whether on its own or under court order), plan sponsors would be obligated to pay for GAFR services Aetna deems medically necessary based on an individualized medical necessity review. Aetna has offered nothing to suggest otherwise.

Aetna's reliance on *Murthy v. Missouri*, 603 U.S. 43 (2024) is misplaced. *See* ECF No. 79-

---

[17]  The New York criteria are identical to Aetna's criteria for other gender-affirming surgeries. Most other states also require a photo showing gender-incongruent features. *See* Ex. 3.

[18]  The history of Aetna's revisions and updates to CPB 0615 is available at https://www.aetna.com/cpb/medical/data/disclaimer/history/600_699/0615.html (last visited May. 15, 2025).

1 at 38. *Murthy* restates a well-trodden principle that a plaintiff's prospective future injury is not redressable by the relief requested in the injunction where the harm is inflicted *entirely* by independent third parties. *Murthy*, 603 U.S. at 57. Here, by contrast, Plaintiffs have demonstrated Aetna's direct role in making Plaintiffs' benefits determinations. Aetna applied a discriminatory policy to improperly classify medically necessary procedures as cosmetic and not medically necessary, thus violating non-discrimination laws under Section 1557. It is Aetna's decision-making, not the plan sponsors', that has been and will continue to cause Plaintiffs' injuries and thus, is redressable by Aetna. This Court need not engage in "conjecture" about Aetna's future decision-making, *Murthy*, 603 U.S. at 46 (citation omitted), because Aetna *solely* controls the content and application of its clinical coverage policies, including CPB 0615 and its GAFR Exclusion, and will continue to apply the GAFR Exclusion without an injunction and declaratory relief. Because no independent actor stands between Aetna's policy and the denial of benefits, the Injunctive Relief Plaintiffs' injuries are redressable by Aetna and, thus, they have standing to seek the requested equitable relief.

For these reasons, Plaintiffs satisfy the redressability requirement for Article III standing.[19]

## II.    AETNA IS THE PROPER DEFENDANT IN THIS ACTION.

Aetna attempts to deflect responsibility for its own discriminatory conduct by claiming that

---

[19]    Defendant includes a vague, conclusory paragraph on the mootness doctrine in its motion, without identifying a particular Plaintiff to whom it applies or how it would apply under the law. *See* ECF No. 79-1 at 33. Accordingly, Plaintiffs do not address mootness issues herein. Neither Plaintiffs nor this Court are required to build Defendant's argument for it. *See Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("In our adversary system . . . in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."); *City of New York by and through FDNY v. Henriquez*, 98 F.4th 402, 413 (2d Cir. 2024) ("[W]e expect courts to respond to parties' arguments—not just to develop their own views.") (*citing United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020)).

absent third parties—Plaintiffs' employers, plans, plan sponsors, and plan administrators (collectively, "absent parties")—are necessary and indispensable parties to this action. ECF No. 79-1 at 44-46. Aetna largely recycles the same meritless assertions it posits in its Article III standing argument—that this Court should overlook Aetna's creation, implementation, and utilization of its own discriminatory GAFR Exclusion to deny healthcare coverage to Plaintiffs— and instead blame the absent parties, none of which have written GAFR exclusions into their plans. *See id.* at 44-51; Second Am. Compl. ¶ 3. As explained above, this lawsuit challenged Aetna's enforcement of its own discriminatory coverage policy—the GAFR Exclusion—which it applies to all plans it administers where it has primary authority to make coverage determinations. *See supra* at 5-9. The absent parties do not require Aetna to exclude GAFR—they simply delegate decision-making authority to Aetna, which applies its own policy to exclude coverage for GAFR in all cases. *See* App. A. The absent parties are not necessary parties and joinder pursuant to Federal Rules of Civil Procedure Rule 19 does not apply.

Compulsory joinder involves a three-step analysis. Preliminarily, whether a party is "necessary" pursuant to Rule 19(a) determines if a party must be joined. *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000). If a party is not "necessary," the inquiry ends without dismissal. *Id.* If a party is "necessary," then the court must determine whether joinder is feasible "for jurisdictional or other reasons." *Id.* at 725. And only where a necessary party cannot be joined does the court proceed to the factors of Rule 19(b). *Id.*

Aetna's argument for joinder fails at step one. An absent party is "necessary" if: (1) complete relief cannot be accorded among the existing parties in the entity's absence, or (2) the person claims an interest in the subject of the action, and the disposition of the action in the

person's absence may: (i) impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. Fed. R. Civ. P. 19(a)(1). No party Aetna identifies is necessary to this lawsuit.

### A. Aetna is the Proper Defendant in this Action and No Absent Parties Must Be Joined Under Rule 19.

Aetna mischaracterizes the relief Plaintiffs seek and contends liability for its discriminatory policy rests with other allegedly "necessary" parties. ECF No. 79-1 at 44-46. Aetna's arguments fail for several reasons. First, contrary to Aetna's assertions, Plaintiffs can obtain complete relief from Aetna. Plaintiffs seek relief from *Aetna's* own policies and practices, including declaratory judgment that *Aetna's* GAFR Exclusion in CPB 0615 is unlawful; compensatory damages for harm resulting from *Aetna's* discriminatory conduct; and injunctive relief enjoining the enforcement of *Aetna's* GAFR Exclusion (or any of Aetna's policies or practices that categorically exclude coverage for GAFR surgeries). *See* Second Am. Compl. at 52. Second, none of the purportedly absent parties' interests will be impaired by their absence in this case. Accordingly, the absent parties are not necessary parties as defined in Rule 19(a)(1)(A) or (B).

### 1. *The absent parties are not necessary parties under Rule 19(a)(1)(A).*

"A party is necessary under Rule 19(a)(1) only if in that party's absence 'complete relief cannot be accorded *among those already parties.*'" *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006). Determining Aetna's liability for violations of the ACA does not require involvement of any absent party. *See id.* Indeed, courts in similar cases against Aetna have rejected its argument that employers or plan sponsors are necessary parties in Section 1557 challenges to categorical coverage exclusions, *see, e.g., Kulwicki*, 720 F. Supp. 3d at 116;

*Berton*, 2024 WL 869651, at *5, and Aetna fails to distinguish or even cite those cases to explain why this Court should reach a different conclusion.

For instance, in *Kulwicki*, another court in this District held that employers, plans, and plan sponsors were not necessary parties to the plaintiff's Section 1557 claim against Aetna. 720 F. Supp. 3d at 116. There, like here, Aetna argued the employer and plan sponsor had exclusive authority to set the terms under the plan and that plaintiff's requested relief would require the court to direct the plan sponsor to amend the terms of the plan and pay for specific benefits. *Id.*; *see also* ECF No. 79-1 at 45. Recognizing that "Aetna can provide complete relief for its own violations of the ACA without involvement of any other (absent) party" because plaintiff pursued damages stemming from Aetna's own discriminatory design and administration of the plan, the court denied Aetna's Rule 12(b)(7) motion. *Kulwicki*, 720 F. Supp. 3d at 116.

In *Berton*, the Northern District of California also rejected Aetna's contention that plan sponsors were necessary parties. 2024 WL 869651, at *5. Aetna argued Berton's employer, as sponsor of the self-funded plan, was a necessary party because her employer retained authority over which benefits to offer and the plan's operation. *Id.* The court held that "meaningful relief could be granted by ordering [Aetna] to pay damages based on [its] own actions" and determined the employer/plan sponsor was not a necessary party. *Id.* at *6; *see also Carr v. United Healthcare Servs. Inc.*, No. C15-1105, 2016 WL 7716060, at *4 (W.D. Wash. May 31, 2016) (employer not a necessary party, in part, because plaintiff "crafted her relief request such that she may obtain the relief she requests" without the employer's involvement).

Just it has previously done, Aetna contends that what the Damages Plaintiffs are seeking is effectively payment of plan benefits and the absent parties control the plans' coffers. *See* ECF No.

79-1 at 46, 48. Like in *Kulwicki* and *Berton*, Plaintiffs are *not* seeking the payment of benefits but rather damages resulting from Aetna's discriminatory GAFR Exclusion. *See* Second Am. Compl. at 52. The courts in *Kulwicki* and *Berton* determined that plaintiffs could seek compensatory damages from Aetna for Aetna's allegedly discriminatory conduct, including the cost of the plaintiffs' medical procedures, without joining the plan sponsors. *See Kulwicki*, 720 F. Supp. 3d at 116 (denying motion to dismiss pursuant to Rule 12(b)(7) where plaintiff does not "seek an award of benefits under the Plan" but compensatory damages from Aetna for costs incurred for infertility treatments); *Berton*, 2024 WL 869651, at *6 (holding that "meaningful relief could be granted by ordering [Aetna] to pay damages based on [its] own actions" and that even without employer the court can order Aetna to pay damages).

Likewise, this Court can compel the complete equitable relief Plaintiffs seek from Aetna because the relief is narrowly targeted at Aetna's GAFR Exclusion and its own discriminatory conduct. The Injunctive Relief Plaintiffs seek declaratory judgment that the GAFR Exclusion in CPB 0615 is unlawful and "a permanent injunction enjoining Aetna from any enforcement of GAFR Exclusion, or any other Aetna policy or practice that categorically excludes coverage for GAFR surgeries." Second Am. Compl. at 52. Such an injunction does not "rewrite the terms of the plans" or "direct how the plans are administered" by absent parties as Aetna contends. ECF No. 79-1 at 45. Rather, the Injunctive Relief Plaintiffs seek elimination of Aetna's discriminatory barrier—the GAFR Exclusion in CPB 0615—so Plaintiffs can have their claims individually assessed for medical necessity to access the benefits of the healthcare plans. *See Yonofsky v. Wernick*, 362 F. Supp. 1005, 1023-24 (S.D.N.Y. 1973) (plaintiffs only demanded equitable relief from defendant and the wrongdoer was only alleged to be defendant, so no missing parties needed

29

to be joined); *see also Berton*, 2024 WL 869651 at *6 (denying Aetna's Rule 12(b)(7) motion and agreeing with plaintiff that employer was not a necessary party at the motion to dismiss stage).

The cases Aetna cites do not support its assertion that this case requires additional parties to award complete equitable relief to the Injunctive Relief Plaintiffs. First, *Kermanshah v. Kermanshah* is factually inapposite—it involved a breach of contract claim and the case reiterated the well-known proposition that "a party to a contract which is the subject of litigation is considered a necessary party." No. 08-CV-409, 2010 WL 1904135, *3 (S.D.N.Y. May 11, 2010) (internal citations omitted); *see also Meisels v. Meisels*, No. 19-cv-4767, 2024 WL 3889007, at *6 n.8 (E.D.N.Y. Aug. 20, 2024) (observing *Kermanshah's* rule requiring joinder of parties to a contract lacks applicability to claim not involving a breach of contract).

Second, in *Kraebel v. New York City Department of Housing Preservation & Development*, the plaintiffs brought a due process claim contesting defendant's delays in its processing of rent increase exemption applications. No. 90 CIV 4391, 1994 WL 132239 (S.D.N.Y. Apr. 14, 1994). The court found that because the plaintiffs sought injunctive relief to reduce unconstitutional delays, an additional agency was a necessary party because the agency played a significant role in the processing of the applications and so injunctive relief would not be whole in their absence. *Id.* at *4. Finally, in *Errico v. Stryker Corp.*, the court recognized that "Rule 19(a)(1)(A) [was] not implicated because the Court [*could*] grant complete relief among those already parties." No. 10 Civ. 3690, 2010 WL 5174361, at *2 (S.D.N.Y. Dec. 14, 2010) (internal citations omitted).

Unlike the cases cited by Aetna, the absent parties are extraneous to the equitable relief the Injunctive Relief Plaintiffs request. Accordingly, the absent parties are not necessary parties pursuant to Rule 19(a)(1)(A).

2.    *The absent parties are not necessary parties under Rule 19(a)(1)(B).*

Aetna claims the absent parties are also necessary parties to the litigation pursuant to Rule 19(a)(1)(B). ECF No. 79-1 at 45-46. In so doing, Aetna entirely ignores the initial requirement for compulsory joinder under Rule 19(a)(1)(B), namely, that the absent party must *claim a legally protected interest* relating to the subject matter of the action. *See Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) (citing *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983)); *see also Friends of Animals, Inc. v. City of Bridgeport Police Dep't*, No. 06-cv-1708, 2007 WL 201245, *4 (D. Conn. Jan. 23, 2007) (refusing to consider absent party "necessary" where party "has not claimed an interest in this case" and "has not sought to intervene"). Aetna offers no evidence that the absent parties have claimed an interest here, which precludes any argument that they are necessary parties to this action under Rule 19(a)(1)(B).

Regardless, Aetna wholly failed to identify any of the absent parties' legally protected interests that require the protection of Rule 19. ECF No. 79-1 at 44-46; *see Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 74 (S.D.N.Y. Nov. 14, 2006) (the moving party bears the burden of producing evidence of the nature of the absent party's interest and demonstrating that protection of the interest will be impaired by its absence); *In re Caesars Palace Secs. Litig.*, 360 F. Supp. 366, 395 (S.D.N.Y. 1973) (same). "It is not enough under Rule 19(a)(2)(i)[20] for a third party to have an interest, even a very strong interest, in the litigation." *MasterCard*, 471 F.3d at 387. Instead, "necessary parties under Rule 19(a)(2)(i) are only those parties whose ability to protect their interests would be impaired *because of* that party's absence from litigation." *Id.* Under

---

[20] Rule 19(a)(2) is identical in substance to Rule 19(a)(1)(B). The numbering was changed in 2007. *See* Fed. R. Civ. P. 19 advisory committee's note to 2007 Amendment.

Rule 19, the alleged "interest . . . must be a legally protected, not merely a financial interest or interest of convenience." *Kraebel*, 1994 WL 132239, at *4 (citation omitted); *see also Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 122 (1968) (clarifying that a party is not indispensable merely because they might be affected by the judgment; their interest must be legally protected and directly implicated.).

Contrary to Aetna's assertion, *see* ECF No. 79-1 at 45, the absent parties' interests are not legally impaired. The absent parties are not being asked to change their plan designs, being demanded to pay out benefits, or bound to do anything based on the outcome of this lawsuit. In fact, if this Court enjoins Aetna's application of the GAFR Exclusion in CPB 0615, the absent parties will continue as they were—paying for services not expressly excluded by their plans that Aetna deems medically necessary. *See* Second Am. Compl ¶ 3; *see also* Pls. Prelim. Inj. Reply at 7, ECF No. 114. As Aetna's discriminatory policy is the key barrier to coverage of otherwise medically necessary surgeries, relief here would merely put absent parties in the position of paying what they always owed as a benefit under the plan. *See id.*

As the absent parties are not necessary parties, the court's inquiry into Rule 19 joinder ends here. *MasterCard*, 471 F.3d at 389 ("We need not discuss" whether a missing party is indispensable after reaching the conclusion the missing party is not necessary).

### B.    The Absent Parties Are Not Indispensable.

Given Aetna cannot clear the preliminary bar establishing absent parties are necessary to this litigation, it certainly cannot establish that these parties are "indispensable." Dismissal under Rule 19(b) is only required when "in equity and good conscience," the absent party is "indispensable." *Viacom*, 212 F.3d at 725. "Federal Courts are extremely reluctant to grant motions

to dismiss based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result." *Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351, 357 (2d Cir. 2015) (quoting 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1609 (3d ed. 2015)).

Courts examine four factors pursuant to Rule 19(b) to determine whether, "in equity and good conscience," the moving party has established that a necessary party is "indispensable": (1) whether a judgment rendered in a person's absence might prejudice that person or parties to the action; (2) the extent to which any prejudice could be alleviated by the shaping of relief, or other measures; (3) whether a judgment in the person's absence would be adequate; and (4) whether the Plaintiffs would have an adequate remedy if the court dismissed the suit. *Viacom*, 212 F.3d at 725. "The phrase 'good conscience' implies a *careful and constructive consideration* of those parties that are necessary to the litigation." *Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987) (emphasis added). Consequently, courts have determined that "very few cases should be terminated . . . unless there has been a reasoned determination that their nonjoinder makes just resolution of the action *impossible.*" *Id.* (emphasis added); *see Shanshan Shao v. Beta Pharma, Inc.*, No. 3:14-CV-01177, 2017 WL 4955506, at *3 (D. Conn. Nov. 1, 2017) ("[A] flexible approach must be taken to issues relating to indispensable parties; a mechanical determination of who is an indispensable party is clearly inappropriate in light of Rule 19(b)'s reference to 'equity and good conscience.'" (cleaned up)).

Aetna fails to examine a single one of the Rule 19(b) factors. Instead, Aetna repeats the same meritless argument that Plaintiffs cannot obtain the relief they seek from Aetna alone. *See* ECF No. 79-1 at 47-50. This argument still falls flat, *see supra*, Sec. I.A & B, and the cases Aetna

cites do not save it. In each case, the court found that the "indispensable party" was inextricably involved in the alleged unlawful act or had complete control over the policies at issue in the suit. *See Takeda v Nw. Nat. Life Ins. Co.*, 765 F.2d 815, 819-21 (9th Cir. 1985) (the court found in favor of joinder because "[i]t [was] not clear whether [the employer] or [plan administrator] made the decisions about which plaintiffs complain" and determined the parties could proceed in state court because "judicial efficiency would not be promoted by permitting this case to go forward in federal court."); *Mattera*, 239 F.R.D. at 76 (finding that the evidence demonstrated that the alleged indispensable party had control over the compensation policies at issue in the suit and without that party, plaintiffs could not obtain the relief sought).

Here, by contrast, the absent parties' actions are not the subject of Plaintiffs' complaint. As previously stated, *see supra*, Sec. I.A & B, Plaintiffs seek damages related to *Aetna's* discriminatory conduct, not the payment of benefits from their insurance plans. *Compare* Second Am. Compl. ¶¶ 152-59 *with Takeda*, 765 F.2d at 817. Accordingly, the Court should deny Aetna's motion for dismissal under Rule 19.

## III. AETNA'S ATTEMPTS TO DISMISS MS. GORDON'S AND MS. AVALLE'S CLAIMS UNDER RULE 12(B)(6) FAIL.

Aetna seeks dismissal of Ms. Gordon's and Ms. Avalle's claims by misapplying statutory schemes outside of the ACA to their Section 1557 claims. *See* ECF No. 79-1 at 9, 12, 29-31, 39-42. Each attempt fails.

### A. Ms. Gordon is Not Required to Sue OPM for a Section 1557 Claim.

Aetna contends it cannot be sued for discriminating against Ms. Gordon because a Federal Employees Health Benefits Act ("FEHBA") regulation requires suit against OPM to challenge a denial of benefits made by OPM. ECF No. 79-1 at 29-31 (citing 5 C.F.R. § 890.107). These

regulations apply only to judicial review of final actions by OPM and are no barrier to a suit against Aetna for its discrimination.

The FEHBA regulation provides that an FEHB enrollee "may seek judicial review of OPM's final action on the denial of a health benefits claim" and that a "legal action to review *final action by OPM* involving such denial of health benefits must be brought against OPM and not against the carrier or the carrier's subcontractors." 5 C.F.R. § 890.107(c) (emphasis added). Were Ms. Gordon challenging a final OPM decision—which she is not—the regulation would clearly apply, and she would have needed to sue OPM. *See id.* But Ms. Gordon is not challenging OPM's final but untimely decision on her appeal. She is challenging Aetna's discriminatory coverage decision—which applied the GAFR Exclusion to deny her coverage and resulted in a protracted delay in her ability to get care and ultimately her need to pay for the GAFR herself at significant cost—as a violation of its own obligations under Section 1557. *See* Second Am. Compl. ¶ 50; *id.* at 52. The FEHBA regulation is silent on suits against FEHB carriers in their own right for their own actions. *See* 5 C.F.R. § 890.107(c). Section 1557 prohibits sex discrimination in health care by any health program or activity, that receives federal funding or is administered by a federal agency. 42 U.S.C. § 18116(a). As such, Aetna has an obligation to comply with Section 1557 in all its operations. *See Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 955 (9th Cir. 2020) (ACA "imposes an affirmative obligation not to discriminate in the provision of health care—in particular, to consider the needs of disabled people and not design plan benefits in ways that discriminate against them."); *see also Kulwicki*, 720 F. Supp. 3d at 116. Section 1557 provides

no safe harbor for insurance carriers[21] to discriminate against FEHB members.

The FEHBA regulations likewise do not permit carriers offering FEHB plans to evade responsibility for their own unlawful discrimination or other violations of federal law. The FEHBA regulations only protect procedural and contractual rights that flow from the FEHBA itself. *See generally,* 5 U.S.C. § 8901 *et seq*. But 5 C.F.R. § 890.107(c) authorizing judicial action to review OPM's final action on denial of a claim and the FEHBA regulations in toto are irrelevant to suits against an administrator, like Aetna, under a separate federal statute that prohibits discrimination in health programs and activities.

Indeed, FEHB members can sue insurance companies for federal and statutory law violations separate and apart from suits for benefits arising from the FEHBA. *See, e.g.*, *Roach v. Mail Handlers Ben. Plan*, 298 F.3d 847, 850−51 (9th Cir. 2002); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 1008−09 (N.D. Cal. 2016); *Negron v. Patel*, 6 F. Supp. 2d 366, 372−73 (E.D. Pa. 1998).

None of the cases cited by Aetna state otherwise. In fact, they do not concern Section 1557 claims at all. *Empire Healthchoice Assurance v. McVeigh* held that there was no federal question jurisdiction in a contract case by a FEHB carrier against the estate of a member, 547 U.S. 677, 699 (2006), and *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.* and *HCA*

---

[21]  "[C]arrier" is defined within FEHBA regulations as "a voluntary association, corporation, partnership, or other nongovernmental organization which is lawfully engaged in providing, paying for, or reimbursing the cost of health services under group insurance policies or contracts, medical or hospital service agreements, membership or subscription contracts, or similar group arrangements, in consideration of premiums or other periodic changes payable to the carrier, including a health benefits plan duly sponsored or underwritten by an employee organization and an association of organizations or other entities described in this paragraph sponsoring a health benefits plan[.]" 5 U.S.C. § 8901(7). Aetna is a carrier. Sheehy Decl. Ex. C at 4, ECF No. 79-8.

*Genesis, Inc. v. Group Health, Inc.* were brought by health care providers under state contract law contesting FEHB carriers' reimbursement rates for claims they paid, No. 13-cv-6551, 2014 WL 4058321 (S.D.N.Y. Aug. 15, 2014); No. 7:06-cv-150, 2006 WL 561243 (N.D.N.Y. Mar. 6, 2006). They provide no support for Aetna's claim that Ms. Gordon cannot sue Aetna for its violations of Section 1557.

Here, Ms. Gordon seeks to vindicate her Section 1557 right to access healthcare benefits free from discrimination by Aetna. Aetna's denials of coverage were based on the GAFR Exclusion in its own clinical policies and—though ultimately reversed by OPM—prevented Ms. Gordon from accessing needed surgery for approximately a year. Second Am. Compl. ¶¶ 41-49. Because she contests discrimination by Aetna, the FEHBA regulations provide no basis for dismissal of her claim. Ms. Gordon has brought suit against the proper defendant.

### B. Ms. Avalle Is Not Required to Exhaust Administrative Remedies Under Section 1557.

Neither Ms. Avalle nor any other plaintiff[22] brings an ERISA claim or any cause of action that falls under ERISA's statutory scheme. Aetna's argument that Ms. Avalle's Section 1557 claim is barred by ERISA, ECF No. 79-1 at 39-42, ignores that ERISA *does not preempt other federal claims*. ERISA's text expressly provides that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." 29 U.S.C. §1144(d). Accordingly, as multiple courts have held, ERISA does not preempt Section 1557 claims. *See, e.g.*, *C.P. by & through Pritchard v. Blue Cross Blue Shield of Ill.*, No. 3:20-cv-06145,

---

[22] Aetna again intimates without clarity that S.N., Dr. Herley, and Dr. Homnick's claims also fail for lack of exhaustion on the same basis. ECF No. 79-1 at 42 n.35. Aetna's contention fails equally to challenge their claims as it does to challenge Ms. Avalle's.

2022 WL 17788148, at *8 (W.D. Wash. Dec. 19, 2022) (requirement under ERISA that a third-party administrator "make decisions in 'accordance with the documents and instruments governing the plan,' 29 U.S.C. §1104(a)(1)(D), … must not be construed to 'invalidate or impair' Section 1557, 29 U.S.C. §1144(d)."); *Scott v. St. Louis Univ. Hosp.*, 600 F. Supp. 3d 956, 960 (E.D. Mo. 2022) ("Plaintiff has not alleged a claim pursuant to ERISA, and is not seeking to enforce [her] rights under an ERISA plan . . . ERISA does not preempt other federal law claims, including Plaintiff's claims pursuant to... the ACA.") (internal quotation marks omitted); *Tovar*, 342 F. Supp. 3d at 954 ("The Court will not construe ERISA to impair Section 1557.").[23]

ERISA's civil enforcement scheme and exhaustion requirement do not apply to this action, and neither Ms. Avalle—nor any other plaintiff—is required to exhaust administrative remedies under her plan to pursue her Section 1557 claim. *See* 42 U.S.C. § 18116; 45 C.F.R. § 92.3; *see also Rumble v. Fairview Health Servs.*, No. 14-cv-2037, 2015 WL 1197415, at *11 (D. Minn. Mar. 16, 2015) ("[P]laintiffs bringing Section 1557 race, disability, or sex discrimination claims would not have to exhaust administrative remedies."). Ms. Avalle's claim cannot be dismissed on the basis that she did not exhaust administrative remedies under ERISA.

## CONCLUSION

For the reasons explained above, this Court should deny Aetna's Motion to Dismiss.

---

[23] Aetna cites no case holding that a federal claim, like Section 1557, is preempted by ERISA, because it cannot. Aetna solely cites cases address preemption of *state* common law claims. ECF No. 79-1 at 39–41 (citing *Conkright v. Frommert*, 559 U.S. 506, 517 (2010); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208-09, 215 (2004); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 42 (1987); *Lea v. Republic Airlines, Inc.*, 903 F.2d 624, 632 (9th Cir. 1990); *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993)). Indeed, Aetna cherry picks the conclusion in *Aetna Health Inc. v. Davila*, which is: "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." 542 U.S. at 209.

DATED: May 16, 2025

Respectfully submitted,

/s/ Kelly Parry-Johnson
Kelly Parry-Johnson (admitted *pro hac vice*)
Gabriel Arkles (admitted *pro hac vice*)
Ezra Cukor (admitted *pro hac vice*)
Sydney Duncan (admitted *pro hac vice*)
Seran Gee (admitted *pro hac vice*)
ADVOCATES FOR TRANS EQUALITY
EDUCATION FUND
520 Eighth Avenue, Suite 2204
New York, NY 10018
Phone:(646) 993-1688
Fax: (646) 993-1686
kparry-johnson@transequality.org
garkles@transequality.org
ecukor@transequality.org
sduncan@transequality.org
sgee@transequality.org

Joseph J. Wardenski [ct31674]
WARDENSKI P.C.
134 West 29th Street, Suite 709
New York, NY 10001
Phone: (347) 913-3311
Fax: (347) 467-7237
joe@wardenskilaw.com

Christine E. Webber (admitted *pro hac vice*)
Harini Srinivasan (admitted *pro hac vice*)
Aniko R. Schwarcz (admitted *pro hac vice*)
Elizabeth M. McDermott*
COHEN MILSTEIN SELLERS & TOLL
PLLC
1100 New York Ave, NW, Suite 800
Washington, DC 20005
Phone: (202) 408-4600
Fax: (202) 408-4699
cwebber@cohenmilstein.com
aschwarcz@cohenmilstein.com
hsrinivasan@cohenmilstein.com

*Attorneys for Plaintiffs*

39

*Application for *pro hac vice* pending