# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BINAH GORDON *et al*.,<br><br>               Plaintiffs,<br><br>               v.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>               Defendant. | No. 3:24-cv-01447-VAB |

**SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION BY
PLAINTIFFS GENNIFER HERLEY AND JAMIE HOMNICK**

## TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................1

II.  ARGUMENT ......................................................................................................4

    A.  SKRMETTI'S EQUAL PROTECTION ANALYSIS DOES NOT APPLY TO STATUTORY SEX DISCRIMINATION CLAIMS UNDER SECTION 1557...................................4

        1.  Section 1557 prohibits a broader range of conduct by federally funded health programs than is proscribed by the Equal Protection Clause for state actors...........................................................................................4

        2.  The presumption of constitutionality afforded to state actors is inapplicable to private actors facing statutory civil rights claims......................5

    B.  SKRMETTI DOES NOT UNDERMINE PLAINTIFFS' LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR SECTION 1557 CLAIM. ....................................................8

        1.  Under controlling Second Circuit precedent, Plaintiffs need only show that sex was a motivating factor in Aetna's implementation of the GAFR Exclusion.....................................................................................8

        2.  Skrmetti does not impose a requirement on Section 1557 claims that Plaintiffs must prove the medical necessity of their GAFR surgery. .................9

        3.  Skrmetti Does Not Alter the Outcome that Aetna's GAFR Exclusion facially discriminates on the basis of sex under section 1557. .........................10

        4.  Skrmetti does not change that Aetna's GAFR Exclusion relies on impermissible sex stereotypes........................................................12

        5.  Skrmetti does not alter the outcome that Aetna's GAFR Exclusion is proxy discrimination under Section 1557...........................................14

    C.  EVEN IF THE BUT-FOR CAUSATION STANDARD APPLIED, PLAINTIFFS WOULD PREVAIL. ..............................................................................16

        1.  Skrmetti's dicta on Bostock is not controlling...................................16

        2.  Employing the but-for causation standard does not change Plaintiffs' likelihood of success on the merits....................................................17

III.  CONCLUSION ................................................................................................18

# TABLE OF AUTHORITIES

**CASES**

*Anonymous v. Omnicom Group,*
   852 F.3d 195 (2d Cir. 2017)...................................................................................13

*Back v. Hastings on Hudson Union Free School District,*
   365 F.3d 107 (2018)......................................................................................13, 14

*Baraket v. Holder,*
   632 F.3d 56 (2d Cir. 2011).....................................................................................16

*Berton v. Aetna Inc.,*
   No. 23-cv-01849, 2024 WL 869651 (N.D. Cal. Feb. 29, 2024)......................10, 17

*Blake v. Carbone,*
   489 F.3d 88 (2d Cir. 2007)......................................................................................7

*Bostock v. Clayton County,*
   590 U.S. 644 (2020).....................................................................................*passim*

*Brandt v. Griffin,*
   147 F.4th 867 (8th Cir. 2025) ...............................................................................17

*Bray v. Alexandria Women's Health Clinic,*
   506 U.S. 263 (1993).........................................................................................14-15

*City of Cleburne v. Cleburne Living Center,*
   473 U.S. 432 (1985)..........................................................................................6, 7

*Doe v. Columbia University,*
   831 F.3d 46 (2d Cir. 2016).............................................................................2, 8, 11

*Doe v. East Haven Board of Education,*
   200 F. App'x 46 (2d Cir. 2006) ............................................................................12

*Fitzgerald v. Barnstable School Committee,*
   555 U.S. 246 (2009)................................................................................................5

*Flack v. Wisconsin Department of Health Services,*
   328 F. Supp. 3d. 931 (W.D. Wis. 2018) .........................................................11, 13

*Gilead Community Services v. Town of Cromwell,*
   112 F.4th 93 (2d Cir. 2024) ....................................................................................8

*Grimm v. Gloucester County School Board,*
   972 F.3d 586 (4th Cir. 2020) ...............................................................................15

*Hazen Paper Co. v. Biggins,*
   507 U.S. 604 (1993)..............................................................................................14

*International Union v. Johnson Controls, Inc.,*
   499 U.S. 187 (1991)..................................................................................10, 13, 17

ii

*Jackson v. Birmingham Board of Education*,
    544 U.S. 167 (2005).....................................................................................................7

*L.B. v. Premera Blue Cross*,
    795 F. Supp. 3d 1311 (W.D. Wash. Aug. 12, 2025)............................................6, 7

*Los Angeles Department of Water & Power v. Manhart*,
    435 U.S. 702 (1978)..................................................................................3, 13, 14, 17

*MacNaughton v. Young Living Essential Oils, LC*,
    67 F.4th 89 (2d Cir. 2023)..........................................................................................17

*North Haven Board of Education v. Bell*,
    456 U.S. 512 (1982)...................................................................................................17

*Poe v. Drummond*,
    149 F.4th 1107 (10th Cir. 2025).................................................................................18

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989)...............................................................................................2, 13

*Pritchard v. Blue Cross Blue Shield of Illinois*,
    159 F.4th 646 (9th Cir. 2025)...............................................................................14, 15

*R.S. v. Board of Education of Hastings-On-Hudson Union Free School District*,
    371 F. App'x 231 (2d Cir. 2010).................................................................................5

*Radwan v. Manuel*,
    55 F.4th 101 (2d Cir. 2022).........................................................................................8

*Romer v. Evans*,
    517 U.S. 620 (1996).....................................................................................................5

*Schiebel v. Schoharie Central School District*,
    120 F.4th 1082 (2d Cir. 2024)............................................................................2, 8, 12

*Seminole Tribe v. Florida*,
    517 U.S 44 (1996).......................................................................................................16

*Tovar v. Essentia Health*,
    342 F. Supp. 3d 947 (D. Minn. 2018)........................................................................12

*United States v. Skrmetti*,
    605 U.S. 495 (2025)............................................................................................ *passim*

*United States v. Virginia*,
    518 U.S. 515 (1996).....................................................................................................6

*Washington v. Davis*,
    426 U.S. 229 (1976).....................................................................................................5

*Yusuf v. Vassar College*,
    35 F.3d 709 (2d Cir. 1994)...........................................................................................8

*Zarda v. Altitude Express, Inc.*,
    883 F.3d 100 (2d Cir. 2018)..............................................................................3, 12, 13, 14

**FEDERAL STATUTES**

Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116.................................................1, 4, 6

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ........................................................6

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ................................................6

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. amend. XIV, § 1 ......................................................................................................4

iv

## I.    INTRODUCTION

As ordered by this Court on January 8, 2026, ECF No. 137, Plaintiffs Gennifer Herley and Jamie Homnick ("Plaintiffs") respectfully submit this supplemental brief in support of their pending Motion for Preliminary Injunction ("PI Motion"), ECF No. 61. In this brief, Plaintiffs explain why the Supreme Court's June 18, 2025, decision in *United States v. Skrmetti*, 605 U.S. 495 (2025), does not impact Plaintiffs' likelihood of success on the merits of their sex discrimination claim against Defendant Aetna Life Insurance Company ("Defendant" or "Aetna") under Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116 ("Section 1557"). For the three reasons discussed below, *Skrmetti* is not dispositive of Plaintiffs' claim that Aetna's categorical exclusion on gender-affirming facial reconstruction surgery ("GAFR"), memorialized in Aetna's Clinical Policy Bulletin 0615 ("CPB 0615"), violates Section 1557's statutory prohibition on sex discrimination in covered health programs. ECF No. 62-7.

First, *Skrmetti*'s holding is cabined to the Fourteenth Amendment Equal Protection challenge of Tennessee's Senate Bill 1 ("SB 1"), which banned certain medical and surgical treatments for minors when intended to treat gender dysphoria. *Skrmetti*, 605 U.S. at 510. The Supreme Court held that SB 1 incorporates two classifications—age and medical use—but not sex. *Id.* at 511-14. Since neither age nor medical purpose are suspect or quasi-suspect classifications, the Supreme Court applied rational basis review and held that SB 1 survived that permissive level of constitutional scrutiny. *Id.* at 522. The *Skrmetti* Court acknowledged that its decision does not extend past the constitutional claim before it, 605 U.S. at 525, and thus it is inapplicable to evaluating statutory discrimination claims regarding insurance exclusions, like those found in CPB 0615, that apply to services "performed as a component of a gender transition" regardless of diagnosis or patient age. ECF No. 62-7 at 5.

Second, *Skrmetti* did not address, let alone change, the "motivating factor" standard applicable in this Circuit to claims under Section 1557 and other federal Spending Clause civil rights statutes. *See Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1096 (2d Cir. 2024); *Doe v. Columbia Univ.*, 831 F.3d 46, 53 (2d Cir. 2016). Although the *Skrmetti* majority reiterated the scope and holding of the Supreme Court's earlier decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020)—a Title VII case applying the but-for causation analysis to employment discrimination claims brought by gay and transgender plaintiffs—its brief foray into how the but-for standard might apply to SB 1 is dicta and is neither controlling on this Court nor helpful in analyzing claims under Section 1557, where the "more forgiving" motivating factor causation standard applies. *Bostock*, 590 U.S. at 657 ("[B]ecause nothing in our analysis depends on the motivating factor test, we focus on the more traditional but-for causation standard.").

Third, Plaintiffs remain likely to succeed on the merits of their Section 1557 claim that the GAFR Exclusion is facially discriminatory on the basis of sex. Further, *Skrmetti* left undisturbed at least two independent avenues for establishing sex-based discrimination: sex stereotyping and proxy discrimination. The sex stereotyping doctrine enshrined in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989), and applied by the Second Circuit and other courts to Title IX and Section 1557 claims, remains available after *Skrmetti*. Indeed, Aetna's GAFR Exclusion is based on multiple sex-based stereotypes and overbroad sex-based generalizations—including the false assumption that facial reconstructive procedures are always cosmetic when sought by transgender women, and that a transgender woman must live with the consequences of male-appearing facial features that subject her to gender dysphoria, distress, discrimination, and harassment, even if she can access other forms of gender-affirming care intended to prevent those same harms.

Likewise, proxy discrimination claims, as recognized by the Second Circuit and the Supreme Court, remain available to statutory discrimination claims after *Skrmetti. See Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 112 (2d Cir. 2018), *aff'd sub nom.*, *Bostock*, 590 U.S. 644 (Title VII prohibits discrimination on the basis of "traits that are associated with sex as a proxy for sex"); *Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702, 711-13 (1978) (under Title VII, discrimination on the basis of actuarial distinctions constitutes sex discrimination when such distinctions are informed entirely by sex). Specifically, the GAFR Exclusion of CPB 0615 utilizes "gender transition" as a proxy for sex and thus constitutes sex discrimination under Section 1557. ECF No. 62-7 at 5. Based on the record before the Court on Plaintiffs' preliminary injunction motion, Plaintiffs are likely to show that Aetna's GAFR Exclusion was impermissibly motivated by sex stereotypes in violation of Section 1557.[1]

In sum, *Skrmetti* does not undermine Plaintiffs' strong likelihood of success on their claim that Aetna violates Section 1557 by categorically excluding GAFR when "performed as a component of a gender transition." ECF No. 62-7 at 5. For this reason, and those previously briefed, Plaintiffs satisfy the factors warranting preliminary relief. This Court should issue a preliminary injunction prohibiting Aetna from applying the GAFR Exclusion contained in CPB 0615 (and codified in any similar policy, practice, or procedure) that functions to categorically deny Plaintiffs' requests for GAFR coverage under their Aetna-administered health insurance plans.

---

[1] Plaintiffs may also be able to show, following discovery, that Aetna's purported justifications are pretext for intentional sex-based discrimination that can be demonstrated by circumstantial evidence. *See* ECF No. 63-1 at 36-37. The Court need not reach that issue at this juncture, however, since Plaintiffs have established the requisite likelihood of success on the other bases described in this brief and in their earlier briefing.

## II.    ARGUMENT

### A.    *Skrmetti*'s Equal Protection Analysis Does Not Apply to Statutory Sex Discrimination Claims Under Section 1557.

The *Skrmetti* Court did not broach the question of how its analysis might apply to broader statutory prohibitions against discrimination on the basis of sex, including those under Section 1557. 605 U.S. at 520 ("We have not yet considered whether *Bostock*'s reasoning reaches beyond the Title VII context, and we need not do so here."). *Skrmetti*'s holding therefore does not disturb Supreme Court and Second Circuit precedent for statutory sex discrimination claims under Section 1557 and Title IX. No such claims were before the Supreme Court in *Skrmetti*, and neither the Supreme Court nor the Second Circuit have since applied *Skrmetti* to narrow Section 1557's statutory protections for transgender plaintiffs. *Skrmetti* should not be imputed to Plaintiffs' Section 1557 claim because: (1) the Equal Protection Clause permits classifications based on sex in some circumstances that Section 1557 does not; (2) courts afford deference to legislatures that is not afforded to covered entities under Section 1557; (3) courts account for legislatures' accountability to voters, which is something private companies do not have.

### 1.    Section 1557 prohibits a broader range of conduct by federally funded health programs than is proscribed by the Equal Protection Clause for state actors.

Section 1557 expressly prohibits a broader range of sex-based conduct by federally funded health programs than what is considered unconstitutional sex discrimination under the Fourteenth Amendment's Equal Protection Clause. Plaintiffs will prevail on their Section 1557 claim by showing that they are "be[ing] denied the benefits of, or . . . subjected to discrimination under" Aetna's administration of their health insurance benefits (a covered health program or activity) "on the ground prohibited under title IX of the Education Amendments of 1972," i.e., "on the basis of sex." 42 U.S.C. § 18116(a); *see also* ECF No. 63-1 at 24. In contrast, under the Equal Protection Clause, U.S. CONST. amend. XIV, § 1, a governmental policy based on a sex classification will

pass constitutional muster if it furthers an important government interest and does so by means substantially related to that interest. *Skrmetti*, 605 U.S. at 510 (quoting *United States v. Virginia*, 518 U. S. 515, 533 (1996)).

Therefore, the analysis of sex discrimination claims under Section 1557 and Title IX does not follow lockstep with the analysis under Equal Protection Clause. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 256-58 (2009) ("Even where particular activities and particular defendants are subject to both Title IX and the Equal Protection Clause, the standards for establishing liability may not be wholly congruent."); *R.S. v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 371 F. App'x 231, 234 (2d Cir. 2010) (citing *Fitzgerald* for the proposition that Title IX and equal protection standards can differ); *cf. Washington v. Davis*, 426 U.S. 229, 239 (1976) ("We have never held that the constitutional standard for adjudicating claims [under the Equal Protection Clause] is identical to the standards applicable under Title VII."). Accordingly, *Skrmetti* does not narrow Section 1557's broad prohibition against sex discrimination in covered health programs and activities.

> 2. <u>The presumption of constitutionality afforded to state actors is inapplicable to private actors facing statutory civil rights claims.</u>

The constitutional deference afforded to governmental defendants does not extend to statutory claims against federal funding recipients under Section 1557.

First, the principles underlying equal protection jurisprudence are different than those underlying Section 1557 discrimination claims. The Equal Protection Clause "must coexist with the practical reality that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Skrmetti,* 605 U.S. at 509 (citing *Romer v. Evans,* 517 U.S. 620, 631 (1996)). Thus, the Equal Protection Clause permits sex-based classifications in limited circumstances. *Skrmetti*, 605 U.S. at 510 (sex classifications pass constitutional muster

only if the "discriminatory means employed are substantially related" to the achievement of "important governmental objectives") (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)). To reconcile equal protection principles with the reality of legislative line-drawing, varying levels of scrutiny apply if a suspect or quasi-suspect class—like race, alienage, or sex—is at issue. *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 441-43 (1985).

By contrast, Congress enacted Section 1557 and other Spending Clause civil rights statutes to protect individuals from differential treatment or discrimination by private and public entities that receive federal financial assistance. *See e.g.,* Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. While sex discrimination claims under the Equal Protection Clause are necessarily analyzed using a balancing test, a defendant will be liable under Section 1557 if they violate the plain statutory language: an individual "shall not . . . [on the basis of sex] . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a) (incorporating "on the basis of sex" from Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681).

Second, the tiers of scrutiny created by the Supreme Court are intended to afford deference to legislatures. In *Skrmetti*, the Court reviewed SB 1 for constitutionality while affording the appropriate level of deference to the state legislature. 605 U.S. at 210; *see also City of Cleburne*, 473 U.S. at 440-41 (1985) (explaining the rationale behind the varying levels of scrutiny for classifications based on race, national origin, alienage, sex, and illegitimacy)*; cf. L.B. v. Premera Blue Cross*, 795 F. Supp. 3d 1311, 1313 (W.D. Wash. 2025) ("In contrast to *Skrmetti*, in this matter, plaintiffs do not present a constitutional tort claim or challenge any governmental action, and unlike the *Skrmetti* Court, this Court need not decide what level of scrutiny to apply."). In

application, the Supreme Court emphasized the state's power to regulate medicine and the latitude that should be given to state legislatures in doing so. *Skrmetti*, 605 U.S. at 524 ("We afford states wide discretion to pass legislation in areas where there is medical and scientific uncertainty.") (citation modified). This deference recognizes that "even improvident decisions will eventually be rectified by the democratic processes." *Id.* at 550 (quoting *City of Cleburne*, 473 U.S. at 440).

By contrast, no deference is afforded to covered entities in the context of statutory discrimination claims; therefore, the court's role is to enforce the plain language of the statute enacted by Congress. *Blake v. Carbone*, 489 F.3d 88, 99 (2d Cir. 2007) ("Our role in statutory interpretation is limited to the plain language enacted by Congress."); *L.B.*, 795 F. Supp. 3d at 1313-14 ("*Skrmetti* concerned statutory language that bears no resemblance" to the coverage policies challenged by plaintiffs under Section 1557). Unlike state legislatures, voters cannot remedy the discriminatory policies and decision making of private actors like Aetna. *L.B.*, 795 F. Supp. 3d at 1313 ("Premera's medical policies are not governed by the ballot box and, with respect to this litigation between individuals and their health insurers, 'democratic processes' play no role."). In short, Section 1557 does not afford Aetna the same latitude to consider sex in the administration of health insurance benefits that a state actor might have under the Constitution. Rather, courts must construe Section 1557's protections broadly to achieve the statute's purpose of preventing discrimination in federally funded health programs. *See N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982) ("There is no doubt that if we are to give Title IX the scope that its origins dictate, we must accord it a sweep as broad as its language") (citation modified); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005) ("'Discrimination' is a term that covers a wide range of intentional unequal treatment; by using such a broad term, Congress gave [Title IX] a broad reach."). Absent any express statutory exemptions, discrimination claims under Section

1557 must be interpreted expansively. *Bostock,* 590 U.S. at 669 ("[W]hen Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule.").

   **B.     *Skrmetti* Does Not Undermine Plaintiffs' Likelihood of Success on the Merits of Their Section 1557 Claim.**

*Skrmetti* has not impacted Plaintiffs' likelihood of success on their Section 1557 claim. Plaintiffs can establish that sex was a motivating factor in the implementation of the GAFR Exclusion in three ways: *first*, the GAFR Exclusion is facially discriminatory; *second*, the GAFR Exclusion relies on sex stereotypes; and *third*, the GAFR Exclusion uses "gender transition" as a proxy for sex. Even if the but-for causation standard were to apply here, Plaintiffs can meet that higher standard.

   1.   Under controlling Second Circuit precedent, Plaintiffs need only show that sex was a motivating factor in Aetna's implementation of the GAFR Exclusion.

Section 1557 sex discrimination claims are governed by a motivating-factor causation standard. As the Second Circuit has made clear, discrimination "on the basis of sex" under Title IX (and by extension, Section 1557) is established where sex is a motivating factor in the challenged decision. *Columbia Univ.*, 831 F.3d at 53 (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). Sex need not be the sole cause or a determinative cause of the challenged action. *Schiebel*, 120 F.4th at 1096; *Columbia Univ.,* 831 F.3d at 53 ("on the basis of sex" means sex is a "motivating factor"); *cf. Bostock*, 590 U.S. at 661 (under the but-for causation standard, it is immaterial that "other factors may contribute to the decision"); *see also* ECF No. 63-1 at 27 (discussing motivating factor standard).[2]

---

[2] Although the Second Circuit has questioned how the Supreme Court might apply the motivating factor standard in future Title IX cases, *see Radwan v. Manuel*, 55 F.4th 101, 131 (2d Cir. 2022), it has continued to recognize its duty to apply this standard unless and until it is abrogated by the Supreme Court, *id.*, and has done so as recently as 2024, *see Schiebel*, 120 F.4th at 1096. *Accord Gilead Cmty. Servs. v. Town of Cromwell*, 112 F.4th 93, 100 (2d Cir. 2024) (rejecting invitation to apply but-for causation standard instead of motivating factor standard in Fair Housing Act case absent clear direction to the contrary from the Supreme Court or the *en banc* Second Circuit).

In this case, Aetna used sex as a motivating factor in creating the GAFR Exclusion and in applying it to Plaintiffs' health plans by (1) expressly conditioning coverage on whether the insured is undergoing a gender transition, (2) relying on impermissible sex stereotypes, and (3) using proxies for sex as reasons to engage in discriminatory conduct. *See* ECF No. 62 at 33-34. For the reasons outlined above, *Skrmetti* does not disturb these theories of liability.

> 2. *Skrmetti* does not impose a requirement on Section 1557 claims that Plaintiffs must prove the medical necessity of their GAFR surgery.

*Skrmetti* does not require, as Aetna contended at argument, that Plaintiffs must prove the medical appropriateness or necessity of the requested care as a threshold matter before the Court assesses whether a challenged policy is discriminatory. Jan. 8, 2026, Hr'g Tr., ECF No. 139, at 32-34. Aetna's atextual framing incorrectly introduces burdens on the Plaintiffs that are found nowhere in the pertinent statutes, or in *Skrmetti* and recent cases interpreting it.

*Skrmetti* did not hold that courts must resolve contested questions of medical necessity before assessing whether a policy discriminates on the basis of sex. To the contrary, the Court was not adjudicating the medical merits of particular treatments but instead evaluating whether the challenged statute classified on the basis of sex for constitutional purposes. *Skrmetti*, 605 U.S. at 522 (explaining the standard for rational basis review). Here, Plaintiffs do not ask the Court to second-guess clinical judgments or to mandate coverage for any particular procedure. Rather, they challenge a policy that, by design, replaces individualized medical necessity review with a blanket exclusion triggered when the care is sought "as a component of a gender transition." ECF No. 62-7 at 5-6. This distinction is dispositive: nothing in *Skrmetti* authorizes covered entities under Section 1557 to insulate sex-based exclusions from scrutiny by labeling them as "medical" judgments, particularly where the record shows that Aetna applies the categorical exclusion iin CPB 0615 rather than making any individualized determinations of medical necessity.

Plaintiffs challenge CPB 0615 because it categorically excludes coverage for facial reconstruction surgeries only when performed "as a component of gender transition." ECF No. 62-7 at 5. This policy forecloses the availability of an individualized medical necessity review for Plaintiffs and other transgender individuals while permitting qualifying non-transgender individuals to access such a review. Section 1557 does not require Plaintiffs to establish the ultimate medical necessity of a particular procedure to demonstrate that the categorical exclusion denies them, on the basis of sex, equal access to Aetna-administered health benefits (including an individualized medical necessity review) that are afforded to non-transgender Aetna plan participants. Plaintiffs have made such a showing.

3. *Skrmetti* does not alter the outcome that Aetna's GAFR Exclusion facially discriminates on the basis of sex under section 1557.

Nothing in *Skrmetti* changes the fact that, on its face, CPB 0615 considers all GAFR procedures to be "not medically necessary and cosmetic" only when sought "as a component of gender transition." ECF No. 62-7 at 5. The plain language of the GAFR Exclusion makes sex a motivating factor in Aetna's adoption of the policy and application of the policy to Plaintiffs.

The GAFR Exclusion is fundamentally different than the SB 1 statute at issue in *Skrmetti*. Unlike SB 1, the GAFR Exclusion does not, on its face, consider age or diagnoses; rather, it references sex and sex-based considerations and imposes an additional burden on transgender women that is not placed on non-transgender individuals seeking medically necessary GAFR. *See, e.g., Int'l Union v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991) (policy was facially discriminatory because it required some women to provide proof of infertility); *Berton v. Aetna Inc.*, No. 23-cv-01849, 2024 WL 869651, at *4 (N.D. Cal. Feb. 29, 2024) (infertility policy was facially discriminatory because it imposed an additional burden on same-sex couples). The GAFR Exclusion applies only to facial reconstruction procedures "performed as a component of a gender

transition." ECF No. 62-7 at 5-6. To determine whether a facial reconstruction procedure is a "component of a gender transition," Aetna must necessarily examine the sex assigned at birth of the person requesting the procedures. *Id.* Aetna cannot define "gender transition" without reference to sex and by extension, cannot decide whether to apply CPB 0615 without considering sex. Aetna's application of a sex-based rule renders CPB 0615 facially discriminatory, in violation of Section 1557.

Unlike in *Skrmetti*, where the "mere reference to sex" did not automatically trigger heightened scrutiny under the Court's constitutional analysis, 605 U.S. at 512, referencing sex in the present context will and does result in facial discrimination under Section 1557. *See Bostock*, 690 U.S. at 660. As the Supreme Court explained in *Bostock*, an employer who discriminates against an employee because she is transgender discriminates on the basis of sex because transgender status is "inextricably bound up in sex." *Id.* at 660-61. To discriminate on the grounds of transgender status is "to intentionally treat individual employees differently because of their sex," *id.* at 661, even if the employer "never learns any applicant's sex," *id.* at 669. This is because "Title VII prohibits all forms of discrimination because of sex, however they may manifest themselves or whatever other labels might attach to them." *Id.* at 670. Because courts in this Circuit look to Title VII to interpret Title IX—as incorporated by reference into Section 1557—Section 1557 prohibits discrimination based on traits that are "bound up in sex." *Id.* at 660-61; *see also Columbia Univ.*, 831 F.3d at 55 (Title VII provides the proper framework for Title IX claims).

In this case, CPB 0615 does more than merely refer to sex—it establishes a sex-based rule. Even before *Bostock*, federal courts recognized the inextricable link between sex and coverage exclusions like the CPB 0615 GAFR Exclusion. *See, e.g., Flack v. Wis. Dept. of Health Servs.*, 328 F. Supp. 3d. 931, 948 (W.D. Wis. 2018) (insurance exclusion for "transgender surgery" is a

"straightforward case of sex discrimination" under Section 1557); *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 952-53 (D. Minn. 2018) (recognizing that Section 1557 prohibits discrimination on the basis of gender identity, and that the challenged insurance exclusion for "gender reassignment" services constituted sex discrimination under Section 1557). Just as an employer requirement that asks transgender applicants to "tick a box" necessarily relies on sex, excluding coverage for "gender transition" procedures cannot be understood without reference to sex. *Bostock*, 690 U.S. at 668. "[T]ry writing out the instructions for who should check the box without using the words man, woman, or sex (or some synonym). It can't be done." *Id.* at 668-69. Finally, the fact that both transgender men and women may be barred from coverage for facial reconstruction surgery under the policy cannot insulate Aetna from liability: rather than "avoiding…exposure," this approach instead "doubles liability." *Id*. at 659. Therefore, *Skrmetti* does not change Plaintiffs' likelihood of success on their Section 1557 claim and thus, their entitlement to a preliminary injunction.

4.  *Skrmetti* does not change that Aetna's GAFR Exclusion relies on impermissible sex stereotypes.

*Skrmetti* did not change Supreme Court or Second Circuit precedent regarding unlawful discrimination based on sex stereotyping. Discrimination based on sex stereotypes is cognizable sex discrimination. *Zarda*, 883 F.3d at 119 (concluding, in a Title VII case, that "the lens of gender stereotyping provides [a] basis for concluding that sexual orientation discrimination is a subset of sex discrimination."); *see also Schiebel*, 120 F.4th at 1104-06 (explaining that like Title VII, Title IX prohibits reliance on sex stereotypes when investigating allegations of misconduct); *Doe v. E. Haven Bd. of Educ.*, 200 F. App'x 46, 48 (2d Cir. 2006) (abuse that "reflects sex-based stereotypes," along with other evidence, could lead a reasonable fact finder to conclude that the student was harassed because of her sex in violation of Title IX). Sex stereotyping encompasses "stereotypes

12

about both how the sexes are and how they should be." *Zarda,* 883 F.3d at 119 (citing *Price Waterhouse*, 490 U.S. at 250); *see also Bostock*, 590 U.S. at 662. Such stereotypes include "any belief that depends, even in part, on sex," including beliefs that are grounded in fact, lack a malevolent motive, or even stem from a benevolent one. *Zarda*, 833 F.3d at 122 (moral opposition to same-sex relationships necessarily implicates sex); *see also Manhart*, 435 U.S. at 704-05 (accurate longevity predictions based on sex constitute impermissible sex stereotyping); *Johnson Controls*, 499 U.S. at 199 (fetal protection plan discriminated against women by not requiring male counterparts to demonstrate proof of medical sterility). One way to identify a stereotype is by asking "whether the behavior or trait at issue would have been viewed more or less favorably if the employee were of a different sex." *Zarda*, 883 F.3d at 120 (citing *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 120 n.10 (2d Cir. 2004)).

Here, Aetna's GAFR Exclusion is motivated by impermissible sex stereotypes. ECF No. 63-1 at 33-34. Its plain terms reflect the generalization that transgender women ought not seek facial features that are typically feminine, even when medically necessary to treat a health condition. It further assumes that when transgender women do seek facial surgery, it is always for cosmetic reasons. ECF No. 63-1 at 33-34; *see also Anonymous v. Omnicom Grp.,* 852 F.3d 195, 201 (2d Cir. 2017) (reversing dismissal of harassment claim based on statements that plaintiff was effeminate); *Flack*, 328 F. Supp. 3d. at 951 ("[T]he Challenged Exclusion feeds into sex stereotypes by requiring all transgender individuals receiving Wisconsin Medicaid to keep genitalia and other prominent sex characteristics consistent with their natal sex no matter how painful and disorienting it may prove for some.").

5.  *Skrmetti* does not alter the outcome that Aetna's GAFR Exclusion is proxy discrimination under Section 1557.

*Skrmetti* did not foreclose that Plaintiffs have an avenue to a likelihood of success on the merits of their claim under a theory of proxy discrimination. The Supreme Court has long forbade using a seemingly neutral trait as a proxy for a protected characteristic as a workaround to flout nondiscrimination protections. *See e.g., Manhart*, 435 U.S. at 712-13 (discrimination based on life expectancy was an impermissible proxy for sex); *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 611 (1993) (proxy discrimination for age discrimination is impermissible). The Court in *Skrmetti* acknowledged that the prohibition on proxy discrimination remains unchanged. 605 U.S. at 514 ("Of course, a State may not circumvent the Equal Protection Clause by writing in abstract terms."); *see also Pritchard v. Blue Cross Blue Shield of Ill.*, 159 F.4th 646, 671-72 (9th Cir. 2025) (stating that *Skrmetti* did not foreclose proxy discrimination claims under Section 1557, and that the "fit between transgender people and people suffering from gender dysphoria is strong").

*Zarda*'s approach to proxy discrimination remains intact. As the Court identified in the statutory context, discrimination based on traits that are proxies for sex is impermissible. *Zarda*, 883 F.3d at 112. The Court explained, "'any meaningful regime of antidiscrimination law must encompass' proxy discrimination because otherwise actors could use such stand-ins to work 'the rankest sort of discrimination.'" *Id.* (citing *Back*, 365 F.3d at 119 n.9). It further concluded that sexual orientation was a proxy for sex. *Id.* at 119. *Bostock* affirmed *Zarda*'s rationale and applied it with equal force to transgender status. 590 U.S. 644, 660-62 (2020) (comparing two female employees and changing only the sex they were labeled at birth to determine if the outcome would be different).

When a proxy category is sufficiently closely associated with a protected classification, courts may infer facial discrimination. *Pritchard,* 509 U.S. at 672; *see also Bray v. Alexandria*

14

*Women's Health Clinic,* 506 U.S. 263, 270 (1993) ("Some activities may be such an irrational object of disfavor that, if they are targeted, and if they also happen to be engaged in exclusively or predominantly by a particular class of people, an intent to disfavor that class can readily be presumed. A tax on wearing yarmulkes is a tax on Jews."). There need not be an exact match between the proxy and the grounds. *Id.*

Here, "gender transition" is a proxy for transgender status and, therefore, sex. *Bostock*, 690 U.S. at 660-61 (transgender status is "inextricably bound up with sex"). Gender transition and transgender status are functionally inseparable. *See Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 594 (4th Cir. 2020) (defining transgender people as "people who consistently, persistently, and insistently express a gender that . . . we would think of as [different from] their assigned sex"). Indeed, the medical need for gender transition is most always as treatment for gender dysphoria, which occurs when the incongruence between a person's birth assigned sex and their gender identity leads to clinically significant distress. Berli Decl. ¶ 11, ECF No. 62-1. The incongruence between sex assigned at birth and gender identity is the hallmark of being transgender. *See id.* Aetna's own CPB 0615 acknowledges as much. ECF No. 62-7 at 15-16 (quoting WPATH, discussing gender dysphoria and the medical need for gender affirming surgery); *see also Pritchard*, 159 F.4th at 672 ("The fit between transgender people and people suffering from gender dysphoria is strong. Only transgender people can suffer from gender dysphoria."). This close relationship underscores that "gender transition" in CPB 0615 is a proxy for transgender status.

For the foregoing reasons, *Skrmetti* has not altered that sex is unmistakably a motivating factor in the implementation of the GAFR Exclusion.

15

**C.    Even If the But-For Causation Standard Applied, Plaintiffs Would Prevail.**

*Skrmetti*'s discussion of the but-for causation standard in *Bostock* is dicta. Even assuming, *arguendo,* that it applies, Plaintiffs also can establish a likelihood of success on the merits under a but-for causation standard.

1.    *Skrmetti*'s dicta on *Bostock* is not controlling.

In response to the dissent, the *Skrmetti* majority delves into a hypothetical application of the Court's earlier decision in *Bostock* to individual situations that may arise under SB 1, stopping short of reaching the question of whether *Bostock* extends beyond Title VII. *Skrmetti*, 605 U.S. at 519-20. This was because, under *Skrmetti*'s facts, the but-for causation standard used in *Bostock* would compel the same result. *Id*. This portion of the *Skrmetti* decision is dicta and applies a more stringent standard than the motivating factor causation standard applied to Section 1557 claims. *See supra* § II.A.

The *Skrmetti* Court's discussion of *Bostock* is dicta because it did not resolve a question necessary to the holding. "[I]t is not substantive discussion of a question or lack thereof that distinguishes holding from dictum, but rather whether resolution of the question is necessary for the decision of the case." *Baraket v. Holder*, 632 F.3d 56, 59 (2d Cir. 2011) (citation modified); *cf. Seminole Tribe v. Florida*, 517 U.S 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."). Indeed, in *Skrmetti*, the Court began its discussion of *Bostock* by acknowledging that it did not need to determine whether *Bostock* controls outside the Title VII context to resolve the question before it. *Skrmetti*, 605 U.S. at 520.

2.  <u>Employing the but-for causation standard does not change Plaintiffs' likelihood of success on the merits.</u>

Even if the but-for causation standard were to apply to this case, the outcome would remain the same. *Skrmetti* does not disturb the facial discrimination, sex stereotyping, and proxy theories presented above for which Plaintiffs have demonstrated a substantial likelihood of success. *See supra*, § II.B. As the Supreme Court has emphasized, events may have multiple but-for causes, and the presence of additional reasons for a decision does not eliminate liability where sex played an impermissible role. *Bostock*, 590 U.S. at 656-57. Indeed, when sex is a but-for cause, it is necessarily a motivating factor—although the inverse is not required. Thus, even if Aetna asserts additional rationales for its categorical exclusion of GAFR, Plaintiffs establish a violation so long as sex also played a role in the Exclusion. And where, as here, a policy facially classifies or operates based on sex, no additional proof of discriminatory intent is required. *See Johnson Controls*, 499 U.S. at 199; *accord Berton*, 2024 WL 869651, at *3 ("Where a claim of discriminatory treatment is based upon facial discrimination, a plaintiff need not otherwise establish the presence of discriminatory intent.") (citation modified). Nothing in *Skrmetti* alters this settled causation framework. Accordingly, *Skrmetti* does not heighten Plaintiffs' burden under Section 1557.[3]

Moreover, Plaintiffs can also prevail using the "simple test" discussed in *Bostock,* which instructs us to change one thing and see if there is a different result. *Bostock*, 590 U.S. at 671; *see also Manhart*, 435 U.S. at 711. If Plaintiffs were assigned female at birth and sought coverage for

---

[3] In its Notice of Supplemental Authority, Aetna cites to two out-of-circuit equal protection cases decided after *Skrmetti*: *Brandt v. Griffin*, 147 F.4th 867 (8th Cir. 2025), and *Poe v. Drummond*, 149 F.4th 1107 (10th Cir. 2025). ECF No. 134 at 2-3. *Brandt* and *Poe* are inapplicable in the present case for the same reasons that *Skrmetti* is irrelevant. *See MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 98 (2d Cir. 2023) (rejecting application of out-of-circuit case law as not mandatory or persuasive). Both *Brandt* and *Poe*, like *Skrmetti*, considered Equal Protection challenges to state laws banning medical care for minors. *Brandt*, 147 F.4th at 877; *Poe*, 149 F.4th at 1119. The Eighth and Tenth Circuits applied *Skrmetti* in upholding the laws. *Brandt*, 147 F.4th at 878; *Poe*, 149 F.4th at 1123. Neither case opines on the questions presented to this Court here.

medically necessary facial surgeries to reconstruct typically female features, CPB 0615 would not be an impediment—in fact, it would not factor into their coverage determination whatsoever. Their claim would be evaluated under sex-neutral criteria, such as the plan definition of medical necessity, reconstructive surgery, and relevant sex-neutral CPBs (such as CPB 0031, "Cosmetic Surgery"). *See* ECF No. 62 at 32-33 (explaining the differential treatment by Aetna of transgender and non-transgender women requesting facial reconstruction surgeries). Changing one thing—the Plaintiffs' sex assigned at birth—alters the outcome. Because Plaintiffs were assigned male at birth, CBP 0615's GAFR Exclusion bars coverage without any individualized inquiry or application of sex-neutral criteria to determine medical necessity. Applying that test, sex is a but-for cause, and therefore a motivating factor, in Aetna's implementation of the discriminatory GAFR Exclusion. Aetna therefore violates Section 1557 under both standards. *See also* ECF No. 62 at 32 (discussing application of the *Bostock* test).

## III.    CONCLUSION

For the foregoing reasons, the Supreme Court's recent decision in *Skrmetti* and the out-of-circuit decisions based on *Skrmetti* have no impact on Plaintiffs' entitlement to a preliminary injunction. This Court should grant a preliminary injunction barring Aetna from enforcing the GAFR Exclusion in CPB 0615 and requiring it to review Plaintiffs' claims for medical necessity using the same clinical criteria applied to other gender-affirming surgeries and GAFR requests in states that require individualized review.

DATED: January 23, 2026          Respectfully submitted,

/s/ Joseph J. Wardenski
Joseph J. Wardenski
WARDENSKI P.C.
134 West 29th Street, Suite 709
New York, NY 10001
(347) 913-3311
joe@wardenskilaw.com

Christine E. Webber*
Harini Srinivasan*
Aniko R. Schwarcz*
Elizabeth M. McDermott*
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave, NW, Suite 800
Washington, DC 20005
Phone: (202) 408-4600
cwebber@cohenmilstein.com
hsrinivasan@cohenmilstein.com
aschwarcz@cohenmilstein.com
emcdermott@cohenmilstein.com

Gabriel Arkles*
Ezra Cukor*
Sydney Duncan*
Kelly Parry-Johnson*
Seran Gee*
ADVOCATES FOR TRANS EQUALITY EDUCATION FUND
520 Eighth Avenue, Suite 2204
New York, NY 10018
Phone:(646) 993-1688
garkles@transequality.org
ecukor@transequality.org
sduncan@transequality.org
kparry-johnson@transequality.org
sgee@transequality.org

*Admitted pro hac vice

Attorneys for Plaintiffs