**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| BINAH GORDON *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>Defendant. | No. 3:24-cv-01447-VAB |

**REPLY TO DEFENDANT'S SUPPLEMENTAL BRIEF BY
PLAINTIFFS GENNIFER HERLEY AND JAMIE HOMNICK**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ....................................................................................................................................... 1

    I.    AETNA MISCHARACTERIZES ITS OWN POLICIES TO SUPPORT ITS *SKRMETTI* ARGUMENT. ........................................................................................................................... 1

        A.    Aetna misstates its own clinical policy on cosmetic surgery. .................................. 1

        B.    Aetna's discussion of facial surgery in the context of unrelated medical conditions is irrelevant. ........................................................................................... 2

        C.    Aetna does not conduct "individualized" medical necessity reviews for GAFR. ....................................................................................................................... 2

    II.    THIS COURT SHOULD REJECT AETNA'S ARGUMENT THAT *SKRMETTI* APPLIES TO PLAINTIFFS' SECTION 1557 CLAIMS. ......................................................................... 3

        A.    The GAFR Exclusion is motivated by sex. ............................................................. 4

        B.    *Skrmetti* has no bearing on Plaintiffs' sex stereotyping theory. ............................... 6

        C.    *Skrmetti* did not, as Aetna implies, abrogate *Bostock's* central holding that discrimination against someone for being transgender is sex discrimination. ........................................................................................................ 7

            1.    A policy that discriminates against both transgender women and transgender men on the basis of sex is actionable under Section 1557 .......... 7

            2.    The absence of express statutory prohibitions on discrimination against transgender people is immaterial. ....................................................... 8

CONCLUSION .................................................................................................................................. 10

## TABLE OF AUTHORITIES

**CASES**

*Bostock v. Clayton County*,
  590 U.S. 644 (2020) .................................................................................................... *passim*

*Castro v. Yale University*,
  518 F. Supp. 3d 593 (D. Conn. 2021) ................................................................................. 8

*Davis v. Monroe County Board of Education*,
  526 U.S. 629 (1999) ............................................................................................................ 5

*Doe v. Columbia University*,
  831 F.3d 46 (2d Cir. 2016) .............................................................................................. 5, 7

*Geduldig v. Aiello*,
  417 U.S. 484 (1974) ...................................................................................................... 8-10

*General Electric Company v. Gilbert,*
  429 U.S. 125 (1976) ...................................................................................................... 8-10

*Hammons v. University of Maryland Medical Systems Corporation*,
  649 F. Supp. 3d 104 (D. Md. 2023) ................................................................................... 10

*Jackson v. Birmingham Board of Education*,
  544 U.S. 167 (2005) ........................................................................................................ 5, 8

*Lange v. Houston County*,
  152 F.4th 1245 (11th Cir. 2025) ..................................................................................... 6, 10

*Newport News v. Equal Employment Opportunity Commission*,
  462 U.S. 699 (1983) ....................................................................................................... 9, 10

*North Haven Board of Education v. Bell*,
  456 U.S. 512 (1982) ............................................................................................................ 8

*Pension Benefit Guaranty Corporation v. LTV Corporation*,
  496 U.S. 633 (1990) ............................................................................................................ 8

*Pritchard ex rel. C.P. v. Blue Cross Blue Shield of Illinois*,
  159 F.4th 646 (9th Cir. 2025) ........................................................................................ 4, 10

*Schiebel v. Schoharie Central School District*,
  120 F.4th 1082 (2d Cir. 2024) ............................................................................................. 5

*Soule v. Conn. Association of Schools*,
   90 F.4th 34 (2d Cir. 2023) ...................................................................................................5

*Tolbert v. Queens College*,
   242 F.3d 58 (2d Cir. 2001) ...................................................................................................5

*United States v. Skrmetti*,
   605 U.S. at 495 (2025) ................................................................................................ *passim*

*Vengalattore v. Cornell University*,
   36 F.4th 87 (2d Cir. 2022) ................................................................................................5, 7

*Whitaker v. Kenosha Unified School District No. 1 Board of Education*,
   858 F.3d 1034, 1049 (7th Cir. 2017) ...................................................................................8

**INTRODUCTION**

Aetna's supplemental brief fails to establish that *Skrmetti* undermines the likelihood of success under Section 1557 by Plaintiffs Gennifer Herley and Jamie Homnick ("Plaintiffs"). *First*, Aetna's brief is rife with factual errors, including about Aetna's own policies, that are contradicted by the record. *Second*, Aetna incorrectly argues that *Skrmetti* is fatal to Plaintiffs' Section 1557 claims, including by wrongfully asserting that *Skrmetti* foreclosed various sex discrimination theories, such as sex stereotyping and proxy discrimination, that were not even mentioned in that decision. *Third*, Aetna conflates the motivating-factor standard with the more stringent but-for standard to conclude, in error, that Plaintiffs' claims must fail. Because *Skrmetti* does not undermine Plaintiffs' likelihood of success, the Court should grant their preliminary injunction.

**ARGUMENT**

**I.   AETNA MISCHARACTERIZES ITS OWN POLICIES TO SUPPORT ITS *SKRMETTI* ARGUMENT.**

**A.   Aetna misstates its own clinical policy on cosmetic surgery.**

Aetna claims that it considers all surgeries that "alter external appearance" to be cosmetic, and, as such, automatically excluded from coverage. ECF No. 141 at 6. Not so: CPB 0031 "generally provide[s] coverage" for reconstructive surgeries that *may* be considered cosmetic in some contexts, but which are "needed to improve function" *or* are "otherwise medically necessary," "even if the surgery or procedure also improves or changes the appearance of the body." ECF No. 123-2 at 2. The GAFR Exclusion, by contrast, bars coverage for facial reconstruction surgery when part of a "gender transition," regardless of medical necessity. ECF No. 62-7 at 5-6; Decl. of Robert McDonough, ECF No. 83 ¶ 10. Aetna denied Plaintiffs' coverage for GAFR using CPB 0615, not CPB 0031. *See* Decl. of Gennifer Herley, Att. B, ECF No. 62-5 at 11-18; Am. Decl. of Jamie Homnick, Att. B, ECF No. 65 at 19-31 (citing CPB 0615 as the sole basis for the denial).

1

### B. Aetna's discussion of facial surgery in the context of unrelated medical conditions is irrelevant.

Aetna appears to argue that, because there is little evidence that facial surgery is an effective treatment for unrelated medical conditions, there is insufficient evidence to support GAFR as an effective treatment for gender dysphoria. ECF No. 141 at 8. Specifically, Aetna analogizes GAFR as a treatment for gender dysphoria to facial reconstruction surgery as a treatment for "depression, social anxiety, body dysmorphia, or other emotional and psychological disorders associated with body image." ECF No. 141 at 8.[1] This comparison is irrelevant and misleading. The issue in this case is whether Aetna may categorically decline to cover facial surgery *only* when sought in furtherance of a gender transition without an individualized medical necessity determination, while performing an individualized medical necessity determination for facial surgeries for any other medical purpose before making a coverage determination. *See* ECF No. 123-2 at 2 (providing coverage for procedures that are "medically necessary even if the surgery or procedure also improves or changes the appearance of a portion of the body"). Whether facial surgery is an appropriate treatment for other conditions is not pertinent here, except to illustrate that Aetna is willing to conduct medical necessity determinations when sex is not a factor. *Id.*

### C. Aetna does not conduct "individualized" medical necessity reviews for GAFR.

Aetna claims that it conducts an individualized medical necessity review for all requests for GAFR. ECF No. 141 at 8 n.5. But CPB 0615's plain language and Aetna's denial letters to Plaintiffs' contradict this assertion. *See* ECF No. 65 at 19-31; ECF No. 62-5 at 13 ("Based on CPB [0615] criteria and the information we have, we're denying coverage for the requested procedure

---

[1] Plaintiffs do not wade in on whether facial reconstruction surgery is a clinically indicated treatment for these conditions as it is for gender dysphoria. Aetna's false equivalence trades on the stereotype that transgender women seek facial surgery to be more attractive, rather than to correct the effects of testosterone, by reconstructing feminine facial features in alignment with their affirmed sex. Decl. of Jens Berli, ECF No. 62-1 ¶ 17.

2

to be performed as a component of a gender transition. This procedure isn't medically necessary under the terms of the member's plan."). Aetna has not provided credible evidence that it reviewed the substance of Plaintiffs' claims in making determinations of medical necessity for *them*, or did anything other than mechanically apply the GAFR Exclusion. Indeed, in Plaintiffs' denial letters, Aetna does not cite any individualized reason, such as lack of sufficient documentation from a provider, in denying Plaintiffs' claims. ECF No. 62-5 at 11-18; ECF No. 65 at 19-31.

## II. THIS COURT SHOULD REJECT AETNA'S ARGUMENT THAT *SKRMETTI* APPLIES TO PLAINTIFFS' SECTION 1557 CLAIMS.

Aetna's invitation to import *Skrmetti*'s constitutional analysis into Plaintiffs' statutory claims is unsupported by law. Relevant and applicable precedent supports the conclusion that Plaintiffs have demonstrated a likelihood of success on the merits of their Section 1557 claim. Aetna does not meaningfully engage with any of Plaintiffs' arguments.

First, Plaintiffs have demonstrated that (1) Section 1557's plain text prohibits a broader range of discriminatory conduct in federally funded healthcare programs than the Equal Protection Clause prohibits for state actors, and (2) state actors are afforded a presumption of constitutionality under the Equal Protection Clause that is unavailable to Aetna under Section 1557. ECF No. 142 at 9-13. Nothing in Aetna's brief contradicts these arguments.

Second, the out-of-circuit post-*Skrmetti* cases cited by Aetna do not alter controlling Supreme Court and Second Circuit authority and, for the reasons below, are otherwise unpersuasive. *See* ECF No. 141 at 9-11. As discussed in Plaintiffs' supplemental brief, *Skrmetti* does not undermine Plaintiffs' likelihood of success because the GAFR Exclusion constitutes impermissible sex discrimination under three independent theories of liability: (1) the Exclusion

3

is facially discriminatory; (2) it is based on impermissible sex-based stereotypes about transgender people; and (3) it uses "gender transition" as a proxy for sex. *See* ECF No. 142 at 15-20.[2]

### D. The GAFR Exclusion is motivated by sex.

Aetna fails to rebut Plaintiffs' argument that the "motivating factor" standard applies Plaintiffs' Section 1557 claims, and instead improperly conflates it with the more stringent "but-for" causation standard. ECF No. 141 at 21-25. In the Second Circuit, the "motivating factor" standard applies to claims brought under Section 1557 and other Spending Clause civil rights statutes. *See* ECF No. 142 at 13-14. Plaintiffs have established that sex is a motivating factor behind Aetna's exclusion under multiple theories, all of which remain available after *Skrmetti*.

*Skrmetti* did not, as Aetna argues, "foreclose[] each of these theories." ECF No. 141 at 22. *Skrmetti* does not address these theories at all. The Supreme Court's musings about how Tennessee's Senate Bill 1 *might* have fared under a Title VII "but-for" analysis is dicta and, in any event, is not relevant to statutory claims subject to the less demanding motivating factor standard. ECF No. 142 at 13-14, 21. *Skrmetti* did not address, let alone foreclose, the application of other cognizable sex discrimination theories to Title IX or Section 1557 claims. *See United States v. Skrmetti*, 605 U.S. at 495, 520 (2025) (declining to consider whether the but-for standard applies outside of the Title VII context).

In addition, Aetna mischaracterizes Plaintiffs' facial discrimination theory by asserting that Plaintiffs ask the Court to improperly "presume" sex-based motivation from the GAFR Exclusion, rather than to evaluate the policy's text and operation under settled Section 1557 principles. ECF No. 141 at 22, 25. Plaintiffs make no such request. Rather, they bring attention to a well-established

---

[2] While *Pritchard ex rel. C.P. v. Blue Cross Blue Shield of Ill.*, 159 F.4th 646, 672 (9th Cir. 2025) reversed summary judgment, it remanded the case for further proceedings on whether "gender dysphoria" was a proxy for transgender status. It also allowed that for at least one plaintiff, "sex is a but-for cause" of the exclusion's operation. *Id.* at 671.

facet of the law: that when a covered entity engages in intentional conduct that is motivated by sex and subjects an individual to differential or discriminatory treatment—including by adopting and enforcing an official policy—that entity violates Section 1557. *See Davis v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 642 (1999) (question is whether funding recipient engaged in "intentional conduct that violates" Title IX); *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 183 (2005); *Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1093 (2d Cir. 2024). The plain text of the GAFR Exclusion—which uses gender as a condition for coverage— is sufficient to show that the policy was motivated by sex. The exclusion applies only to services sought as part of a gender transition, ECF No. 62-7 at 5, which is the process by which a transgender person transitions from living as their sex assigned at birth to their affirmed sex.[3] Decl. of Jens U. Berli, ECF No. 62-1 at 4-5. This process is inherently and inextricably linked to sex. *Bostock,* 590 U.S. at 660-61.

Finally, whether Aetna covers other forms of gender-affirming care for transgender people is immaterial to whether the GAFR Exclusion is facially discriminatory. *Bostock*, 590 U.S. at 662 (regardless of the "sum of all their employment actions . . . each instance of discriminating against an individual" is a violation of Title VII). Because the requisite intent under Title IX (and thereby Section 1557) is to engage in conduct that "violates the clear terms of the statute," *Soule v. Conn. Ass'n of Schs.*, 90 F.4th 34, 61 (2d Cir. 2023) (quoting *Davis*, 526 U.S. at 642), this Court need not find that Aetna was motivated by animus against transgender people to find the policy facially unlawful. *See Doe v. Columbia Univ.*, 831 F.3d 46, 58 n.11 (2d Cir. 2016). "A defendant is not excused from liability for discrimination [under Title IX] because the discriminatory motivation

---

[3] *Skrmetti* does not, as Aetna asserts, "slam[] the door" on the established principle that the requisite motive cannot be inferred from relevant facts in the record. Def. Supp. at 24. A court may permissibly infer a sex-based motive based on the totality of the circumstances. *See Vengalattore v. Cornell Univ.*, 36 F.4th 87, 104 (2d Cir. 2022) (in assessing claims under Title IX and its sister statute, Title VI, "recognizing that some facts may give rise to an inference of bias without necessarily revealing its provenance"); *Tolbert v. Queens Coll.*, 242 F.3d 58, 69-70 (2d Cir. 2001) (a factfinder may infer a discriminatory purpose based on the totality of the circumstances).

does not result from a discriminatory heart, but rather from a desire to avoid practical disadvantages that might result from unbiased action," and a court may find that a defendant engaged in sex discrimination "notwithstanding that the motive for the discrimination did not come from ingrained or permanent bias[.]" *Id.*

Nothing in Aetna's argument changes the fact that the GAFR Exclusion is impermissibly motivated by sex. As such, Plaintiffs remain likely to succeed on their Section 1557 claims.

### E. *Skrmetti* has no bearing on Plaintiffs' sex stereotyping theory.

Aetna fails to demonstrate how *Skrmetti* forecloses Plaintiffs' sex stereotyping argument. Tellingly, Aetna invokes the pernicious stereotypes it attempts to disclaim: "These [GAFR] procedures consist of a loose constellation of surgeries . . . *for the purpose of altering and subjectively improving the external appearance of the face*." ECF No. 141 at 6 (emphasis added), *cf. id.* at 21 (purporting that the GAFR Exclusion is not based on stereotypes but a "concern about the efficacy and safety of the subject gender-affirming procedures").[4] Here, the GAFR Exclusion operates only to deny transgender plan participants the opportunity to have their facial surgery claims reviewed for individualized medical necessity. Individuals seeking reconstructive facial surgery for reasons other than gender transition can generally have their claims evaluated for medical necessity under CPB 0031. Aetna—through the GAFR Exclusion—perpetuates the pernicious and false belief that Plaintiffs' need to surgically correct the effects of endogenous testosterone is *always* cosmetic, and not, as the record demonstrates, medically necessary to alleviate gender dysphoria. *See* Decl. of Amanda Shaw, ECF No. 62-4 ¶¶ 16-19; Decl. of Janice Seward, ECF No. 62-6 ¶¶ 17-20, 22-27; ECF No. 62-1 ¶ 17.

---

[4] *Lange v. Houston County*, 152 F.4th 1245 (11th Cir. 2025), is not controlling and is, in any event, distinguishable. The challenged policy in *Lange* excluded coverage for a "suite of medical procedures that change the appearance of a person's sex organs—regardless whether the goal is to differ from, or align with, [assigned sex]," 152 F.4th at 1254, whereas the GAFR Exclusion *only* excludes coverage for services when they are a component of a gender transition.

6

F. *Skrmetti* did not, as Aetna implies, abrogate *Bostock*'s central holding that discrimination against someone for being transgender is sex discrimination.

Throughout its supplemental brief, Aetna both endorses and disavows *Bostock* and Title VII to serve its own purposes. On one hand, Aetna champions *Bostock*'s "simple test" and "but-for" standard, ECF No. 142 at 3, 8, before, on the other, declaring that Plaintiffs' reliance on *Bostock* and Title VII is "misplaced" in this Section 1557 case, *id.* at 11-12. To this, the Second Circuit has spoken clearly: Title VII cases can "provide the proper framework for analyzing Title IX discrimination claims," and in turn, Section 1557 claims. *Columbia Univ.*, 831 F.3d at 55-56; *see also Vengalattore v. Cornell Univ.*, 36 F.4th 87, 103 (2d Cir. 2022). Accordingly, *Bostock*'s conclusion that discrimination because of sex includes discrimination for being transgender under Title VII necessarily extends to other federal sex discrimination statutes, including Section 1557.

In *Bostock*, Justice Gorsuch applied a textualist interpretation of the phrase "because of sex" under Title VII to necessarily include discrimination against a person for being transgender. *Bostock*, 590 U.S. at 653. Under that same approach, discrimination "on the basis of sex" under other statutes, including Section 1557, must also be read to prohibit discrimination against transgender people. *See Bostock*, 590 U.S. at 724 (Alito, J., dissenting) (observing that "[w]hat the [*Bostock*] Court has done today—interpreting discrimination because of 'sex' to encompass discrimination because of…gender identity—is virtually certain to have far-reaching consequences," listing "[o]ver 100 federal statutes prohibit discrimination because of sex," including Section 1557); *cf. Columbia Univ.*, 831 F.3d at 56 (observing that Title VII provided the "proper framework" for analyzing claims under Title IX and, by extension, Section 1557).

1. *A policy that discriminates against both transgender women and transgender men on the basis of sex is actionable under Section 1557.*

Aetna ignores *Bostock* in arguing that it is somehow absolved from liability for sex discrimination because it subjects both transgender men and transgender women to the GAFR

7

Exclusion. ECF No. 141 at 5, 8. Per *Bostock*, subjecting men and women to comparable sex-based discrimination "doubles liability," rather than serving as a get-out-of-jail free card. *Bostock*, 690 U.S. at 649. Aetna's "defense" that it cannot be held liable under Section 1557 because the GAFR Exclusion applies to facial surgeries sought by transgender women and transgender men is meritless.

### 2. *The absence of express statutory prohibitions on discrimination against transgender people is immaterial.*

Aetna contends, in error, that because Title VII does not *expressly* prohibit discrimination against transgender individuals in the context of transition-related care, no such protections are available under Section 1557. ECF No. 141 at 9. This argument fails on multiple fronts.

First, because Title IX and Section 1557 must be construed broadly to encompass *all* forms of sex-based conduct that result in discrimination or differential treatment except for specifically numerated exceptions in those statutes, *Jackson*, 544 U.S. at 175, *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982); *Castro v. Yale Univ.*, 518 F. Supp. 3d 593, 607 (D. Conn. 2021) ("The Supreme Court has consistently held that Congress intended Title IX to be interpreted broadly and limiting its scope would be at odds with that directive."), the absence any *specific* prohibitions in those statutes is immaterial. Rather, "the Supreme Court has rejected this argument, stating that congressional inaction 'lacks persuasive significance because equally tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change.'" *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1049 (7th Cir. 2017) (quoting *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990)). Thus, the fact that Congress amended a different statute—Title VII—to expressly prohibit pregnancy discrimination in response to the Supreme Court's contrary decision in *General Electric Co. v. Gilbert,* 429 U.S. 125, 136 (1976) (applying the Court's earlier equal protection decision in

8

*Geduldig v. Aiello*, 417 U.S. 484 (1974) to Title VII pregnancy discrimination claims), does not suggest that Congress' failure to list specific forms of discrimination against transgender people in Title VII (let alone Title IX or Section 1557) means that those forms of discrimination are not actionable under those statutes' broad statutory protections.

Second, although Aetna does not cite *Geduldig* by name, its brief tacitly invites the Court to apply *Geduldig*'s equal protection analysis (as referenced in *Skrmetti*, another equal protection case), to conclude that the GAFR Exclusion is not sex-based because it excludes coverage of facial reconstruction surgery for both transgender men and women. *See* ECF No. 141 at 5, 8, 23. Again, *Bostock*'s holding that sex-based discrimination against transgender people of both sexes is still sex discrimination, 590 U.S. at 662 ("An employer musters no better a defense by responding that it is equally happy to fire male *and* female employees who are homosexual or transgender."), was not abrogated by *Skrmetti* or its discussion of *Geduldig*.

In *Geduldig*, the Supreme Court held an insurance exclusion for pregnancy did not violate the Equal Protection Clause, reasoning there was a "lack of identity" between pregnancy and sex classifications because the two groups created by the classification—pregnant and non-pregnant people—both contained women. 417 U.S. at 496-97 n.20. *Skrmetti* then applied the *Geduldig* test, explaining that because transgender individuals are on both sides of the line created by SB 1— those seeking puberty blockers or hormones to treat the excluded diagnosis and those who might seek puberty blockers or hormones to treat other conditions—there is a "lack of identity" between transgender status and the excluded medical diagnoses. *Skrmetti*, 605 U.S. at 518-19.

The *Geduldig* test is inapplicable to Title VII and other statutory sex discrimination claims, since those protections must be read broadly. *See Newport News v. EEOC*, 462 U.S. 699, 678-79 (1983) ("When Congress amended Title VII in 1978, it unambiguously expressed its disapproval

9

of both *the holding and the reasoning* of the Court in the *Gilbert* decision.") (emphasis added). In *Newport News*, the Court rejected the "test of discrimination" used in *Gilbert* as to "all individuals [subject to] sex discrimination in employment,'" including the male plaintiffs in that case, and not just to workers alleging pregnancy discrimination. 462 U.S. at 676, 681. Other courts have, in turn, held that the *Geduldig/Gilbert* test is inapplicable to Section 1557 claims. *See Hammons v. Univ. of Md. Med. Sys. Corp.*, 649 F. Supp. 3d 104, 117 (D. Md. 2023) (declining to "extend[] the flawed reasoning of the *Gilbert* majority to Section 1557 claims or cases involving transgender status").

The post-*Skrmetti* out-of-circuit decisions in *Lange v. Houston County*, 152 F.4th 1245 (11th Cir. 2025), and *Pritchard ex rel. C.P. v. Blue Cross Blue Shield of Illinois*, 159 F.4th 646 (9th Cir. 2025), improperly apply *Geduldig* and *Gilbert* to statutory discrimination claims. In *Lange,* the court applied *Geduldig*'s test from the *Skrmetti* opinion to a Title VII claim, finding that since both transgender men and women were excluded from insurance coverage for transition-related surgery, the policy did not turn on sex. 152 F.4th at 1252. *Pritchard* similarly failed to recognize the broad sweep of Section 1557's protections by incorrectly assuming, based on *Geduldig* and *Gilbert*, that "Section 1557 bars discrimination against treatment for pregnancy and childbirth but not for treatment of gender dysphoria" because pregnancy and childbirth, but not transgender status or gender dysphoria, are explicitly prohibited in Title VII. Because *Pritchard* and *Lange* are at odds with the established principle that Section 1557 must be construed broadly, *see supra*, as well as *Bostock*'s holding that "sex" necessarily includes transgender status, *Bostock,* 590 US at 662, their flawed reasoning is not persuasive and should be afforded no weight here.

## CONCLUSION

For the reasons explained above and in Plaintiffs' earlier briefs in support of their Motion for Preliminary Injunction, the Court should grant that Motion.

DATED: January 30, 2026                Respectfully submitted,

/s/ Joseph J. Wardenski
Joseph J. Wardenski
WARDENSKI P.C.
134 West 29th Street, Suite 709
New York, NY 10001
(347) 913-3311
joe@wardenskilaw.com

Christine E. Webber*
Harini Srinivasan*
Aniko R. Schwarcz*
Elizabeth M. McDermott*
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, NW, Suite 800
Washington, DC 20005
(202) 408-4600
cwebber@cohenmilstein.com
hsrinivasan@cohenmilstein.com
aschwarcz@cohenmilstein.com
emcdermott@cohenmilstein.com

Gabriel Arkles*
Ezra Cukor*
Sydney Duncan*
Kelly Parry-Johnson*
Seran Gee*
ADVOCATES FOR TRANS EQUALITY EDUCATION FUND
520 Eighth Avenue, Suite 2204
New York, NY 10018
(646) 993-1688
garkles@transequality.org
ecukor@transequality.org
sduncan@transequality.org
kparry-johnson@transequality.org
sgee@transequality.org

*Admitted pro hac vice

*Attorneys for Plaintiffs*