**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| BINAH GORDON, KAY MAYERS, ALMA AVALLE, JAMIE HOMNICK, GENNIFER HERLEY and S.N., *individually and on behalf of all similarly situated individuals*, <br><br> Plaintiffs, <br><br> v. <br><br> AETNA LIFE INSURANCE COMPANY, <br><br> Defendant. | Case No. 3:24-CV-01447-VAB <br><br><br> March 23, 2026 |

**AETNA LIFE INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

Defendant Aetna Life Insurance Company ("Aetna"), by and through its attorneys, hereby answers the allegations in Plaintiffs Binah Gordon, Kay Mayers, Alma Avalle, Jamie Homnick, Gennifer Herley, and S.N. (collectively, "Plaintiffs") Second Amended Class Action Complaint ("Second Amended Complaint"), dated February 28, 2025 (ECF No. 60).

**GENERAL DENIAL**

Except for those allegations expressly admitted herein, Aetna denies each and every allegation of the Second Amended Complaint. Except as defined herein, the defined terms of the Second Amended Complaint are incorporated herein by reference, but Aetna does not concede the truthfulness or accuracy of the defined terms. To the extent that headings contained in the Second Amended Complaint, some of which are replicated herein for ease of reference, contain allegations of fact to which a response is required, Aetna denies them in full.

**INTRODUCTION**

1.      Aetna denies that it engaged in discrimination and that it caused any damages or injuries to Plaintiffs or any other similarly situated individuals as alleged in Paragraph 1. Aetna further denies the allegation that it maintains a "categorical coverage exclusion" on "GAFR" treatments.[1] Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the information in the first sentence in footnote 1 regarding why Ms. N has chosen to proceed pseudonymously in this matter. As to the second sentence in footnote 1, Aetna admits that the Court has granted Ms. N's motion at Dkt No. 32. As to footnote 2, Aetna admits that there are a number of different terms used to describe the facial surgical procedures a transfeminine individual may seek. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' allegation that the terms listed therein are "commonly" used. The remaining allegations in Paragraph 1 set forth legal conclusions and characterizations of Plaintiffs' claims to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 1.

2.      Aetna admits that Plaintiffs were each enrolled, either through their employer or their spouse's employer, in a health insurance plan administered by Aetna. Aetna further admits that Ms. Gordon was enrolled in a health insurance plan through the Federal Employee Health Benefits Program. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 2.

3.      Aetna admits that the Plaintiffs' medical plans generally provide coverage for medically necessary services, which may include various facial surgeries to treat certain

---

[1] Aetna uses the term "GAFR" throughout this Answer to remain consistent with the terminology Plaintiffs used in the Second Amended Complaint. In doing so, Aetna makes no admission about the accuracy or relevance of this term.

conditions where medically appropriate. The remainder of the first sentence in Paragraph 3 purports to characterize Aetna's Clinical Policy Bulletin ("CPB") 615, which speaks for itself. Aetna denies the remaining allegations in Paragraph 3, including Plaintiffs' contention that it maintains or applies a categorical exclusion for GAFR. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in footnote 3.

4. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 4, including footnotes 4 and 5.

5. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 5.

6. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 6.

7. Aetna admits that certain generally accepted medical treatments exist for gender dysphoria. Aetna otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 7.

8. Aetna admits that it routinely considers certain specific gender-affirming procedures to be medically necessary for treatment of gender dysphoria, including breast augmentation and removal, genital reconstruction, and gonadectomy surgeries. Aetna further denies that its CPB "governs coverage" or otherwise mandates coverage decisions. Further, Paragraph 8 purports to characterize CPB 615, which speaks for itself, and therefore Aetna denies the remaining allegations in Paragraph 8.

9. Aetna denies the first sentence in Paragraph 9. The second and third sentences in Paragraph 9 purport to characterize CPB 615, which speaks for itself. Aetna denies that it

maintains or applies a categorical exclusion for GAFR, and Aetna denies the remaining allegations in Paragraph 9.

10. Aetna admits that certain facial surgical procedures may be performed to treat certain medical conditions or for cosmetic purposes. Aetna otherwise denies the allegations in Paragraph 10.

11. Aetna admits that it is required to cover certain specific facial gender-affirming surgeries on fully insured plans in certain states due to those states' regulatory mandates and, in those instances, Aetna addresses requests for facial gender-affirming surgeries in accordance with the applicable state mandate. Aetna otherwise denies the allegations in Paragraph 11.

12. Aetna denies the allegation in Paragraph 12 that it has a "blanket characterization" of GAFR as not medically necessary and cosmetic. Aetna admits that it may cover certain specific gender-affirming procedures, such as breast augmentation, as medically necessary for treatment of gender dysphoria, depending on the circumstances. Aetna otherwise denies the allegations in Paragraph 12.

13. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity the allegations in Paragraph 13. Further, the third sentence in Paragraph 13 and footnote 6 purport to characterize an NPR article, as well as Executive Order 14168, which speak for themselves.

14. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 14.

15. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 15.

16. Aetna denies the allegations in Paragraph 16.

17.     Aetna admits that Plaintiffs each submitted at least one pre-authorization request to Aetna for what plaintiffs refer to as GAFR. Aetna otherwise denies the allegations in Paragraph 17.

18.     Aetna denies that it caused any damages or injuries to Plaintiffs or any other similarly situated individuals as alleged in Paragraph 18. Aetna lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 18.

19.     Paragraph 19 sets forth legal conclusions and characterizations of Plaintiffs' claims to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 19.

**PARTIES**

20.     Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first two sentences of Paragraph 20. Aetna admits that from July 1, 2022 to December 31, 2023, Ms. Gordon was enrolled in a health plan through the Federal Employee Health Benefits Program administered by Aetna Life Insurance Company. Aetna denies the remaining allegations in Paragraph 20.

21.     Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first two sentences of Paragraph 21. Aetna admits that from July 1, 2022 through the present, Ms. Mayers has been enrolled in a self-funded health plan through her employer administered by Aetna Life Insurance Company. Aetna denies the remaining allegations in Paragraph 21.

22.     Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first two sentences of Paragraph 22. Aetna admits that from January 1, 2023 through November 30, 2025, Ms. Avalle was enrolled in a self-funded health

plan through her employer administered by Aetna Life Insurance Company. Aetna denies the remaining allegations in Paragraph 22.

23. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first two sentences of Paragraph 23. Aetna admits that from January 1, 2022 through the present, Dr. Homnick has been enrolled in a self-funded health plan through her employer administered by Aetna Life Insurance Company. Aetna denies the remaining allegations in Paragraph 23.

24. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first two sentences of Paragraph 24. Aetna admits that from January 26, 2022 through the present, Dr. Herley has been enrolled in a self-funded health plan through her wife's former employer, Metropolitan Transportation Authority, administered by Aetna Life Insurance Company. Aetna denies the remaining allegations in Paragraph 24.

25. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first two sentences of Paragraph 25. Aetna admits that from July 1, 2021 through March 19, 2023, Ms. N was enrolled in a self-funded health plan through her employer administered by Aetna Life Insurance Company. Aetna denies the remaining allegations in Paragraph 25.

26. Paragraph 26 sets forth legal conclusions to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 26.

## **JURISDICTION AND VENUE**

27. Paragraph 27 purports to characterize 28 U.S.C. § 1331 and 42 U.S.C. § 18116(a), which speak for themselves. This paragraph contains legal conclusions to which no response is required.

6

28. The allegations in Paragraph 28 set forth legal conclusions to which no response is required.

29. Paragraph 29 purports to characterize 28 U.S.C. § 1391(b), which speaks for itself. This paragraph contains legal conclusions to which no response is required.

## FACTS

### Named Plaintiffs
Binah Gordon

30. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 30.

31. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 31.

32. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 32.

33. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 33.

34. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 34.

35. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 35.

36. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 36.

37. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 37.

38.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 38.

39.    Aetna admits that Ms. Gordon joined a health benefits plan administered by Aetna in 2022. Aetna otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 39.

40.    Paragraph 40 purports to characterize a precertification request from Ms. Gordon's provider submitted in the summer of 2022, which speaks for itself.

41.    Aetna admits that it issued a letter dated September 30, 2022, denying Ms. Gordon's requests for CPT Codes 30410, 30999, 31599, 14020, 14021, 67900, and 21137. The remaining allegations in Paragraph 41 purport to characterize that September 30, 2022 denial letter from Aetna and a follow-up letter from a UW surgeon, which both speak for themselves.

42.    Aetna admits that Ms. Gordon appealed her denial on or around March 27, 2023. The remainder of Paragraph 42 purports to characterize Ms. Gordon's appeal letter, which speaks for itself.

43.    Aetna admits that it issued a letter on or around April 21, 2023 upholding Ms. Gordon's denial. The remainder of Paragraph 43 purports to characterize Aetna's letter, which speaks for itself.

44.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 44.

45.    Paragraph 45 purports to characterize an external review request Ms. Gordon sent to OPM on June 27, 2023, which speaks for itself.

46.    Paragraph 46 purports to characterize an external review request Ms. Gordon sent to OPM on June 27, 2023, which speaks for itself. Aetna otherwise denies the allegations in Paragraph 46.

47.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 47.

48.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 48.

49.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 49.

50.    Paragraph 50 purports to characterize a November 21, 2023 overturn letter issued by OPM, which speaks for itself. Aetna denies that it caused any damages or injuries to Ms. Gordon as alleged in Paragraph 50. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 50.

51.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 51.

<u>Kay Mayers</u>

52.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 52.

53.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 53.

54.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 54.

55.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 55.

56.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 56.

57.    Aetna admits that Ms. Mayers plan removed certain exclusions from its plan and allowed retroactive authorizations for services in May 2023. Aetna further admits that it approved and paid the claims submitted for breast augmentation and gender-affirming genital surgeries Ms. Mayers received in June 2023. Aetna otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 57.

58.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 58.

59.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 59

60.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 60.

61.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 61.

62.    The first sentence in Paragraph 62 purports to characterize Anchorage School District's plan document for 2024, which speaks for itself. Aetna denies that it maintains or applies a categorical exclusion for GAFR. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 62.

63.    Aetna admits that in or around March 11, 2024, a San Francisco-based in-network provider submitted a preauthorization request to Aetna for Ms. Mayers for CPT Codes 14040,

14301, 14302, 15773, 21121, 21137, 21138, 21139, 21209 and 67900. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 63.

64. The allegations in Paragraph 64 purport to characterize Ms. Mayer's preauthorization request and the letters attached thereto, which all speak for themselves.

65. The allegations in Paragraph 65 purport to characterize a March 12, 2024 denial letter from Aetna, which speaks for itself.

66. Aetna admits that Ms. Mayers appealed her preauthorization denial on or around August 29, 2024, and that she is a Named Plaintiff in this lawsuit. Aetna further admits that on or about December 3, 2024, Aetna reversed its prior denial for CPT Codes 14040, 14301, 14302, 15773, 21121, 21137, 21138, 21139, 21209 and 67900 after her employer modified the terms of her plan. Aetna denies that it maintains or applies a categorical exclusion for GAFR. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 66.

67. Aetna denies that it caused any damages or injuries to Ms. Mayers as alleged in Paragraph 67. Aetna denies that it maintains or applies a categorical exclusion for GAFR. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 67.

<u>Alma Avalle</u>

68. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 68.

69. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 69.

11

70.     Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 70.

71.     Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 71.

72.     Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 72.

73.     Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 73.

74.     Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 74.

75.     Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 75.

76.     Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 76 as to what Ms. Avalle learned or perceived about Aetna's CPB 615 and its application to GAFR. Aetna otherwise denies the allegations in Paragraph 76.

77.     Aetna admits that on or around July 26, 2024, Dr. Bastidas submitted a preauthorization request to Aetna for Ms. Avalle for CPT Codes 15824, 21256, 21172, 21139, 15769, 21193, 21122, 30410, 30520, 31899, 67900, 21296. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 77.

78.     Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 78.

79.    Aetna admits that on or around July 26, 2024, Dr. Bastidas submitted a preauthorization request to Aetna for Ms. Avalle for CPT Codes 15824, 21256, 21172, 21139, 15769, 21193, 21122, 30410, 30520, 31899, 67900, 21296, and on or around July 26, 2024, Aetna denied that request. Aetna further admits that on or around September 13, 2024, Dr. Bastidas submitted an appeal to Aetna and on or about September 22, 2024, Aetna responded to that request, upholding its original denial. Aetna denies that it maintains or applies a categorical exclusion for GAFR.

80.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 80.

81.    Aetna denies that it has engaged in discrimination and further denies that it caused any damages or injuries to Ms. Avalle. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 81.

82.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 82.

83.    Aetna denies that it caused any damages or injuries to Ms. Avalle as alleged in Paragraph 83. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 83.

### Jamie Homnick

84.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 84.

85.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 85.

86.     Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 86.

87.     Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 87.

88.     Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first, fifth and sixth sentences of Paragraph 88. Aetna admits that in September 2024, Dr. Morrison submitted a preauthorization request for Dr. Homnick for CPT Codes 21137, 11441, 15773, 21122, 21139, 21209, and 67900, which Aetna denied. Aetna further admits that on September 13, 2024, Dr. Homnick appealed that preauthorization denial and shortly thereafter, Aetna upheld its denial. Aetna admits that Dr. Homnick submitted an additional appeal in November 2024 and Aetna again upheld the original denial.

89.     The allegations in Paragraph 89 purport to characterize the Dr. Homnick's medical plan and Aetna's CPB 615, which speak for themselves. Aetna denies that it maintains or applies a categorical exclusion for GAFR.

90.     Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 90.

91.     Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 91

92.     Aetna denies that it caused any damages or injuries to Dr. Homnick as alleged in Paragraph 92. Aetna denies that it maintains or applies a categorical exclusion for GAFR. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 92.

Gennifer Herley

93.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 93.

94.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 94.

95.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 95.

96.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 96.

97.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 97.

98.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 98.

99.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 99.

100.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first two sentences of Paragraph 100. Aetna admits that in December 2024, Dr. Herley submitted a preauthorization request for CPT Codes 21139, 21180, 15824, 30420, 21270, 21122, 31899, 31750, 40799, 40525, 15773, and 15774, which Aetna denied. Aetna denies that it maintains or applies a categorical exclusion for GAFR.

101.    Aetna denies that it caused any damages or injuries to Dr. Herley as alleged in Paragraph 101. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 101.

15

S.N.

102.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 102.

103.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 103.

104.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 104.

105.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 105.

106.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 106.

107.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 107.

108.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first two sentences of Paragraph 108. The remaining allegations in Paragraph 108 purport to characterize a letter from Ms. N's therapist, which speaks for itself.

109.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first two sentences of Paragraph 109. The remaining allegations in Paragraph 109 purport to characterize a letter of medical necessity from Ms. N's physician, which speaks for itself.

110.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 110. Aetna admits that it received health insurance claims from Ms. N's provider for services rendered on October 3, 2022. The

16

remaining allegations in Paragraph 110 purport to characterize the claim forms submitted by Ms. N's provider, which speak for themselves.

111. The allegations in Paragraph 111 purport to characterize a December 8, 2022 EOB from Aetna, which speaks for itself. Aetna denies that it maintains or applies a categorical exclusion for GAFR.

112. The allegations in Paragraph 112 purport to characterize Ms. N's medical plan, which speaks for itself.

113. Aetna admits that Ms. N appealed her denial on or around December 9, 2022. The remaining allegations in Paragraph 113 purport to characterize her appeal, which speaks for itself.

114. The allegations in Paragraph 114 purport to characterize a December 22, 2022 complaint letter from Ms. N, which speaks for itself.

115. The allegations in Paragraph 115 purport to characterize a December 22, 2022 complaint letter from Ms. N, which speaks for itself.

116. The allegations in Paragraph 116 purport to characterize a December 22, 2022 complaint letter from Ms. N, which speaks for itself.

117. The allegations in Paragraph 117 purport to characterize a January 17, 2023 denial letter from Aetna, which speaks for itself.

118. Aetna denies that it caused any damages or injuries to Ms. N as alleged in Paragraph 118. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 118.

119. Aetna admits that in or around April 2023, Ms. N submitted claims related to vocal feminization and tracheal shaving surgeries that she received in January 2023, which Aetna

initially denied. Aetna further admits that it later issued partial payment for some of these services in or around May 2023. Aetna denies any remaining allegations in Paragraph 119.

120. Paragraph 120 purports to characterize the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM-5"), which speaks for itself.

121. Paragraph 121 purports to characterize the World Health Organization's ICD-11, which speaks for itself.

122. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 122. The remaining allegations in Paragraph 122 purport to characterize DSM-5, which speaks for itself.

123. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 123. To the extent these allegations purport to characterize DSM 5, that document speaks for itself.

124. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 124.

125. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 125.

126. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 126.

127. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 127.

128. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 128.

129. Paragraph 129 purports to characterize WPATH's Standards of Care Version 7 ("SOC-7") and Version 8 ("SOC-8"), which speak for themselves. Aetna otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 129.

130. Paragraph 130 purports to characterize WPATH's Standards of Care, including SOC-8, which speak for themselves. Aetna denies the allegations in Paragraph 130 insofar as they relate to GAFR, facial gender-affirming surgery, or other similar procedures at issue in this case.

131. Paragraph 131 purports to characterize WPATH's Standards of Care, including SOC-8, which speak for themselves. Aetna denies the allegations in Paragraph 131 insofar as they relate to GAFR, facial gender-affirming surgery, or other similar procedures at issue in this case.

132. Paragraph 132 purports to characterize WPATH's Standards of Care, which speak for themselves.

133. Aetna admits that gender-affirming hormone therapy is pharmacological treatment that may be used in certain circumstances for treatment of gender dysphoria. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 133.

134. Aetna admits that certain surgical procedures may be used in certain circumstances for treatment of gender dysphoria. Aetna denies the allegations in Paragraph 134 insofar as they relate to GAFR, facial gender-affirming surgery, or other similar procedures at issue in this case.

135. Aetna admits surgical procedures undertaken to improve appearance may be considered cosmetic under some circumstances. Aetna otherwise denies the allegations in Paragraph 135.

136. Aetna denies the allegations in Paragraph 136.

137. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 137.

138. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 138.

139. Paragraph 139 purports to characterize WPATH's Standards of Care, which speaks for themselves.

140. Aetna denies the allegations in Paragraph 140.

141. Aetna denies the allegations in Paragraph 141.

142. Aetna admits that it maintains numerous Clinical Policy Bulletins, which provide guidance about insurance coverage of certain procedures. Aetna further admits that it maintains CPB 615, which addresses various types of gender affirming surgeries for individuals diagnosed with gender dysphoria. Aetna denies the remaining allegations in Paragraph 142.

143. Paragraph 143 purports to characterize CPB 615, which speaks for itself.

144. The allegations in Paragraph 144 purport to characterize CPB 615, which speaks for itself. Aetna denies that CPB 0615 "categorically excludes" certain gender affirming surgeries.

145. The allegations in Paragraph 145 purport to characterize CPBs 615 and 31, which speak for themselves. Aetna denies that it maintains or applies a categorical exclusion for GAFR.

20

146. The allegations in Paragraph 146 purport to characterize CPB 615, which speaks for itself. Aetna denies that it maintains or applies a categorical exclusion for GAFR.

147. Aetna admits that several specific state mandates require coverage of specifically-enumerated facial affirming surgeries to treat gender dysphoria. The exact list of procedures required to be covered varies substantially state to state, with the majority of states having no such requirement at all. The remainder of Paragraph 147, including subparagraphs (a) through (g), purports to characterize CPB 615 and its attached addendum, which speak for themselves. Aetna denies that it maintains or applies a categorical exclusion for GAFR.

148. The allegations in Paragraph 148 and footnote 8 cited therein purport to characterize FEHB Program Carrier Letter No. 2025-01A, which speaks for itself.

149. Aetna denies the allegations in Paragraph 149.

150. Aetna denies the allegations in Paragraph 150.

151. Aetna denies the allegations in Paragraph 151.

### INJURIES TO PLAINTIFFS

152. Aetna denies that it has engaged in discrimination and denies that it ever denied anyone insurance coverage "on the basis of sex because they are transgender." Aetna further denies that it caused any damages or injuries to Plaintiffs or any other similarly situated individuals. Aetna otherwise denies the allegations in Paragraph 152.

153. Aetna denies that it has engaged in discrimination and denies that it has violated Section 1557. Aetna further denies that it caused any damages or injuries to Plaintiffs or any other similarly situated individuals. Aetna otherwise denies the allegations in Paragraph 153.

154. Aetna denies that it has engaged in discrimination and further denies that it caused any damages or injuries to Ms. Gordon, Ms. N or any other similarly situated individuals. Aetna

otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 154.

155.    Aetna denies that it has engaged in discrimination and further denies that it caused any damages or injuries to Ms. Gordon, Ms. N or any other similarly situated individuals. Aetna otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 155.

156.    Aetna denies that it has engaged in discrimination and further denies that it caused any damages or injuries to Plaintiffs or other similarly situated individuals. Aetna otherwise denies the allegations in Paragraph 156.

157.    Aetna denies that it has engaged in discrimination and further denies that it caused any damages or injuries to Ms. Mayers, Ms. Avalle, Dr. Homnick, Dr. Herley or any other similarly situated individuals. Aetna otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 157.

158.    Aetna denies that it has engaged in discrimination and further denies that it caused any damages or injuries to Plaintiffs or other similarly situated individuals. Aetna otherwise denies the allegations in Paragraph 158.

159.    Aetna denies the allegations in Paragraph 159.

## CLASS ALLEGATIONS

160.    The allegations in Paragraph 160 set forth legal conclusions and characterizations of Plaintiffs' claims to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 160 and denies that Plaintiffs are entitled to certification of the class they request.

161.    The allegations in Paragraph 161 set forth legal conclusions and characterizations of Plaintiffs' claims to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 161 and denies that Plaintiffs are entitled to certification of the class they request.

162.    The allegations in Paragraph 162 set forth legal conclusions and characterizations of Plaintiffs' claims to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 162 and denies that Plaintiffs are entitled to certification of the class they request.

163.    The allegations in Paragraph 163 set forth legal conclusions and characterizations of Plaintiffs' claims to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 163, denies that it has engaged in discrimination and denies that Plaintiffs are entitled to certification of the class they request.

164.    The allegations in Paragraph 164 set forth legal conclusions and characterizations of Plaintiffs' claims to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 164 and denies that Plaintiffs are entitled to certification of the class they request.

165.    Aetna denies Plaintiffs' contention in the first sentence of Paragraph 165 that 39 million people in the United States are enrolled in Aetna health insurance plans. Aetna further denies the assumption in the second sentence of Paragraph 165 that the demographics of adult Aetna members correspond to the demographics of adults in the United States overall, and any extrapolations Plaintiffs then draw from that assumption. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the third sentence in Paragraph 165—that there are approximately 243,048 adult transfeminine people enrolled in health insurance plans

23

offered, underwritten, or administered by Aetna—as that is not data Aetna routinely collects from its members. The fourth sentence in Paragraph 165, along with footnotes 10 and 11, purport to characterize numerous online sources, which speak for themselves. Aetna denies the remaining allegations in Paragraph 165, including Plaintiffs' speculations about the potential size of their injunctive relief class.

166.    The allegations in Paragraph 166, including subparagraphs (a)-(e) therein, set forth legal conclusions and characterizations of Plaintiffs' claims to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 166, including subparagraphs (a)-(e), and denies that Plaintiffs are entitled to certification of the class they request.

167.    The allegations in Paragraph 167 set forth legal conclusions and characterizations of Plaintiffs' claims to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 167, denies that it has engaged in discrimination and denies that Plaintiffs are entitled to certification of the class they request.

168.    The allegations in Paragraph 168 set forth legal conclusions and characterizations of Plaintiffs' claims to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 168, denies that it has engaged in discrimination and denies that Plaintiffs are entitled to certification of the class they request.

169.    The allegations in Paragraph 169 set forth legal conclusions and characterizations of Plaintiffs' claims to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 169 and denies that Plaintiffs are entitled to certification of the class they request.

170.     The allegations in Paragraph 170 set forth legal conclusions and characterizations of Plaintiffs' claims to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 170 and denies that Plaintiffs are entitled to certification of the class they request.

171.     The allegations in Paragraph 171 set forth legal conclusions and characterizations of Plaintiffs' claims to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 171 and denies that Plaintiffs are entitled to certification of the class they request.

## CAUSE OF ACTION

### Unlawful Discrimination on the Basis of Sex in Violation of Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116

172.     Aetna repeats and incorporates by reference each and every response set forth above as though fully and completely set forth here in Paragraph 172.

173.     Paragraph 173 purports to characterize Section 1557 of the Affordable Care Act (the "ACA"), which speaks for itself.

174.     Paragraph 174 sets forth legal conclusions and characterizations of Plaintiffs' claims to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 174.

175.     Aetna denies the allegations in Paragraph 175.

176.     Aetna denies that it has caused any damages or injuries to Plaintiffs or other similarly situated individuals. Aetna otherwise denies the allegations in Paragraph 176.

**REQUEST FOR RELIEF**

Aetna denies that any of the statements in the "Request for Relief" section constitute allegations of fact, deny Plaintiffs' demands to the extent that they are, and denies that Plaintiffs are entitled to any of the relief they seek.

**DEFENSES**

Aetna asserts the following defenses and reserves the right to assert other defenses or claims when and if they become appropriate or available in this action.  By asserting the defenses herein, Aetna does not assume the burden of proof for any issues as to which the applicable law places the burden on Plaintiffs.

**FIRST DEFENSE**

Aetna asserts that, to the extent any allegation contained in the Second Amended Complaint is not expressly admitted herein, it is denied.

**SECOND DEFENSE**

Plaintiffs' Second Amended Complaint, in whole or in part, fails to state a claim against Aetna for which relief can be granted.

**THIRD DEFENSE**

Some or all of Plaintiffs' claims, and those of the members of the putative classes, are precluded or preempted by ERISA.

**FOURTH DEFENSE**

Some or all of the Plaintiffs lack standing under Article III to bring all or part of the causes of action they assert.

**FIFTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because Aetna is not subject to Section 1557 of the Affordable Care Act.

**SIXTH DEFENSE**

To the extent Plaintiffs' complaints are about Aetna's resolution of benefit claims under the terms of their respective medical plans, although Aetna denies any liability to Plaintiffs, in the event plan benefits are awarded to Plaintiffs, Plaintiffs' remedies for any alleged act or omission are subject to the terms of their plans and limited solely to those offered by ERISA.

**SEVENTH DEFENSE**

To the extent Plaintiffs' complaints are about Aetna's resolution of benefit claims under the terms of their respective medical plans, no benefits are payable to Plaintiffs because they do not meet the requirements of their plans.

**EIGHTH DEFENSE**

To the extent Plaintiffs' complaints are about Aetna's resolution of benefit claims under the terms of their respective medical plans, Plaintiffs' claims are barred as the plans' claims administrators acted reasonably with respect to the consideration and determination of Plaintiffs' claims for benefits under their plans. The plans' claims administrators did not abuse their discretion, or act arbitrarily or capriciously, in making the determination that no further benefits were due to Plaintiffs.

**NINTH DEFENSE**

To the extent Plaintiffs' complaints are about Aetna's resolution of benefit claims under the terms of their respective medical plans, substantial evidence supports the plans' claims administrators' determinations that no further benefits were due to Plaintiffs.

27

## TENTH DEFENSE

Plaintiffs, and members of the putative classes, are not entitled to relief that is precluded by the terms, conditions, limitations, and other provisions of the governing plans.

## ELEVENTH DEFENSE

Plaintiffs' claims are barred because Aetna satisfied its contractual obligations by processing the claims at issue in accordance with the terms of their medical plans and/or applying the full contractually-required amount for the services at issue.

## TWELFTH DEFENSE

Plaintiffs' claims are barred because the asserted cause of action has been mooted by payment of all benefits owed under the relevant medical plans.

## THIRTEENTH DEFENSE

Plaintiffs' claims are barred because unsubmitted claims are not ripe for adjudication by this Court.

## FOURTEENTH DEFENSE

Plaintiffs' claims are barred due to assignment of right(s) to various treatment providers, who assumed responsibility for the administrative appeals process on their behalf.

## FIFTEENTH DEFENSE

Aetna asserts any and all privileges and defenses available to it under ERISA, 29 U.S.C. § 1001, et seq., including pre-emption of Section 1557 of the Affordable Care Act as applied to ERISA-governed plans.

## SIXTEENTH DEFENSE

Plaintiffs' claims are barred because Aetna complied with its duties under ERISA, 29 U.S.C. Section 1001, et seq. and the terms of the governing plan documents.

## SEVENTEENTH DEFENSE

Plaintiffs' claims, and those of the members of the putative class, are barred, in whole or in part, to the extent they failed to follow appropriate procedures to file claims, exhaust administrative remedies, or avail themselves of the applicable claims and appeal procedures.

## EIGHTEENTH DEFENSE

The relief sought in the Second Amended Complaint is barred, in whole or in part, by Plaintiffs' failures to mitigate damages.

## NINETEENTH DEFENSE

The relief sought in the Second Amended Complaint is barred, in whole or in part, by the doctrine of estoppel.

## TWENTIETH DEFENSE

The relief sought in the Second Amended Complaint is barred, in whole or in part, by the applicable statute of limitations or limitations set out in the terms of relevant agreements and plan documents.

## TWENTY-FIRST DEFENSE

The damages suffered by Plaintiffs, if any, are attributable, in whole or in part, to conduct of Plaintiffs or persons or entities other than Aetna.

## TWENTY-SECOND DEFENSE

The Second Amended Complaint fails to allege facts sufficient to support an award of actual, compensatory, consequential, punitive, or exemplary damages.

## TWENTY-THIRD DEFENSE

Any and all damages claimed by Plaintiffs, whether punitive, compensatory, liquidated, actual, attorneys' fees, or otherwise, are subject to all statutory exclusions and limitations

29

applicable to claims under Title VII of the Civil Rights Act, Title IX of the Civil Rights Act or Section 504 of the Rehabilitation Act of 1973.

### TWENTY-FOURTH DEFENSE

To the extent that Plaintiffs' Second Amended Complaint seeks exemplary or punitive damages, they violate Aetna's right to protection from excessive fines as provided in the Eighth Amendment to the United States Constitution and violate Aetna's right to substantive due process as provided in the Fifth and Fourteenth Amendments of the United States Constitution, and, therefore, fails to state a cause of action supporting such damages.

### TWENTY-FIFTH DEFENSE

Aetna's treatment of Plaintiffs did not constitute prohibited discrimination (intentional or otherwise) as recognized by any state or Federal statute under which Plaintiffs bring their claims.

### TWENTY-SIXTH DEFENSE

To the extent Plaintiffs' claims are governed by ERISA, Plaintiffs are not entitled to compensatory, non-pecuniary, punitive or exemplary damages and/or attorneys' fees under the circumstances pled.

### TWENTY-SEVENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, in accordance with Fed. R. Civ. P. 19(a) because Plaintiffs failed to join necessary and indispensable parties.

### TWENTY-EIGHTH DEFENSE

Plaintiffs' claims are barred because Aetna, in its role as ERISA claims fiduciary, was without legal authority to depart from the plan design requirements relating to administration of infertility benefits.

30

## TWENTY-NINTH DEFENSE

Plaintiffs' claims, and those of the members of the putative classes, are barred because Aetna Life Insurance Company is not a covered entity under 42 U.S.C.A. § 18116.

## THIRTIETH DEFENSE

Plaintiffs' claims, and those of the members of the putative classes, are barred, in whole or in part, by the doctrine of laches.

## THIRTY-FIRST DEFENSE

Plaintiffs' claims, and those of the members of the putative classes, are barred, in whole or in part, by the doctrine of waiver.

## THIRTY-SECOND DEFENSE

Plaintiffs' claims, and those of the members of the putative classes, are barred, in whole or in part, to the extent that they have been released.

## THIRTY-THIRD DEFENSE

Plaintiffs' claims, and those of the members of the putative classes, are barred, in whole or in part, to the extent that they are subject to a covenant not to sue.

## THIRTY-FOURTH DEFENSE

Plaintiffs' claims, and those of the members of the putative classes, are barred, in whole or in part, because the claimed injuries were not caused by Aetna (or its agents or employees).

## THIRTY-FIFTH DEFENSE

Plaintiffs' claims, and those of the members of the putative classes, are barred, in whole or in part, because the claimed injuries were not caused by any fault or wrongdoing by Aetna or persons or entities over which Aetna had responsibility or control.

31

## THIRTY-SIXTH DEFENSE

Plaintiffs' claims, and those of the members of the putative classes, fail because the governing plans comport with applicable state law.

## THIRTY-SEVENTH DEFENSE

Damages other than claims dollars claimed by Plaintiffs and members of the putative classes, whether punitive, compensatory, attorneys' fees, or otherwise, are subject to exclusion and/or limitations under applicable law, including Article I, Section 8, Clause 1 of the U.S. Constitution, because Aetna did not contractually assume such liabilities nor was Aetna on notice that, by accepting federal funding in exchange for administering employer-funded health benefits plans, it assumed or otherwise exposed itself to liabilities of that nature.

## THIRTY-EIGHTH DEFENSE

Plaintiffs and members of the putative classes are not entitled to emotional distress or other non-contractual damages under applicable law, including Article I, Section 8, Clause 1 of the U.S. Constitution, because Aetna did not contractually assume such liability and did not have the requisite notice that it could be held liable for such damages.

## THIRTY-NINTH DEFENSE

Aetna, as third-party administrator of an employer-funded health benefit plan, is not liable or otherwise legally responsible for the benefit design, coverage terms, funding, or other provisions of such plan, nor is Aetna is liable or legally responsible as an insurer or underwriter under such plan, and Section 1557 imposes no such liability or legal responsibility on Aetna, or otherwise requires Aetna to administer such plan or to authorize or pay benefits in any manner inconsistent with the terms of such plan, because, pursuant to Article I, Section 8, Clause 1 of the U.S. Constitution, Aetna did not contractually assume such liabilities nor was Aetna on notice

that, by accepting federal funding in exchange for administering employer-funded health benefits plans, it could be held liable or legally responsible for the benefit design, coverage terms, funding, or other provisions of such plan or for the payment of benefits except as authorized under the terms of such plan.

## FORTIETH DEFENSE

Aetna's coverage policy, including its Clinical Policy Bulletin 615, does not classify individuals or discriminate based on sex, and does not violate ACA Section 1557, Titles VII or IX, or any other applicable law or regulation.

## FORTY-FIRST DEFENSE

Aetna's coverage policy, including its Clinical Policy Bulletin 615, is not discriminatory in violation of ACA Section 1557, Titles VII or IX, or any other applicable law or regulation because gender-affirming facial surgery and related procedures have not been shown to be medically effective for treatment of gender dysphoria, and Aetna's policy is based upon and reflects current relevant medical literature and science.

## FORTY-SECOND DEFENSE

Aetna's coverage policy, including its Clinical Policy Bulletin 615, is not discriminatory in violation of ACA Section 1557, Titles VII or IX, or any other applicable law or regulation because it reflects a reasonable classification based upon medical use and treatment, not sex, and thus is not discriminatory under the Supreme Court's decision in *United States v. Skrmetti*, 605 U.S. 495 (2025).

## FORTY-THIRD DEFENSE

Aetna reserves the right to assert, and hereby give notice that it intends to rely upon, any other defense that may become available or appear during discovery proceedings or otherwise in this case and hereby reserve the right to amend their Answer to assert any such defense.

Dated at Hartford, Connecticut this 23rd day of March, 2026.

*Theodore J. Tucci*
Theodore J. Tucci (ct05249)
Abby M. Warren (ct30077)
Christopher A. Costain (ct31612)
Robinson & Cole LLP
One State Street
Hartford, CT 06103
Tel.: (860) 275-8200
Fax: (860) 275-8299
ttucci@rc.com
awarren@rc.com
ccostain@rc.com

Sarah Reeves (*pro hac vice*)
Earl B. Austin (*pro hac vice*)
Baker Botts LLP
30 Rockefeller Plaza
New York, NY 10112
Tel.: (212) 408-2649
Fax: (212) 408-2449
sarah.reeves@bakerbotts.com
earl.austin@bakerbotts.com

*Counsel for Defendant*
*Aetna Life Insurance Company*

34