**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| BINAH GORDON, KAY MAYERS, ALMA AVALLE, JAMIE HOMNICK, GENNIFER HERLEY and S.N., *individually and on behalf of all similarly situated individuals*, <br><br> Plaintiffs, <br><br> v. <br><br> AETNA LIFE INSURANCE COMPANY, <br><br> Defendant. | Case No. 3:24-cv-1447-VAB |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION AND FOR ORDER TO SHOW CAUSE**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

BACKGROUND ........................................................................................................................... 1

ARGUMENT AND AUTHORITIES .............................................................................................. 1

      A.      Aetna presents substantial and sufficient grounds for its motion to stay. ............... 3

      B.      Plaintiffs have demonstrated neither good cause nor other sufficient grounds for their Motion. ...................................................................................................... 6

      C.      The "new evidence" Plaintiff cite in their Motion creates ambiguity concerning compliance with the Court's injunction. ................................................................. 8

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Crouch*,
No. 22-1927, 2026 WL 667919 (4th Cir. Mar. 10, 2026)............................................................5

*Bostock v. Clayton County*,
590 U.S. 644 (2020)....................................................................................................................5

*Brandt by and through Brandt v. Griffin*,
147 F.4th 867 (8th Cir. 2025) ....................................................................................................5

*Egelhoff v. Egelhoff ex rel. Breiner*,
532 U.S. 141 (2001)....................................................................................................................3

*GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*,
445 U.S. 375, 100 S. Ct. 1194, 63 L. Ed. 2d 467 (1980)............................................................7

*JPMorgan Chase Bank, N.A. v. VTB Bank, P.J.S.C.*,
No. 24-2327, 2025 WL 1983432 (2d Cir. July 17, 2025)....................................................6, 7, 8

*Lange v. Houston Co.*,
152 F.4th 1245 (11th Cir. 2025) (*en banc*) .................................................................................5

*In re Markus*,
78 F.4th 554 (2d Cir. 2023) ........................................................................................................6

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*,
369 F.3d 645 (2d Cir. 2004).....................................................................................................7, 8

*Poe by and through Poe v. Drummond*,
149 F.4th 1107 (10th Cir. 2025) .................................................................................................5

*Pritchard on behalf of C.P. v. Blue Cross Blue Shield of Ill.*,
159 F.4th 646 (9th Cir. 2025) .....................................................................................................5

*Religious Sisters of Mercy v. Becerra*,
55 F.4th 583 (8th Cir. 2022) .......................................................................................................3

*United States v. Skrmetti*,
605 U.S. 495 (2025).................................................................................................................4, 5

**Statutes**

28 U.S.C. § 1292..............................................................................................................................1

Affordable Care Act of 2010 ...................................................................................................4, 5

**Other Authorities**

CT Local Rule 7....................................................................................................................2, 6

Fed. R. App. P. 4.......................................................................................................................1

Fed. R. App. P. 8.......................................................................................................................1

Defendant Aetna Life Insurance Company ("Aetna") files this Response in Opposition to Plaintiffs' Emergency Motion to Enforce Preliminary Injunction and For Order to Show Cause [Dkt. 155] ("Motion") and respectfully requests that the Court deny the Motion in its entirety.

## BACKGROUND

Plaintiffs filed their motion for preliminary injunction on March 3, 2025. *See* Dkt. 61. The Court granted Plaintiffs' motion and entered a preliminary injunction on March 8, 2026. *See* Ruling and Order on Pending Motions [Dkt. 153] ("Order") at 2, 55. The Order provides that "Aetna is required to make individualized coverage determinations as to Dr. Homnick and Dr. Herley only, on the basis of medical necessity, as opposed to categorically excluding their claims under CPB 0615." *Id.* The Order sets no timetable or deadline for Aetna's compliance with the injunction. *Id.*

Aetna filed a timely notice of appeal, together with a motion to stay the injunction pending appeal, on March 31, 2026. *See* Dkt. 156, 157. Plaintiffs filed the present Motion that same day.

## ARGUMENT AND AUTHORITIES

Plaintiffs have failed to demonstrate that good cause exists for the relief they seek. The Court's Order did not require immediate compliance by Aetna or set any fixed deadline for compliance. Aetna is entitled to notice an appeal of the Order and to request that the Order be stayed pending appeal. Aetna has done both those things in a timely manner. As Plaintiffs acknowledge in their Motion, the deadline for Aetna to appeal the Court's Order is April 7, 2026. *See* Motion at 2; *see also* 28 U.S.C. § 1292(a)(1); Federal Rule of Appellate Procedure 4(a)(1). Moreover, Federal Rule of Appellate Procedure 8(a)(1)(C) provides that a motion for an order suspending, modifying, restoring, or granting an injunction while an appeal is pending must be filed first in the district court. Aetna has both filed its notice of appeal and a motion to stay in this

1

Court substantially in advance of the required deadlines.[1] Aetna's motion to stay presents serious and substantial grounds to support suspension of the injunctive relief set forth in the Court's Order pending appeal.

Plaintiffs' Motion does not comply with this Court's Local Rule 7(a)(6) because it does not demonstrate good cause for their emergency motion. Moreover, the case law they cite is inapposite here and does not support the relief they seek.

Finally, and importantly, Plaintiffs' Motion misses the mark when it argues that Aetna could "easily" comply since it has already completed the "individualized medical necessity" reviews that this Court ordered. This argument ignores the basis upon which Aetna has sought an appeal and a stay of the Court's injunction—that complying with this Court's Order would cause Aetna to suffer irreparable legal, financial, reputational and contractual harm with respect to its relationship with its self-funded plan sponsors (Plaintiffs' employers and many others), who have directed Aetna to utilize CPB 615 as part of this sort of medical necessity decision. Further muddying the picture, Plaintiffs now argue that Aetna already has provided the "individualized" review of Plaintiffs' requests for GAFR coverage that the Court's Order directs—making it at best unclear what it is that Plaintiffs expected would occur as a result of this Court's Order.

---

[1] Plaintiffs' Motion purports to summarize various discussions among counsel following the entry of the Court's Order. *See* Motion at 2-4. On March 11, 2026, during a meet-and-confer on discovery, Aetna's counsel advised Plaintiffs' counsel that Aetna was considering whether to appeal the Order. On March 23, 2026, during another meet-and-confer on discovery, Aetna's counsel advised Plaintiffs' counsel that Aetna intended to file an appeal. Aetna's counsel also inquired on that call whether Plaintiffs' counsel would agree to a stay of the case pending appeal, and Plaintiffs' counsel declined. Aetna's counsel then timely responded on March 30, 2026, to Plaintiffs' counsel's email of March 27, 2026, as Plaintiffs' counsel requested. And Aetna filed its notice of appeal and motion to stay the next day.

**A.    Aetna presents substantial and sufficient grounds for its motion to stay.**

Plaintiffs seek coverage for facial feminization surgery under health benefit Plans sponsored and funded by their employers. Aetna serves as third-party claims administrator under those Plans. Aetna does not insure the Plans; both are self-funded by Plaintiffs' employers. As third-party claims administrator, Aetna is legally and contractually obligated to administer the Plans in accordance with the Plan terms and the directives of the sponsoring employers. *See Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 150 (2001); *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 591 (8th Cir. 2022).

Both employers expressly directed Aetna to utilize its CPB 615 when reviewing and administering claims for gender affirming care under the Plans. As the Court correctly notes in its Order, Dr. Homnick's Bausch & Lomb ("B&L") Plan expressly incorporates Aetna's Clinical Policy Bulletins in the provision addressing gender affirming treatment. Order at 27. Dr. Homnick also stipulates in her amended complaint that she asked B&L for "an exception to the exclusion in her case" but her employer "declined her request," *see* Dkt. 60 at ¶ 88, and it is undisputed that in rejecting her request, B&L continued to directed Aetna to adhere to its CPB 615, *see* Dkt. 102 at 4-11, 21-22. It likewise is undisputed that Dr. Herley's employer, MTA, also expressly directed Aetna to follow and apply its Clinical Policy Bulletins in reviewing and administering claims for gender affirming care. *See* Dkt. 102 at 11-12, 22-23.

Plaintiffs' employers and Plan sponsors are not parties here—indeed, Plaintiffs have resisted Aetna's efforts to join them—and the Court thus has no power to force the employers to alter or deviate from their Plans when directing Aetna or funding benefits. The Court correctly recognizes that its Order does "not modify the plans themselves." Order at 27. Plaintiffs' Plans thus remain unchanged, and their employers' coverage directives to Aetna are wholly unaffected by the Order.

3

The Order nonetheless enjoins Aetna from applying CPB 615 to Plaintiffs' claims and directs Aetna "to assess the Plaintiffs' claims under the criteria it currently uses to determine medical necessity in plans that override this policy exclusion." *Id.* at 28. The Order thus directs Aetna to "override" the very policy the employers instructed Aetna to follow in administering their Plans.

The Court's Order puts Aetna in an untenable position: It cannot both comply with the Order and also fulfill its legal and contractual obligations as TPA to the employer plan sponsors. Aetna cannot authorize Plan coverage, nor can it expend Plan funds to pay benefits, contrary to the terms of the Plans and the directives of the sponsoring employers. In short, the relief Plaintiffs seek can only be achieved by requiring Aetna to ignore the terms of Plans the Court does not purport to change, and Aetna cannot both ignore the Plans and follow them. Absent a stay pending appeal, these conflicting legal obligations will cause irreparable harm to Aetna.

There is also a substantial probability that Aetna will succeed on appeal. The Order and resulting injunction turn upon the Court's ruling that Aetna's CPB 615 discriminates on the basis of sex in violation of Section 1557 of the Affordable Care Act. But that ruling is inconsistent with the Supreme Court's recent decision in *United States v. Skrmetti*, 605 U.S. 495 (2025), which squarely undercuts the reasoning underlying this Court's ruling.

- *First, Skrmetti* forecloses the conclusion that Aetna's policy discriminates on the basis of sex simply because it references or relates to gender dysphoria. The Supreme Court expressly held that a policy, such as Aetna's here, which classifies based on medical use, is not discriminatory, even if the policy "reference[s] sex" or "application of the [policy] turns on sex." *Id* at 511-12. To hold otherwise "would be especially inappropriate in the medical context [where] [s]ome medical treatments and procedures are uniquely bound up in

4

sex." *Id.* at 512. Such a policy "does not exclude any individual from medical treatments on the basis of transgender status but rather removes one set of diagnoses—gender dysphoria, gender identity disorder, and gender incongruence—from the range of treatable conditions." *Id.* at 518-19.

- *Second*, the Supreme Court made clear that such a policy is permissible even applying the logic of the "but-for" test of *Bostock v. Clayton County*, 590 U.S. 644 (2020). *Id.* at 520-22. "Under the logic of *Bostock*, then, sex is simply not a but-for cause of [the policy's] operation." *Id.* at 522.

Since the Supreme Court issued the *Skrmetti* decision, the Fourth, Eighth, Ninth, Tenth, and Eleventh Circuits all have applied *Skrmetti* to hold that statutes or health benefit plans that allow medically necessary treatments for certain diagnoses but bar the same treatments for gender dysphoria are not *per se* or facially discriminatory. *See Anderson v. Crouch,* No. 22-1927, 2026 WL 667919 (4th Cir. Mar. 10, 2026) (ACA Section 1557); *Pritchard on behalf of C.P. v. Blue Cross Blue Shield of Ill.*, 159 F.4th 646 (9th Cir. 2025) (employee health insurance plan; ACA Section 1557); *Lange v. Houston Co.,* 152 F.4th 1245 (11th Cir. 2025) (*en banc*) (employee health insurance plan); *Brandt by and through Brandt v. Griffin*, 147 F.4th 867 (8th Cir. 2025); and *Poe by and through Poe v. Drummond*, 149 F.4th 1107 (10th Cir. 2025).

The Fourth Circuit's decision in *Anderson*, which was issued after the Court entered its Order here, is especially instructive because it reexamines ACA Section 1557 in light of *Skrmetti* after the Supreme Court vacated the Circuit's prior ruling on the subject. *See Anderson*, 2026 WL 667919 at *1. As the Fourth Circuit explained in its new opinion, "*Skrmetti* compels the conclusion" that such policies do not violate the Affordable Care Act. *Id.* at *1, *5. The Ninth Circuit previously reached the same conclusion under the ACA in *Pritchard*. 159 F.4th at 670.

5

There is a substantial possibility that the Second Circuit will adopt the same reasoning rather than create a circuit split.

For those reasons, Aetna has requested that the Court stay and suspend the injunctive relief granted by the Order so that Aetna may appeal the Order to the Second Circuit.

**B.      Plaintiffs have demonstrated neither good cause nor other sufficient grounds for their Motion.**

The Court's Order sets no deadline for compliance, and Aetna has properly filed a notice of appeal and motion to stay well within the timetable set by the rules.  And Aetna does not seek a stay so that it may alter the status quo; to the contrary, the stay Aetna requests is necessary to *preserve* the status quo pending appeal.  Plaintiffs thus cannot demonstrate good cause for the emergency relief they seek as required under Local Rule 7(a)(6).

The case law Plaintiffs cite in their Motion does not support the relief they seek under the facts here.  *See* Motion at 4-5.  In those cases, the district court explicitly ordered "immediate" action or set a deadline or timetable for compliance and also warned the parties of the risk of sanctions for noncompliance.  For example, in *In re Markus*, 78 F.4th 554 (2d Cir. 2023), the Second Circuit held that a bankruptcy court did not abuse its discretion when imposing sanctions against a party for failing to comply with a discovery orders where there was "no fair ground of doubt" as to the party's "deliberate and repeated failure to comply with the bankruptcy court's orders" because: (1) the ordered included an explicit deadline, (2) the court subsequently warned the party of the risk of sanctions for failure to comply, and (3) the party failed to comply with the orders for nearly two months.  *Id*. at 560–61, 568.

Similarly, in *JPMorgan Chase Bank, N.A. v. VTB Bank, P.J.S.C.*, No. 24-2327, 2025 WL 1983432 (2d Cir. July 17, 2025), the district court entered a temporary restraining order and then a preliminary injunction prohibiting the defendant from continuing a parallel Russian litigation

6

and the defendant continued to litigate in Russia even after the court found them in contempt of the injunction. *Id.* at *1. The record there demonstrated that after finding that the defendant violated the preliminary injunction, the district court ordered the defendant to suspend the Russian litigation and warned that failure to do so would result in a sanctions, but that the defendant thereafter "chose to ignore that order and continued litigating the case in the Russian court, and the district court followed through on its warning." *Id*. at *2.

Likewise, in *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645 (2d Cir. 2004), the district court enjoined a party from pursing parallel litigation in Brazil and the injunction "clearly directed [the party] to '*immediately* take all steps necessary to cause dismissal of the [] Action'" and the order "set forth specific steps that [the party] was required to take: sign the Joint Petition to Dismiss, and file an affidavit of compliance." *Id*. at 655, 658 (emphasis added). The Second Circuit noted that the party "had repeatedly refused to comply with the district court's orders" and that the district court "was well within the court's discretion to advise the parties of its willingness to exercise all its powers to enforce its mandates." *Id*. at 657.[2]

Moreover, only one of the cases involved a situation where the defendant filed a motion to stay the injunction pending appeal. *See Paramedics Electromedicina Comercial, Ltda*, 369 F.3d at 650-51. In that case, the defendant first defied the district court's order to "immediately" dismiss the foreign case and then refused the court's order to sign a petition to dismiss the foreign action. 369 F.3d at 650-51. Only then, nearly two months after the court issued its injunction and after multiple violations, did the defendant file a motion asking the district court to stay the injunction

---

[2] Plaintiffs cite another case, *GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*, 445 U.S. 375, 100 S. Ct. 1194, 63 L. Ed. 2d 467 (1980), that does not even address the issue of whether a party should be held in contempt for violating an interlocutory order.

pending appeal. *Id.* at 651. And, after the court denied the motion to stay, the defendant failed to appear at a contempt hearing and continued to pursue the foreign litigation. *Id.*

Finally, and importantly, two of the cases involved defendants who were attempting to pursue parallel litigation in foreign jurisdictions in defiance of orders enjoining them from doing so—actions that would *alter the status quo* that the injunction was intended to preserve. *See VTB Bank, P.J.S.C.*, 2025 WL 1983432 at *1; *Paramedics Electromedicina Comercial, Ltda*, 369 F.3d at 655.

In short, this case has nothing in common with the authorities that Plaintiffs rely on.

**C.    The "new evidence" Plaintiff cite in their Motion creates ambiguity concerning compliance with the Court's injunction.**

Plaintiffs assert in their Motion that they have "new documentary evidence confirming that the individualized medical determinations had been completed by Aetna long ago." *See* Motion at 3. Plaintiffs attach to their motion the March 27, 2026, email of Plaintiffs' counsel, where counsel describes these documents as "establishing that [Aetna] has already conducted the requisite individual medical necessity determinations for both Dr. Herley and Dr. Homnick." *See* Dkt. 155-1 at 3.[3]

For the first time, Plaintiffs now acknowledge that Aetna's application of CPB 615 occurred as part of an "individualized" review of each Plaintiffs' requests for GAFR coverage. *See* Motion at 3; Dkt. 155-1 at 3. The Court's Order provides that "Aetna is required to make individualized coverage determinations as to Dr. Homnick and Dr. Herley only, on the basis of medical necessity, as opposed to categorically excluding their claims under CPB 0615." Order at

---

[3] The documents reflect Aetna's original review and determination of Plaintiffs' coverage requests that are at issue in the litigation—they are not new reviews, but rather the original reviews upon which Plaintiffs base their suit.

*2, *5. Plaintiffs' new position injects substantial doubt and uncertainty regarding compliance with the Court's Order requiring Aetna to make "individualized coverage determinations … on the basis of medical necessity", which Plaintiffs now state Aetna has already done.

Plaintiffs' changed position highlights Aetna's fundamental objection to injunctive relief for Plaintiffs because it irreparably harms Aetna to require it to ignore CPB 615 as part of its medical necessity review (which Plaintiffs now acknowledge already occurred), which contravenes the direction to Aetna by Plan sponsors. The injunction does not speak to coverage approval or benefits payment for the facial surgeries Plaintiffs seek. And the Court correctly recognizes that its Order does not modify the Plans themselves.

Because Plaintiffs acknowledge that individualized medical review has taken place, it appears now that Plaintiffs may claim that subsequent failure to approve requested GAFR services violates the Court's Order. This creates uncertainty as to how Aetna is expected to proceed, especially where Plaintiffs already have *administrative* avenues to challenge Aetna's decisions under the Plans—administrative relief that Plaintiffs' employers have provided under their Plans but that Plaintiffs have deliberately declined to pursue. Plaintiffs have asked this Court to provide relief against Plans and employers over whom it has no jurisdiction when those same Plans and employers already offer administrative relief that could accomplish the very result Plaintiffs say they want (coverage and payment for GAFR surgeries under the Plans) but that Plaintiffs have refused to pursue.

Plaintiffs now argue that Aetna already has made the individualized determinations they say they want. And the Plans already provide an adequate administrative remedy for Plaintiffs to challenge the outcome of Aetna's determinations. If, absent a stay, Aetna attempts in good faith to comply with the Court's Order to conduct (another) medical necessity review that does not

9

employ CPB 615, Plaintiffs' new position now suggests that anything less than benefits approval will be cause for contempt.  Under normal circumstances, undertaking an individualized medical necessity review would mean a review of relevant medical records and plan language, followed by a determination.  But Plaintiffs seem to be pressing for a wholly different process.  Aetna is thus uncertain what exactly it is being asked to do in order to comply with the Court's Order.

Plaintiffs' Motion thus misses this essential point—it argues (incorrectly) that Aetna could "easily" comply since it has already completed the "individualized" review Plaintiffs say they want.  But this argument (which oversimplifies and misstates what would be required of Aetna)[4] wholly sidesteps the basis upon which Aetna has sought an appeal and a stay of the Court's injunction—that complying with this Court's Order would cause Aetna to suffer irreparable harm because it cannot administer Plaintiffs' Plans contrary to the directives of Plaintiffs' employers, who have instructed Aetna to utilize CPB 615 as part of this sort of medical necessity decision. And the injunction, and the irreparable harm it would cause to Aetna, is wholly unnecessary because Plaintiffs now concede that Aetna has already done what the Court has ordered, and the Plans already offer Plaintiffs an adequate avenue to obtain the coverage they want.

---

[4] For example, in order for Aetna to conduct a second review of Plaintiffs' requests, Plaintiffs would need to provide update medical information to support coverage.

**CONCLUSION**

For the foregoing reasons, Aetna requests that the Court deny Plaintiffs' Emergency Motion to Enforce Preliminary Injunction and For Order to Show Cause [Dkt. 155] in its entirety.

Dated at Hartford, Connecticut this 2nd day of April, 2026.

*Theodore J. Tucci*
Theodore J. Tucci (ct05249)
Abby M. Warren (ct30077)
Christopher A. Costain (ct31612)
Robinson & Cole LLP
One State Street
Hartford, CT 06103-3597
Tel.: (860) 275-8200
Fax: (860) 275-8299
ttucci@rc.com
awarren@rc.com
ccostain@rc.com

Sarah Reeves (*pro hac vice*)
Earl B. Austin (*pro hac vice*)
Baker Botts LLP
30 Rockefeller Plaza
New York, NY 10112
Tel.: (212) 408-2649
Fax: (212) 408-2449
sarah.reeves@bakerbotts.com
earl.austin@bakerbotts.com

*Counsel for Defendant*
*Aetna Life Insurance Company*

11