**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

BINAH GORDON *et al.*,

                Plaintiffs,

v.

AETNA LIFE INSURANCE COMPANY,

                Defendant.

No. 3:24-cv-01447-VAB

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO STAY
PRELIMINARY INJUNCTION AND IN FURTHER SUPPORT
OF EMERGENCY MOTION TO ENFORCE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................... ii

INTRODUCTION ...............................................................................................................1

ARGUMENT......................................................................................................................3

    I.     Aetna Faces No Irreparable Harm by Complying with the Preliminary
          Injunction...................................................................................................................3

          A.  The Preliminary Injunction does not alter Aetna's contractual obligations
               to plan sponsors. ....................................................................................................4

          B.  Aetna fails to demonstrate that compliance with the Preliminary Injunction
               will result in loss of goodwill or business relationships........................................8

          C.  Aetna has adduced no evidence it will incur unrecoverable monetary
               losses absent a stay. ...............................................................................................9

    II.    The Issuance of a Stay Would Substantially Injure Drs. Homnick and Herley. .........11

    III.   The Requested Stay is Contrary to the Public Interest. ................................................14

    IV.  Aetna Has Not Made a Strong Showing That It is Likely to Succeed on the
           Merits.........................................................................................................................14

          A.  *Skrmetti* does not apply to Plaintiffs' statutory discrimination claims..................15

          B.  This Court correctly applied *Bostock* in holding that Drs. Homnick and
               Herley are likely to succeed on their Section 1557 claims.....................................16

    V.    The Court Should Grant Plaintiffs' Motion to Enforce.................................................18

CONCLUSION .................................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*,
   361 B.R. 337 (S.D.N.Y. 2007) ................................................................................................10

*Ahmedou v. U.S. Dep't of Homeland Sec.*,
   No. 21-CV-6923, 2023 U.S. Dist. LEXIS 59192 (E.D.N.Y. Apr. 4, 2023) ............................14

*Anderson v. Crouch*,
   169 F.4th 474 (4th Cir. 2026), *pet. for reh'g en banc pending*, No. 22-01927
   (4th Cir. Mar. 24, 2026)................................................................................................15, 16, 17

*Bostock v. Clayton County*,
   590 U.S. 644 (2020) ........................................................................................2, 14, 16, 17

*Boyden v. Conlin*,
   341 F. Supp. 3d 979 (W.D. Wis. 2018) ..................................................................................13

*Care One, LLC v. NLRB*,
   166 F.4th 335 (2d Cir. 2026) ....................................................................................................3

*Cooper v. Town of E. Hampton*,
   83 F.3d 31 (2d Cir. 1996) .......................................................................................................14

*Dimartile v. Cuomo*,
   No. 20-cv-0859, 2020 U.S. Dist. LEXIS 150666 (N.D.N.Y. Aug. 19, 2020)........................11

*Dimartile v. Hochul*,
   80 F.4th 443 (2d Cir. 2023) ......................................................................................................3

*Flack v. Wis. Dep't of Health Servs.*,
   395 F. Supp. 3d 1001 (W.D. Wis. 2019)................................................................................13

*Jennings v. Rodriguez*,
   583 U.S. 281 (2018) ................................................................................................................14

*Kornea v. Miller*,
   797 F. Supp. 3d 295 (S.D.N.Y. 2025), *reconsideration denied*, 2025 U.S. Dist.
   LEXIS 208220 (S.D.N.Y. Oct. 22, 2025)..................................................................................7

*L.V.M. v. Lloyd*,
   318 F. Supp. 3d 601 (S.D.N.Y. 2018) ................................................................................5, 14

*McCue v. City of New York (In re World Trade Ctr. Disaster Site Litig.)*,
     503 F.3d 167 (2d Cir. 2007) ..................................................................................11, 12, 13

*New Jersey v. U.S. Dep't of Transp.*,
     No. 26-282, 2026 U.S. App. LEXIS 7463 (2d Cir. Mar. 11, 2026) ...........................................2

*Nken v. Holder*,
     556 U.S. 418 (2009) ...................................................................................2, 3, 4, 11

*Olachi Mezu-Ndubuisi v. Univ. of Rochester*,
     No. 25-139, 2026 U.S. App. LEXIS 4745 (2d Cir. Feb. 18, 2026)............................................3

*Rodriguez ex rel. Rodriguez v. DeBuono*,
     175 F.3d 227 (2d Cir. 1999) ...............................................................................11

*Shillitani v. United States*,
     384 U.S. 364 (1966) ........................................................................................6

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*,
     120 F.4th 59 (2d Cir. 2024) ................................................................................3

*Strougo v. Barclays PLC*,
     194 F. Supp. 3d 230 (S.D.N.Y. 2016) ......................................................................15

*Tucker Anthony Realty Corp. v. Schlesinger*,
     888 F.2d 969 (2d Cir. 1989) ................................................................................3

*U.S. Equal Emp. Opportunity Comm'n, v. Aam Holding Corp.*,
     No. 1:24-mc-00103, 2024 U.S. Dist. LEXIS 141271 (S.D.N.Y. Aug. 7, 2024) ........................3

*United States v. Diaz*,
     No. 3:20-CR-000146, 2025 U.S. Dist. LEXIS 113246 (D. Conn. June 13, 2025)............3, 6, 9

*United States v. Skrmetti*,
     605 U.S. 495 (2025) ..........................................................................14, 15, 16, 17

*Virginian Ry. Co. v. United States*,
     272 U.S. 658 (1926) ........................................................................................4

*Wisdom Imp. Sales Co. v. Labatt Brewing Co.*,
     339 F.3d 101 (2d Cir. 2003) ................................................................................3

**STATUTES**

Section 1557 of the Affordable Care Act, 42 U.S.C. § 1681 ...............................................passim

Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*. .......................................14

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ....................................16

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*.............................................17

**OTHER AUTHORITIES**

Fed. R. Civ. P. 65.........................................................................................................................6

**INTRODUCTION**

Plaintiffs respectfully oppose Defendant Aetna Life Insurance Company's ("Defendant" or "Aetna") Motion to Stay Injunction Pending Appeal (the "Motion to Stay"), ECF No. 157, and reply in further support of Plaintiffs' Emergency Motion to Enforce the Preliminary Injunction and for Order to Show Cause (the "Motion to Enforce"), ECF No. 155 (collectively, the "Pending Motions"). In both moving to stay the Preliminary Injunction entered by this Court on March 8, 2026, Ruling and Order on Pending Motions, ECF No. 153 (the "Preliminary Injunction" or "PI Order"), and in opposing the Motion to Enforce, Aetna claims, with no evidentiary support, that it will be irreparably harmed by complying with the Preliminary Injunction pending resolution of its interlocutory appeal. Aetna recycles arguments asserted in earlier briefing—which were all considered and rejected by this Court—and advances a host of new, equally deficient arguments while evading its obligation to comply with the Preliminary Injunction.

Although this is a putative class action lawsuit in which Plaintiffs challenge the legality of Aetna's categorical exclusion of gender affirming facial reconstruction ("GAFR") surgeries under Section 1557 of the Affordable Care Act ("Section 1557")—and will ultimately seek broad declaratory and injunctive relief for the proposed Injunctive Relief Class—the Preliminary Injunction applies to just two individuals: Dr. Jamie Homnick and Dr. Gennifer Herley. The Preliminary Injunction "require[s] [Aetna] to make individualized coverage determinations as to Dr. Homnick and Dr. Herley *only*, on the basis of medical necessity, as opposed to categorically excluding their claims under CPB 0615." PI Order at 2 (emphasis added).

The central questions before the Court on the Pending Motions are whether Aetna would suffer any irreparable harm from complying with this straightforward order and whether any such harm outweighs the significant risks to Drs. Homnick's and Herley's health and well-being

resulting from their inability to obtain GAFR that warranted the Court's issuance of the Preliminary Injunction in the first place. *See* PI Order at 38–45. The answer to both questions is no: none of the purely speculative harms Aetna posits could result from its compliance with the Preliminary Injunction are irreparable; and even if any of these speculative harms are irreparable, they are far outweighed by the harms to Drs. Homnick and Herley as a stay pending appeal would further delay their ability to obtain medically necessary GAFR.

Because Aetna cannot show irreparable harm, it is not entitled to a stay pending appeal. That alone is sufficient for the Court to deny the Motion to Stay. Even if the Court were to evaluate Aetna's likelihood of success on appeal, the Court's holding that Drs. Homnick and Herley demonstrated a likelihood of success on the merits of their Section 1557 claims based on the Supreme Court's controlling precedent in *Bostock v. Clayton County*, 590 U.S. 644 (2020), remains undisturbed by the out-of-circuit decisions Aetna cites. The "mere possibility" Aetna might win its appeal is insufficient to warrant a stay.

For these reasons, the Court should deny Aetna's Motion to Stay. Further, because Aetna suffers no harm by complying with the Preliminary Injunction—and only moved for a stay three weeks after the Injunction issued, during which time it now admits it took no steps to comply with the PI Order—the Court should also grant Plaintiffs' Motion to Enforce.

"A stay is an intrusion into the ordinary processes of administration and judicial review… and accordingly is not a matter of right, even if irreparable injury might otherwise result to the [movant]." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citation modified). To secure a stay pending appeal, Aetna must demonstrate that it will suffer irreparable harm absent a stay, that it is likely to succeed on the merits, that Drs. Homnick and Herley will not be substantially harmed by a stay, and that a stay would serve the public interest. *New Jersey v. U.S. Dep't of Transp.*, No. 26-282,

2026 U.S. App. LEXIS 7463, at *2 (2d Cir. Mar. 11, 2026) (citing *Nken*, 556 U.S. at 433). The first two factors "are the most critical," *Nken*, 556 U.S. at 434, and, crucially, "both must be satisfied" for the court to issue a stay, *Dimartile v. Hochul*, 80 F.4th 443, 456 (2d Cir. 2023) (citing *Nken*, 556 U.S. at 438 (Kennedy, J., concurring)).

Aetna fails to meet this standard and, as such, this Court should deny the Motion to Stay.

## ARGUMENT

**I.     Aetna Faces No Irreparable Harm by Complying with the Preliminary Injunction.**

Irreparable harm is a "critical prerequisite" for the issuance of a preliminary injunction, and by extension, of a stay pending appeal. *See New Jersey*, 2026 U.S. App. LEXIS 7463, at *3 (the standard for a stay pending appeal is "akin" to that of a preliminary injunction) (citing *Care One, LLC v. NLRB*, 166 F.4th 335, 343 (2d Cir. 2026)); *cf. Olachi Mezu-Ndubuisi v. Univ. of Rochester*, No. 25-139, 2026 U.S. App. LEXIS 4745, at *5 (2d Cir. Feb. 18, 2026) ("[I]rreparable harm 'is the single most important prerequisite for the issuance of a preliminary injunction' and 'must therefore be satisfied before the other requirements for an injunction can be considered.'" (quoting *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 80 (2d Cir. 2024)).

Irreparable harm may be "neither remote nor speculative," *U.S. Equal Emp. Opportunity Comm'n, v. Aam Holding Corp.*, No. 1:24-mc-00103, 2024 U.S. Dist. LEXIS 141271, at *8 (S.D.N.Y. Aug. 7, 2024) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)), but rather "certain and imminent harm for which a monetary award does not adequately compensate." *United States v. Diaz*, No. 3:20-CR-000146, 2025 U.S. Dist. LEXIS 113246, at *29 (D. Conn. June 13, 2025) (quoting *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 114 (2d Cir. 2003)). The Supreme Court has made clear that a stay pending appeal

"is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)).

This Court ordered Aetna to conduct individualized coverage determinations for Drs. Homnick and Herley based on medical necessity, as it does with other claims for gender affirming care, without categorically excluding their claims based on the GAFR exclusion (the "Exclusion") contained in Clinical Policy Bulletin ("CPB") 0615. PI Order at 2, 55. Aetna proffers three bases to support its spurious contention that this mandate—which simply requires Aetna to reprocess Drs. Homnick's and Herley's claims pursuant to CPB 0615 without application of the Exclusion— will irreparably harm Aetna. *See* Def.'s Mem. in Supp. of Mot. to Stay at 15–28, ECF No. 157-1 ("Mot. to Stay Mem."). First, Aetna asserts that its ability to comply with its contracts with the two plan sponsors would be frustrated by complying with the PI Order. Second, Aetna, a multi-billion-dollar company, claims the purely hypothetical loss of goodwill from those two plan sponsors would somehow cause it harm. Third, without any support, Aetna speculates that it might be financially injured by having to pay for the subject GAFR services when its only applicable obligation here is to process the subject claims, not pay them.

**A. The Preliminary Injunction does not alter Aetna's contractual obligations to plan sponsors.**

Aetna argues that, because Plaintiffs' plan sponsors "explicitly directed" it to incorporate the general terms of CPB 0615 into their respective plans, it is "prohibited, both legally and contractually," from complying with this Court's PI Order to conduct individualized medical necessity determinations for Drs. Homnick and Herley. Mot. to Stay Mem. at 21. This

mischaracterizes the nature of Aetna's contractual obligations as a third-party administrator to the two plan sponsors, Bausch & Lomb and the Metropolitan Transit Authority ("MTA").[1]

First, Aetna is required to administer plans in accordance with applicable federal law and can suffer no injury from this compliance. PI Order at 53 (citing *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 620 (S.D.N.Y. 2018) (defendant "cannot suffer any harm from an injunction that terminates an unlawful practice")); Pls.' Mem. in Opp. to Mot. to Dismiss App'x B, ECF No. 123-5 (Aetna's contract terms requiring Aetna to comply with applicable laws). Second, and contrary to Aetna's assertions, nothing in the PI Order undermines Aetna's ability to exercise its discretionary authority to evaluate members' claims and make medical necessity determinations. *See* Pls.' Mem. in Opp. to Mot. to Dismiss, App'x A, ECF No. 123-4 (Plan sponsors' contract terms delegating to Aetna the "discretionary authority" to determine entitlement to benefits); PI Order at 23 n.5 (holding that Plaintiffs' injuries are "the result of Aetna's actions, because the plan documents expressly delegate coverage determinations for gender-affirming care to Aetna"). In fact, this is the *main* responsibility for which plan sponsors contract with Aetna as a third-party administrator. Plaintiffs' plan sponsors willingly cede to Aetna the discretionary authority to determine members' entitlement to benefits. Pls.' Mem. in Opp. to Mot. to Dismiss, App'x A; PI Order at 23 n.5.

In the absence of any express exclusions in the plan terms themselves, self-funded plan sponsors understand that Aetna (in the first instance, or following an appeal or external review) may conclude that requested treatments are medically necessary, in which case the plan sponsors must pay for those treatments. *See id.* The Preliminary Injunction simply requires Aetna to exercise its delegated authority within the bounds of federal civil rights law and this Court's PI Order, by

---

[1] Aetna repeatedly refers to MTA as Dr. Herley's "employer." *See* Mot. to Stay Mem. at 2; Def.'s Resp. in Opp. to Pls.' Emergency Mot. to Enforce Prelim. Inj. at 3, ECF No. 158. Dr. Herley is not employed by MTA but is a participant in MTA's health plan as the dependent spouse of her wife, who is retired from MTA. *See* Order at 8.

applying objective coverage criteria to Drs. Homnick's and Herley's claims without application of the GAFR Exclusion.

Aetna's objection lies only with the PI Order's narrow mandate that Aetna refrain from applying the discriminatory Exclusion to two claims. This does not subject Aetna to "certain and imminent" irreparable harm, *Diaz*, 2025 U.S. Dist. LEXIS 113246, at *29, and it does not, as Aetna proclaims, "enjoin[]" Aetna from fulfilling its contractual obligations to plan sponsors or place it in an "untenable position." Mot. to Stay Mem. at 2, 22.

As this Court recognized, Aetna routinely modifies the terms of CPB 0615, and there is no evidence that each revision requires new contracts with plan sponsors who, like the Plaintiffs' plan sponsors here, have simply directed Aetna to incorporate the default terms of CPB 0615 into their plans. PI Order at 27. Indeed, on September 25, 2025, Aetna revised CPB 0615 to allow coverage for "gender affirming breast removal revision surgery" when "considered medically necessary for persons who meet the criteria."[2] Nothing in the record suggests, and Aetna has never averred, that this iteration of CPB 0615 required the sign-off of every plan sponsor, or that Aetna's implementation of changes to its clinical policies without sponsors' express consent amounted to a breach of contract. Even if Aetna's contracts with Bausch & Lomb and MTA explicitly incorporated the GAFR Exclusion—which they do not—Aetna's obligation to comply with a federal court order supersedes any conflicting term in a private contract. Federal courts possess equitable authority to issue injunctions that bind the defendant's conduct, *see* Fed. R. Civ. P. 65, and such orders take precedence over conflicting contractual obligations to third parties. *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent

---

[2] *See Review History of CPB 0615*, Aetna Inc., https://www.aetna.com/cpb/medical/data/disclaimer/review/600_699/0615_48.html (last visited Apr. 10, 2026).

power to enforce compliance with their lawful orders through civil contempt."). Neither Aetna,

nor the plan sponsors (which themselves must adhere to federal civil rights laws), have any interest

in enforcing a contractual term that is contrary to law. *Kornea v. Miller*, 797 F. Supp. 3d 295, 299

(S.D.N.Y. 2025), *reconsideration denied*, 2025 U.S. Dist. LEXIS 208220 (S.D.N.Y., Oct. 22,

2025).

In its Motion, Aetna acknowledges its authority to "construe and apply the terms of the

Plans." Mot. to Stay Mem. at 17. The Court's PI Order merely directs Aetna to review Drs.

Homnick's and Herley's claims for GAFR coverage as it would any other request for gender-

affirming surgery,[3] without applying the enjoined exclusion. Aetna is capable of doing that, and,

in fact, appears to have already reviewed those clinical criteria when initially evaluating Drs.

Homnick's and Herley's claims, finding they satisfied all of them, but nevertheless concluding

that the services were not medically necessary solely because of the Exclusion.[4] *See* Ex. 1 (Dr.

Homnick's Services Administrative Record); Ex. 2 (Dr. Herley's Case Summary).[5] To comply

with the Preliminary Injunction, Aetna need only reprocess those claims without application of the

Exclusion—and would, therefore, find that both women meet the relevant clinical criteria, which

would compel their claims to be approved. *See* PI Order at 53 (agreeing with Plaintiffs that, if their

claims are found to satisfy the medical necessity requirements, "the plan sponsors will [pay for the

procedures], just as they have agreed to under their Aetna contracts for all other medically

---

[3] *See* Pls.' Mem. in Opp. to Mot. to Dismiss, Ex. 1, ECF No. 123-1 (CPB 0615 outlines medical necessity clinical criteria for gender affirming chest and genital reconstructive surgery). These are substantially the same criteria that Aetna uses when considering GAFR claims under the state-specific policies that require them. *See* Pls.' Mem. in Opp. to Mot. to Dismiss, Ex. 3, ECF No. 123-3.

[4] Notably, Aetna has previously told this Court that it is not bound to CPB 0615 in every case. Def.'s Mem. in Opp. to Mot. for Prelim. Inj. at 17, ECF No. 81 ("[W]hile Aetna CPBs are developed to assist in administering plan benefits, they do not themselves constitute a description of plan benefits."). Aetna cannot, on one hand, claim that CPB 0615 is mere guidance, while on the other hand, assert that any Court-ordered deviation from the CPB would irreparably harm it.

[5] Exhibits 1 and 2 are documents Aetna produced to Plaintiffs in discovery. Plaintiffs added red boxes to the original documents to highlight relevant portions. Otherwise, these documents have not been modified.

necessary treatments approved by Aetna" (quoting Pls.' Reply in Supp. of Mot. for Prelim. Inj. at 19, ECF No. 114)).

Nothing in the PI Order alters, let alone undermines, Aetna's ability to meet its contractual obligations to Plaintiffs' plan sponsors. Because Aetna fails to demonstrate that it will suffer certain and imminent harm in the absence of a stay, the Motion must be denied.

**B. Aetna fails to demonstrate that compliance with the Preliminary Injunction will result in loss of goodwill or business relationships.**

Aetna asserts, with no evidence, that the PI Order "undermines . . . Aetna's relationships with Plaintiffs' employers" and "adversely impacts Aetna's contracts with other similarly-situated non-party employers." Mot. to Stay Mem. at 23. This assertion is entirely speculative, and Aetna has offered no evidence that Plaintiffs' employers intend to limit or terminate their contractual relationships with Aetna, or that they even harbor ill will toward Aetna because of its compliance with the Court's PI Order. Aetna's argument that unidentified "similarly-situated non-party employers" would be affected by the PI Order is even more implausible. *See id*.

The Preliminary Injunction applies only to two women who participate in two plans sponsored by two employers. At no point in the thirteen months since Plaintiffs moved for the preliminary injunction on March 3, 2025, or the five weeks since the Court granted the Preliminary Injunction on March 8, 2026, have Bausch & Lomb, MTA, or any other plan sponsor indicated (either through evidence submitted by Aetna or otherwise) that they object to or would be harmed by Aetna's compliance with the PI Order. Indeed, as explained above, the plan sponsors' contracts expressly require Aetna to conduct itself in accordance with all applicable laws, *see supra* at 5, *see also* Pls.' Mem. in Opp. to Mot. to Dismiss, App'x B, ECF No. 123-5, which this Court determined Aetna likely failed to do. PI Order at 51.

Furthermore, there can be no dispute that Aetna routinely changes or reverses coverage determinations in fulfilling its delegated obligations to plan sponsors, including for GAFR, and it has provided no evidence that it has lost "goodwill" from plan sponsors as a result. As Aetna itself said, since 2023, eight out of nine previously denied requests for GAFR coverage that went through the external review process were overturned by the external reviewing physician. Def.'s Mot. for Leave to File Surreply, Ex. D ¶ 4, ECF No. 116-5 (Rudolph Decl.). There is no basis on which to assume that these reversals undermine Aetna's business relationships with those plan sponsors, and Aetna's idle speculation that it might is no basis for a stay.

### C. Aetna has adduced no evidence it will incur unrecoverable monetary losses absent a stay.

In its Motion to Stay, Aetna makes a flurry of false and confusing statements appearing to argue that Plaintiffs intend to make Aetna pay for their surgeries, Mot. to Stay Mem. at 25–26—something Plaintiffs have never requested from Aetna or this Court. More importantly, though, Aetna has offered no evidence to show that performing two medical necessity determinations—which consist of answering several yes-or-no questions based on its own published criteria for gender-affirming surgeries—would impose *any* financial burden on Aetna, let alone one sufficiently profound to compel this Court to stay the Preliminary Injunction. As stated above, the PI Order requires Aetna to conduct a medical necessity review based on its standard criteria, but without reference to or application of the Exclusion. *See supra* at 2, 4. In that situation, as here, plan sponsors remain contractually obligated to carry out the terms of their plans, even if Aetna's original coverage determination is ultimately reversed—all at no cost to Aetna.

Aetna has failed to demonstrate any "certain and imminent" irreparable financial harm to justify a stay. *Accord Diaz*, 2025 U.S. Dist. LEXIS 113246, at *29. Aetna erroneously claims the Court's PI Order "function[s] as [an] interim monetary award[.]" Mot. to Stay Mem. at 26. This is

false. Drs. Homnick and Herley, who are only seeking declaratory and injunctive relief in this suit, have never asked Aetna to bear the costs of their future surgeries, and Aetna has no contractual obligation with their plan sponsors to do so.[6] *See supra* at 7–8. Again, in seeking a preliminary injunction, Drs. Homnick and Herley only asked this Court to compel Aetna to evaluate their medically necessary claims on their merits, without reference to the discriminatory Exclusion in CPB 0615, and to process their claims accordingly. That is what the Court ordered.

Aetna fails to offer any evidence demonstrating how the injunction pertaining to two Plaintiffs—which is *not* monetary relief and only requires Aetna to process those Plaintiffs' claims in accordance with this Court's order and federal civil rights law—will cost it anything. Nor would compliance with the injunction moot the appeal, which still presents questions of law that apply to the putative class of Plaintiffs and can be resolved by the Second Circuit. Unlike the cases cited by Aetna, this case does not concern irreversible grants of real property, and the outcome of the Parties' arguments on appeal will bear on the Parties' relative legal positions before final judgment. Furthermore, even if Aetna could show that the absence of a stay may moot their appeal—which it cannot—the loss of appellate rights "is not dispositive of the ultimate question of whether to grant a stay pending appeal." *ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 352 n.68 (S.D.N.Y. 2007). Because Aetna fails to demonstrate that it will suffer irreparable harm absent a stay, this Court should deny Aetna's Motion and order Aetna to promptly comply with the PI Order's straightforward mandate.

---

[6] Plaintiffs belonging to the putative Damages Class—which does not include Drs. Homnick and Herley—have already undergone medically necessary GAFR and seek compensation from Aetna for the out-of-pocket costs of those surgeries as damages. *See* Second Am. Compl. at 52, ECF No. 60.

## II.    The Issuance of a Stay Would Substantially Injure Drs. Homnick and Herley.

This Court must next consider whether "issuance of the stay will substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 434 (citation omitted). The Second Circuit has clarified that the primary focus of this factor is the "substantial injury to the parties opposing the stay" (here, Drs. Homnick and Herley), as opposed to hypothetical or non-party interests. *McCue v. City of New York (In re World Trade Ctr. Disaster Site Litig.)*, 503 F.3d 167, 170 (2d Cir. 2007); *New Jersey*, 2026 U.S. App. LEXIS 7463, at *2 (evaluating the risk of substantial harm to nonmoving appellant states). When courts weigh whether a stay to a preliminary injunction will cause substantial injury to the nonmoving party, their analysis considers the same factors that animate the irreparable harm prong of the preliminary injunction inquiry. *See Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233–35 (2d Cir. 1999) (determining that, for a court to conclude that plaintiffs will be irreparably harmed without a preliminary injunction, the injury must "be so imminent as to be irreparable if a court waits until the end of trial to resolve the harm").

Once a court determines that a party will experience imminent irreparable harm, "it is logically inconsistent, and in fact a fatal flaw, to subsequently find no irreparable nor even serious harm to the Plaintiffs pending appeal." *Id.*; *see Dimartile v. Cuomo*, No. 1:20-cv-0859, 2020 U.S. Dist. LEXIS 150666, at *10 (N.D.N.Y. Aug. 19, 2020) (rejecting defendants' argument that there would be no injury to plaintiffs from a stay because that "would directly contradict the Court's previous findings that Plaintiffs have made a strong showing of irreparable harm"). As this Court

11

has already recognized, any further delay will cause Plaintiffs substantial injury. Thus, this factor weighs heavily against granting Aetna's Motion to Stay.

Aetna's discussion of this factor involves a fundamentally flawed premise: that the "other parties interested in the proceeding" are non-party employer plan sponsors. Mot. to Stay Mem. at 28 (citation omitted). Aetna's focus on plan sponsors—who are not parties and whom this Court has already held are not necessary parties in this litigation, *see* PI Order at 32—misstates the governing standard and ignores the only interests that matter here: those of Drs. Homnick and Herley. *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d at 170; *New Jersey*, 2026 U.S. App. LEXIS 7463, at *2. Instead, Aetna devotes only a single conclusory sentence to Plaintiffs' harms—that "Plaintiffs themselves can demonstrate no harm from a stay," Mot. to Stay Mem. at 28—in contravention of this Court's prior findings of ongoing, irreparable injury.

Based on ample record evidence, this Court found that Drs. Homnick and Herley experience daily, ongoing, and irreparable harm from being unable to obtain GAFR without insurance coverage, and that any further delay in obtaining this care will only compound these already serious, avoidable harms. PI Order at 39–45. Aetna's sole argument to support its Motion to Stay is that Plaintiffs "face no meaningful harm from a short delay while the Second Circuit considers Aetna's appeal" because more than a year has passed since Plaintiffs filed their motion for preliminary injunction. Mot. to Stay Mem. at 28. However, if the Court grants Aetna's Motion to Stay, Drs. Homnick and Herley may need to wait an additional year for the Second Circuit to rule on Defendant's appeal.[7] This is plainly untenable for them and poses serious additional risks to their health as Drs. Homnick's and Herley's gender dysphoria and related symptoms worsen

---

[7] *See U.S. Court of Appeals Summary*, U.S. Courts, https://www.uscourts.gov/sites/default/files/document/fcms_na_appsummary0930.2025.pdf (last visited Apr. 10, 2026) (median time from filing notice of appeal to disposition of case in Second Circuit from September 2024 to September 2025 was 15.3 months).

daily without immediate relief. *See* Ex. 3, Decl. of Dr. Jamie Homnick ¶¶ 5–10 (describing worsening symptoms of gender dysphoria in the last year, including severe and worsening depression and anxiety, and paranoia when leaving her house); Ex. 4, Decl. of Dr. Gennifer Herley ¶¶ 5–8 (describing worsening symptoms of gender dysphoria in the last year, including exacerbated symptoms of depression, anxiety, suicidal ideation, and low self-esteem); *see also* Decl. of Dr. Amanda Shaw ¶¶ 15–18, ECF No. 62-4; Decl. of Janice Stefanacci Seward ¶ 27, ECF No. 62-6 ("It is my view that the longer Dr. Herley has to wait to access gender affirming facial surgery, the more likely her condition  may deteriorate ever further"); *see also In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d at 170–71 (vacating stay where substantial injury to the parties opposing stay "increased in significance with the passage of time").

Aetna's regurgitated argument that the plan sponsors will be harmed is both irrelevant and baseless. As previously discussed, *supra* at 8–9, Drs. Homnick's and Herley's plan sponsors have had ample opportunity to intervene in this litigation and have chosen not to. Bausch & Lomb and MTA are both large employers, and the potential payment of GAFR claims for Drs. Homnick and Herley resulting from Aetna's potential approval of their individual claims pursuant to the Preliminary Injunction would likely be negligible. *See Boyden v. Conlin*, 341 F. Supp. 3d 979, 990 (W.D. Wis. 2018); *accord Flack v. Wis. Dep't of Health Servs.*, 395 F. Supp. 3d 1001, 1022 (W.D. Wis. 2019) (finding that "no reasonable jury could conclude that cost concerns were genuine or an exceedingly persuasive justification" for the exclusion of gender-affirming care from state's nearly $10 billion Medicaid budget (citation modified)). Accordingly, this Court should find the balance of harms weighs heavily against granting Aetna's Motion to Stay.

### III.  The Requested Stay is Contrary to the Public Interest.

Aetna cannot establish that a stay of the Court's Preliminary Injunction serves the public interest. Again, Aetna attempts to relitigate an argument it already lost: that the Employee Retirement Income Security Act's ("ERISA") goal of encouraging employers to provide welfare benefit plans supersedes Section 1557's anti-discrimination mandate for insurance companies. *See* Def.'s Mem. in Opp. to Mot. for Prelim. Inj. at 39, ECF No. 81; PI Order at 53 (finding that the public interest weighs in favor of granting preliminary injunction). As this Court already held, Aetna's argument fails as ERISA does not preempt or invalidate federal anti-discrimination laws. *See* PI Order at 34 ("the text of ERISA is clear that it does not preempt other federal claims"). Moreover, Aetna fails to provide any evidence that requiring compliance with anti-discrimination laws deters employers from providing healthcare benefit plans. *See* Mot. to Stay Mem. at 29–30.

Aetna asserts, also without any support, that there is a "public interest" in stare decisis. Even if a public interest in stare decisis exists, as further discussed below, *see infra* at 15, the PI Order does not conflict with the Supreme Court's holding in *United States v. Skrmetti*, 605 U.S. 495 (2025). PI Order at 51 n.15 ("the Supreme Court's reasoning in *Skrmetti* does not change this Court's analysis here; the 'but-for' analysis articulated in *Bostock* remains binding on Plaintiffs' claim under Section 1557.") (citing *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018)).

By contrast, the public interest is best served by rectifying discrimination and ensuring that all individuals have access to medically necessary care. *See, e.g.*, *Lloyd*, 318 F. Supp. 3d at 620 ("this Court is hard-pressed to see how setting aside an unlawful practice could be against the public interest."). Staying the Court's PI Order will harm, not serve, the public interest.

### IV.  Aetna Has Not Made a Strong Showing That It is Likely to Succeed on the Merits.

The "mere possibility" Aetna might succeed on the merits does not warrant a stay. *See New Jersey*, 2026 U.S. App. LEXIS 7463, at *4; *Ahmedou v. U.S. Dep't of Homeland Sec.*, No. 21-CV-

14

6923, 2023 U.S. Dist. LEXIS 59192, at *4 (E.D.N.Y. Apr. 4, 2023) (quoting *Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 233 (S.D.N.Y. 2016)); *Cooper v. Town of E. Hampton*, 83 F.3d 31, 36 (2d Cir. 1996) ("Even if we assume that defendants can show a substantial possibility of success on appeal, this factor does not override the balance of hardships . . . . [A] stay pending appeal is not warranted.").

Because Aetna has failed to show any irreparable harm from complying with the Preliminary Injunction, the Court need not reach the question of whether it is likely to prevail on the merits of its defenses. Nor could it. This Court entered the Preliminary Injunction with a thorough opinion based on a robust record of briefing and oral argument. The Fourth Circuit's recent ruling in *Anderson v. Crouch*, 169 F.4th 474 (4th Cir. 2026), *pet. for reh'g en banc pending*, No. 22-01927 (4th Cir. Mar. 24, 2026), does not change determinative distinctions in law and fact between the present case and *Skrmetti*. Aetna's recycled arguments,[8] expressing its desire to apply *Skrmetti* to the present case, should be no more persuasive to the Court now than they were just five weeks ago. *See* Pls.' Suppl. Mem. in Supp. of Mot. for Prelim. Inj., ECF No. 142 ("Pls.' Suppl. Br."); Pls.' Reply to Def.'s Suppl. Br., ECF No. 144 (explaining why *Skrmetti* does not apply to Section 1557 claims).

### A. *Skrmetti* does not apply to Plaintiffs' statutory discrimination claims.

Aetna continues to conflate *Skrmetti*'s constitutional holding with statutory discrimination claims to demand, without explanation, "Aetna's policy must be evaluated under the principles of *Skrmetti*." Mot. to Stay Mem. at 6. To the contrary, as briefed extensively by Plaintiffs: (1) Section 1557 prohibits a broader range of conduct by federally funded health programs than is proscribed by the Equal Protection Clause for state actors, Pls.' Suppl. Br. at 6–10; (2) the presumption of

---

[8] Indeed, much of the *Skrmetti* argument presented by Aetna are word-for-word copies of arguments it presented in its Supplemental Brief, ECF No. 141, and Reply to Plaintiffs' Supplemental Brief, ECF No. 145.

constitutionality afforded to state actors is inapplicable to private actors facing statutory civil rights claims, *id.* at 7; and (3) *Skrmetti* did not disturb mandatory Supreme Court and Second Circuit precedent for statutory discrimination claims including Title IX, and by extension, Section 1557. *Id.* at 8–13. Accordingly, this Court properly dispensed with *Skrmetti*. *See* Order at 51 n.15.

### B. This Court correctly applied *Bostock* in holding that Drs. Homnick and Herley are likely to succeed on their Section 1557 claims.

This Court correctly applied *Bostock* to Plaintiffs' Section 1557 claims and correctly concluded that neither *Skrmetti* nor out-of-circuit decisions after *Skrmetti* impacted Aetna's statutory obligations under Section 1557. The Fourth Circuit's recent panel decision in *Anderson*, is likewise unpersuasive.

Given the *Anderson* plaintiffs' pending petition for *en banc* review, the panel decision may not be the Fourth Circuit's final word, so Aetna's suggestion that *Skrmetti*'s application to non-constitutional claims has become settled is far from certain. *Anderson*, like the other recent circuit cases Aetna cites, erroneously applies *Skrmetti* to statutory sex discrimination claims. *See* Pls.' Reply to Def.'s Supp. Br. at 8–10, ECF No. 144 (distinguishing *Skrmetti*, *Lange*, and *Pritchard*). Specifically, *Anderson* misapplies *Skrmetti* to a Section 1557 claim to hold West Virginia Medicaid's exclusion of coverage for gender-affirming care did not discriminate on the basis of sex, because it excluded coverage for a particular diagnosis: gender dysphoria. *Id.* But, as this Court recognized, the Court in *Skrmetti* expressly refused to speculate about how the decision might apply to statutory sex discrimination claims, if at all. *Skrmetti*, 605 U.S. at 520; *see* Order at 51 n.15; Pls.' Suppl. Br. at 4.

In any event, this Court is not bound by *Anderson* or any other out-of-circuit authority. Neither the Supreme Court nor the Second Circuit have ruled on the question of whether, if at all, *Skrmetti* applies to statutory claims under Section 1557 and other civil rights laws. Absent

16

controlling authority, this Court's application of *Bostock* and other binding precedent to conclude that Plaintiffs are likely to succeed under Section 1557 was correct. *See* Order at 45–52; Pls.' Suppl. Br. at 4.

*Anderson* relies on *Skrmetti*'s dicta discussing *Bostock*, *see Anderson*, 169 F.4th at 492–93, while ignoring a key directive from *Bostock* that Title VII prohibits discrimination based on traits "inextricably bound up with sex," *Bostock*, 590 U.S. at 660–61. *Bostock* is unmistakably clear that "Title VII prohibits *all* forms of discrimination because of sex, however they may manifest themselves or whatever other labels might attach to them." *Id.* at 669–70. As *Bostock* held, this includes discrimination on the basis of transgender status. *Id.*; *see also* Pls.' Suppl. Br. at 15. Despite acknowledging that gender dysphoria is a diagnosis exclusive to transgender people, the *Anderson* court fails entirely to grapple with *Bostock*'s mandate that discrimination based on sex traits is unlawful sex discrimination under Title VII and, by extension, other federal statutes prohibiting discrimination on the basis of sex.

As Plaintiffs have previously briefed, CPB 0615 does more than merely reference sex—it establishes a sex-based rule by excluding coverage for facial reconstruction surgery when "performed as a component of a gender transition." *See* Pls.' Suppl. Br. at 10–11. It does not, like some of the other policies at issue in the contrary cases, turn on whether a procedure is used to treat the diagnosis of gender dysphoria. *Id*. Accordingly, this Court correctly found that "the availability of a medical necessity determination would change based on the patient's sex assigned at birth," and thus discriminates because of sex, as *Bostock* instructs. Order at 51.

For the reasons already articulated by this Court, Aetna is unlikely to prevail in its defense of the discriminatory GAFR Exclusion. But even if it could show some likelihood of success, its failure to show any irreparable harm is fatal to its Motion to Stay.

17

**V.        The Court Should Grant Plaintiffs' Motion to Enforce.**

Aetna's sole excuse for not complying with the Order when it issued was that it planned to seek, and believed it might obtain, a stay pending appeal. *See* Def.'s Resp. in Opp. to Pls.' Emergency Mot. to Enforce Prelim. Inj. at 10, ECF No. 158. But Aetna does not explain why it waited until shortly before the notice of appeal deadline to seek a stay if, in fact, it believed it could not comply with the Court's order or would be irreparably harmed in doing so. Aetna now admits that it took no actions to comply, or even began to comply, with the Court's order. It did not respond to Plaintiffs' counsel's inquiries regarding next steps, *see* Mot. to Enforce at 2–3, did not reprocess the subject claims, and did not instruct either Drs. Homnick or Herley, or their doctors to submit new claims to restart the process. Rather, it simply defied the Court's Order unilaterally, in hopes that it might get a reprieve later. The Court should grant Plaintiffs' Motion to Enforce and order Aetna to show cause why it should not be held in contempt for this willful defiance of the Preliminary Injunction.

**CONCLUSION**

In light of the complete absence of irreparable harm to Aetna without a stay, the substantial irreparable harm to Drs. Homnick and Herley if a stay is issued, and the undeniable public interest in faithful compliance with Section 1557, Aetna's motion for a stay pending appeal should be denied. Because Aetna is not entitled to a stay and has admitted that it has failed to comply in any way with the Preliminary Injunction, Plaintiffs further request that the Court grant Plaintiffs' Motion to Enforce the Preliminary Injunction.

18

DATED: April 10, 2026

Respectfully submitted,

*/s/ Joseph J. Wardenski*
Joseph J. Wardenski [ct31674]
Mack Karbon (*pro hac vice* motion forthcoming)
WARDENSKI P.C.
134 West 29th Street, Suite 709
New York, NY 10001
Phone: (347) 227-2500
Fax: (347) 467-7237
joe@wardenskilaw.com
mack@wardenskilaw.com

Gabriel Arkles (admitted *pro hac vice*)
Ezra Cukor (admitted *pro hac vice*)
Kelly Parry-Johnson (admitted *pro hac vice*)
Sydney Duncan (admitted *pro hac vice*)
Seran Gee (admitted *pro hac vice*)
ADVOCATES FOR TRANS EQUALITY EDUCATION
FUND
520 Eighth Avenue, Suite 2204
New York, NY 10018
Phone:(646) 993-1688
Fax: (646) 993-1686
garkles@transgenderlegal.org
ecukor@transgenderlegal.org
sduncan@transgenderlegal.org

Christine E. Webber (admitted *pro hac vice*)
Harini Srinivasan (admitted *pro hac vice*)
Aniko R. Schwarcz (admitted *pro hac vice*)
Elizabeth M. McDermott (admitted *pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave, NW, Suite 800
Washington, DC 20005
Phone: (202) 408-4600
Fax: (202) 408-4699
cwebber@cohenmilstein.com
hsrinivasan@cohenmilstein.com
aschwarcz@cohenmilstein.com
emcdermott@cohenmilstein.com

*Attorneys for Plaintiffs*

19