**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| BINAH GORDON, KAY MAYERS, ALMA AVALLE, JAMIE HOMNICK, GENNIFER HERLEY and S.N., *individually and on behalf of all similarly situated individuals*, <br><br> Plaintiffs, <br><br> v. <br><br> AETNA LIFE INSURANCE COMPANY, <br><br> Defendant. | Case No. 3:24-cv-01447-VAB <br><br><br> April 17, 2026 |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO STAY INJUNCTION PENDING APPEAL**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION .............................................................................................................. 1

ARGUMENT AND AUTHORITIES..................................................................................... 3

      A.     Aetna Has Made a Strong Showing That It Will Likely Succeed on The Merits. ............................................................................................................ 3

      B.     Aetna Will Be Irreparably Harmed Absent a Stay.................................................. 5

            1.     Aetna will suffer irreparable harm because Plaintiffs seek to use Aetna as an intermediary to force the non-party employers to pay for GAFR benefits contrary to the terms of their Plans and the dictates of *Skrmetti*. ............................................................................................. 5

            2.     Aetna's appeal may be mooted absent a stay............................................. 8

      C.     A Stay Will Not Injure, But Rather Will Protect, Other Interested Parties ............ 9

      D.     A Stay Will Promote Important Public Interests ...................................................... 9

      E.     The Court Should Deny Plaintiffs' Motion to Enforce and Grant At Least a Temporary Stay.................................................................................................... 10

CONCLUSION................................................................................................................ 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp.*,
   361 B.R. 337 (S.D.N.Y. 2007)..............................................................................................8

*Anderson v. Crouch*,
   169 F.4th 474 ........................................................................................................................4

*Baroni v. Port Auth. of New York & New Jersey*,
   161 F.4th 48 (2d Cir. 2025) ................................................................................................10

*In re BGI, Inc.*,
   504 B.R. 754 (S.D.N.Y. 2014)..............................................................................................3

*Bostock v. Clayton County*,
   590 U.S. 644 (2020)..............................................................................................................4

*Bronx Harbor Health Care Complex, Inc. v. McDonald*,
   No. 24-cv-1573 (GTS)(PJE), 2025 WL 3761723 (N.D.N.Y. Dec. 30, 2025) ........................10

*In re County Squire Assocs. of Carle Place, L.P.*,
   203 B.R. 182 (2d Cir. BAP 1996)........................................................................................8

*Crouch v. Anderson*,
   145 S. Ct. 2835 (2025)..........................................................................................................4

*Doe v. Gonzales*,
   386 F. Supp. 2d 66 (D. Conn. 2005)...................................................................................10

*Folwell v. Kadel*,
   145 S. Ct. 2838 (2025)..........................................................................................................4

*LaRouche v. Kezer*,
   20 F.3d 68 (2d Cir. 1994) .....................................................................................................5

*Lucy v. Bay Area Credit Serv LLC*,
   No. 10-cv-1024 (JCH), 2011 WL 13344167 (D. Conn. July 28, 2011) ...................................3

*Mercer Health & Benefits LLC v. DiGregorio*,
   307 F. Supp. 3d 326 (S.D.N.Y. 2018)..................................................................................9

*Pritchard on behalf of C.P. v. Blue Cross Blue Shield of Ill.*,
   159 F.4th 646 (9th Cir. 2025) ...............................................................................................4

*Ramirez v. Town of Oxford*,
 No. 21-cv-240 (JAM), 2022 WL 3646203 (D. Conn. Aug. 24, 2022) ...........................................10

*Rodriguez ex rel. Rodriguez v. DeBuono*,
 175 F.3d 227 (2d Cir. 1999)....................................................................................................10

*Sutherland v. Ernst & Young LLP*,
 856 F. Supp. 2d 638 (S.D.N.Y. 2012)........................................................................................3

*Thapa v. Gonzales*,
 460 F.3d 323 (2d Cir. 2006)....................................................................................................3

*Ticor Title Ins. Co. v. Cohen*,
 173 F.3d 63 (2d Cir. 1999)......................................................................................................9

*United States v. Skrmetti*,
 605 U.S. 495 (2025).......................................................................................... *passim*

*Winter v. Natural Resources Defense Council, Inc.*,
 555 U.S. 7 (2008)....................................................................................................................3

**Statutes**

Affordable Care Act of 2010 ....................................................................................................2, 4

**Rules**

Fed. R. Civ. P. 62....................................................................................................................5

Aetna submits this reply to Plaintiffs' opposition to Aetna's motion to stay [Dkt. 162] ("Opp.") and in further opposition to Plaintiffs' emergency motion to enforce [Dkt. 155].

## **INTRODUCTION**

The Court's Order directs Aetna to make "individualized coverage determinations" as to Dr. Homnick and Dr. Herley.  [Dkt. 153] ("Order") at 2, 55.  Plaintiffs now argue that Aetna "has *already conducted* the requisite individual medical necessity determinations for both Dr. Herley and Dr. Homnick."  Dkt. 155-1 at 3 (emphasis added).  They point to two documents from Plaintiffs' claim files where the Aetna medical personnel reviewing their records confirmed that both women met the clinical criteria for a diagnosis of gender dysphoria.  *Id.* at 7 n. 5 and Exs. 1 and 2.  Plaintiffs assert that Aetna "already reviewed those clinical criteria when initially evaluating Drs. Homnick's and Herley's claims, finding they satisfied all of them."  Opp. at 7.[1]

To comply with the injunction, Plaintiffs say, Aetna must now reprocess their requests and "find that both women meet the relevant clinical criteria, which would compel their claims to be approved" with the result that "the plan sponsors will pay for the procedures."  *Id.* at 7; *see also id.* at 9 (the plan sponsors will be "contractually obligated" to pay for Plaintiffs' surgeries).  Plaintiffs argue, in effect, that the Order requires Aetna to approve coverage for, and the employers to pay for, Plaintiffs' GAFR requests solely because they meet the criteria for gender dysphoria; that the only medical necessity requirement is a diagnosis of gender dysphoria.

Aetna does not dispute that Plaintiffs have been diagnosed with gender dysphoria.  Aetna does note, however, that Aetna understood the Order to contemplate a fresh review of Plaintiffs' requests to assess the medical necessity of the specific *medical procedures* being sought, without

---

[1] As Plaintiffs' claim files make clear, Aetna's review of their requests for coverage was not an automated one.  Rather, Aetna medical personnel (nurses and medical directors) conducted an individualized review of the clinical information and documentation submitted for each Plaintiff and concluded that the facial surgeries they requested were not covered because the procedures are not considered medically necessary under the terms or their Plans.  *See* Opp., Exs. 1 and 2.

1

reference to CPB 0615.  But regardless, the Order creates an irreconcilable conflict between Aetna and the employer sponsors of Plaintiffs' Plans.  The Order would require Aetna to ignore the medical science both employers directed Aetna to consider when they instructed Aetna to follow its CPB 615 when making medical necessity determinations under the Plans—when there has been no finding that Aetna's assessment of the medical science as reflected in its CPB is inaccurate. The injunction also would force Aetna to require the employers to make payments contrary to their Plans and, equally important, contrary to the unequivocal directives of the Supreme Court in *United States v. Skrmetti*, 605 U.S. 495 (2025).

Aetna asks to stay the injunction here to allow the Second Circuit an opportunity to address a dispositive question of law regarding the application of *Skrmetti* on which five other circuits have already unanimously aligned. The operation and implications of the injunction—whether Aetna's policy impermissibly discriminates under the Affordable Care Act, whether Plaintiffs are entitled to the coverage they seek, and whether the absent employers can be forced to pay for it without their prior consent—all first hinge on this one purely legal question.  Under the Second Circuit's "sliding scale" analysis, the harm to Aetna and to the employers and their Plans absent a stay is directly proportional—and any harm to Plaintiffs is comparably inversely proportional—to the likelihood that Aetna will prevail on this controlling legal question.  Absent a stay, moreover, the injunction would so irreparably alter the status quo as to moot Aetna's appeal before the Second Circuit could address the serious legal question Aetna raises—which is itself another form of irreparable harm to Aetna, the targeted employers and their Plans.

Aetna respectfully requests that the Court grant a stay of the injunction pending the resolution of Aetna's appeal.  In the alternative, Aetna requests a temporary stay for 30 days to allow Aetna to seek a stay from the Second Circuit.

2

## ARGUMENT AND AUTHORITIES

In considering a motion to stay an injunction pending appeal, the Second Circuit weighs the factors on a "sliding scale." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006).[2] "Simply stated, more of one excuses less of the other." *Id.* "The degree to which a factor must be present varies with the strength of the other factors." *Lucy v. Bay Area Credit Serv LLC*, No. 10-cv-1024 (JCH), 2011 WL 13344167, at *1 (D. Conn. July 28, 2011). "Thus, the lack of any one factor is not dispositive to the success of the motion, rather the inquiry represents a balancing of the four factors." *In re BGI, Inc.*, 504 B.R. 754, 762 (S.D.N.Y. 2014).

Under this sliding scale analysis, "the stronger the showing that the movant makes as to its likelihood of success on the merits, the less compelling need be the movant's demonstration of harm." *Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 640 (S.D.N.Y. 2012). *See also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 51 (2008) (Ginsburg, J., dissenting) ("[C]ourts do not insist that litigants uniformly show a particular, predetermined quantum of probable success or injury before awarding equitable relief. Instead, courts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high. This Court has never rejected that formulation, and I do not believe it does so today.").

### A.      Aetna Has Made a Strong Showing That It Will Likely Succeed on The Merits.

Plaintiffs make no serious effort to defend the merits of the injunction in light of *Skrmetti*. They simply repeat arguments they made before the Supreme Court issued the *Skrmetti* decision, and then wholly ignore that decision and the five circuit courts that have unanimously followed it. But *Skrmetti* is dispositive here.

---

[2] Internal citations, quotations and emphasis are omitted from citations unless otherwise noted.

*First*, *Skrmetti* directly refutes Plaintiffs' argument that Aetna's CPB 615 discriminates on the basis of sex simply because it addresses a medical procedure for gender dysphoria, which they assert is "a diagnosis exclusive to transgender people." *See* Opp. at 17. *Skrmetti* makes clear that "[a] policy "does not classify on the basis of sex" where it prohibits certain treatments for "gender dysphoria, gender identity disorder, or gender incongruence (a classification based on medical use)." 605 U.S. at 517; *see also id.* at 511-17. *See also Pritchard on behalf of C.P. v. Blue Cross Blue Shield of Ill.*, 159 F.4th 646, 670 (9th Cir. 2025). ("But the statute in *Skrmetti* also targets care leading to gender reassignment. … We cannot distinguish *Skrmetti* this way."); *Anderson v. Crouch*, 169 F.4th 474, 485 (noting that the Supreme Court in *Skrmetti* reaffirmed that a prohibition on certain treatments for gender dysphoria is not discriminatory on the basis of sex "even though only transgender individuals seek treatment for gender dysphoria.").

*Second*, *Skrmetti* specifically holds that this is so even applying the "but-for" test of *Bostock v. Clayton County*, 590 U.S. 644 (2020). *See* 605 U.S. at 522 ("Under the logic of *Bostock*, then, sex is simply not a but-for cause of [the law's] operation."); *see also id.* at 520-22.

*Finally*, the Supreme Court also has made clear that *Skrmetti*'s interpretation of *Bostock* applies to the Affordable Care Act. *See Folwell v. Kadel*, 145 S. Ct. 2838 (2025) *and Crouch v. Anderson*, 145 S. Ct. 2835 (2025). *See also Anderson*, 169 F.4th at 493 ("*Skrmetti*'s approach to *Bostock* controls our Affordable Care Act analysis."); *Pritchard*, 159 F.4th at 670 (9th Cir.) (applying *Skrmetti* analysis to ACA).

In the end, Plaintiffs can cite not a single other decision post-*Skrmetti* that supports the merits of their injunction, and they do not candidly acknowledge the overwhelming tide of case law post-*Skrmetti* that fundamentally undermines their position. Instead, they merely speculate that the Second Circuit might rule differently. But that is precisely the point of Aetna's appeal—

4

to allow that Court to consider "a serious legal question" where Aetna has presented "a substantial case on the merits." *See LaRouche v. Kezer*, 20 F.3d 68, 72-73 (2d Cir. 1994).

**B.    Aetna Will Be Irreparably Harmed Absent a Stay**

If the Court's injunction operates as Plaintiffs insist, then Aetna must simply approve their requests for facial feminization surgery without additional review, and their Plans must summarily pay for the procedures, all before the Second Circuit can consider the foundational legal question of whether Plaintiffs are even entitled to the relief they seek. If Aetna is correct in its construction of *Skrmetti*—if the Second Circuit agrees that the law is what the overwhelming consensus says it is—then Plaintiffs will suffer no harm from a stay; they will lose no right to which they are legally entitled. But if the injunctive relief proceeds without a stay, and Aetna is correct on the merits of its appeal, then the status quo will have irreparably changed; Plaintiffs will prevail even by losing. That is precisely the result that FRCP 62(d) is intended to prevent.

**1.    Aetna will suffer irreparable harm because Plaintiffs seek to use Aetna as an intermediary to force the non-party employers to pay for GAFR benefits contrary to the terms of their Plans and the dictates of *Skrmetti*.**

Plaintiffs' Opposition distills to the argument that the injunction will cause Aetna no harm because the ultimate legal and financial burden will fall on the absent employers. All Aetna need do, they say, is approve Plaintiffs' GAFR requests as medically necessary; then, they say, the employers will be required to pay for their surgeries—"all at no cost to Aetna." *See* Opp. at 7-9. But Aetna cannot ignore the medical science the employers directed it to follow—especially when there has been no finding that Aetna's assessment of the medical science is inaccurate. And Aetna cannot ignore the legal protections *Skrmetti* affords the Plans.

*First*, it is undisputed that both employers expressly directed Aetna to follow its CPB 615 in making medical necessity determinations under their Plans. Dr. Homnick's Bausch & Lomb ("B&L") Plan expressly incorporated Aetna's Clinical Policy Bulletins—specifically including their

5

"medical necessity requirements"—in the provision addressing gender affirming treatment. Order at 27. And MTA specifically directed Aetna to follow its Clinical Policy Bulletins in processing claims for gender affirming care under Dr. Herley's Plan. *See* Dkt. 102 at 12, 22-23.

*Second*, the Court's Order does not purport to modify the Plans themselves or alter the coverage directives of the Plan sponsors, over whom the Court has no jurisdiction. Order at 27.

*Third*, it is undisputed that Aetna's CPB 615 reflects Aetna's evidence-based assessment that current research and data are insufficient to establish that facial surgery is a medically effective and necessary treatment for gender dysphoria. And this Court has made no finding that Aetna's assessment of this question of medical science is in any way unreasonable or inaccurate. The Order notes that the parties disagree "on the validity of the medical evidence on gender-affirming facial reconstruction surgery," *see* Order at 48 n.11, but does not conclude that Aetna's interpretation of this medical evidence, as reflected in its CPB 615, is incorrect.

*Fourth*, no court has ever held—nor does this Court hold—that the ACA requires a claims administrator to approve coverage for, or a plan sponsor to pay for, services that are not medically effective (or "medically necessary") for their intended purpose (in this case, to alleviate the symptoms of gender dysphoria). It is not discriminatory under the ACA to withhold coverage—for anyone—where the requested service has not been shown to be medically effective. That is the policy reflected in Aetna's CPB 615 and that is the policy the employers here expressly directed Aetna to follow when making medical necessity determinations under their Plans. The ACA does not purport to regulate questions of medical efficacy.

*Finally*, *Skrmetti* makes clear that the key question under the ACA is legal, not scientific; that health benefit plans like Plaintiffs' Plans here are not required to provide coverage for

gender-affirming treatments, regardless of medical necessity.  And five circuits now have aligned unanimously with the Supreme Court and in Aetna's favor on this issue.

Plaintiffs say they want Aetna to "conduct a medical necessity review based on its standard criteria, but without reference to or application of" its CPB 615. Opp. at 9.  The Order directs Aetna "to assess the Plaintiffs' claims under the criteria it currently uses to determine medical necessity in plans that override this policy exclusion." Order at 28.  But Aetna's "standard criteria" necessarily include its evidence-based assessment of whether the requested procedure is medically effective, and the employers here expressly opted *not* to "override" that sensible policy.[3]  Nothing in the ACA requires Aetna, or the sponsors of the Plans Aetna administers, to divorce their medical necessity criteria from the prevailing medical science, and Aetna cannot simply ignore the valid medical science the Plan sponsors directed them to apply.[4]

As for the legal question central to the ACA—whether Aetna's CPB 615 and, by extension, the Plans that follow it, discriminate based on sex—the Supreme Court has spoken, both in *Skrmetti* and in its actions afterward, with mandates that undeniably must be considered here.  Certainly, Aetna cannot ignore this Supreme Court precedent and direct Plaintiffs Plan sponsors to pay benefits the Supreme Court says they very likely do not owe.  At the very least, Aetna is entitled to appeal that purely legal question for consideration by the Second Circuit.

---

[3] Plaintiffs note Aetna's statement that "while Aetna CPBs are developed to assist in administering plan benefits, they do not themselves constitute a description of plan benefits."  Opp. at 7 n. 4.  Although it is true that individual plan sponsors can elect not to follow Aetna's CPBs, it undisputed here that both Plan sponsors expressly directed Aetna to follow its CPB in reviewing requests for gender-affirming coverage. *See* Order at 27; Dkt. at 12, 23.

[4] Plaintiffs make much of the fact that Aetna can and sometime does revise its Clinical Policy Bulletins. *See* Opp. at 6.  But Aetna's CPB 615 is based on Aetna's evidence-based assessment that facial surgery has not been shown to be medically effective for treatment of gender dysphoria. *See* Dkt. 102 at 9-10, 14-17, 34.  It is that assessment, as reflected in CPB 615, that Plaintiffs' Plan sponsors directed Aetna to follow in making medical necessity determinations under their Plans. *See* Order at 27; Dkt. 102 at 5-10, 12, 21-23.  Indeed, it is undisputed that Dr. Hominick's employer, B&L, expressly directed Aetna to apply its CPB 615 *to her individual claim. See* Dkt. 102 at 5-10, 21-22.

### 2.      Aetna's appeal may be mooted absent a stay.

Plaintiffs cannot deny that the injunctive relief they seek will irreversibly alter the status quo—Plaintiffs presumably will receive their surgeries, paid for by their Plans—all before the resolution of their claims on the merits.  Nor do they seriously contest that altering the status quo before the Second Circuit can hear Aetna's appeal could very likely moot the appeal.

Instead, they argue, incredibly, that it does not matter if Aetna's appeal is mooted and these two Plaintiffs preemptively receive benefits to which they are not legally entitled because Aetna will have an opportunity later to enforce *Skrmetti* against the other named Plaintiffs and the rest of the putative class.  *See* Opp. at 10.  Even apart from the obvious conflict of interest this creates between these two Plaintiffs and the class they purport to represent, this argument also ignores that Aetna has a right to appeal the relief as to *these two Plaintiffs,* who seek to disrupt the status quo and who necessitate a stay to preserve the status quo pending appeal.

Plaintiffs' specious arguments against mootness only emphasize the need for a stay.  If, as Plaintiffs insist, they are correct on the merits of *Skrmetti*, then allowing the appeal to proceed would protect not only their own interests but those of the other Plaintiffs and the prospective class.

The Second Circuit has recognized that the loss of appellate rights is a "quintessential form of prejudice." *In re County Squire Assocs. of Carle Place, L.P.,* 203 B.R. 182, 183 (2d Cir. BAP 1996). "Where the denial of a stay pending appeal risks mooting *any* appeal of *significant* claims of error, the irreparable harm requirement is satisfied." *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 348 (S.D.N.Y. 2007) (original emphasis).[5]

---

[5] *Skrmetti*, at the very least, raises a serious question of law as to whether Plaintiffs are legally entitled to GAFR benefits.  Plaintiffs say we need not wait to allow the Second Circuit to consider that question, however, because the payments will come, not from Aetna, but from the Plans.  Opp. at 7, 9.  But once the surgeries have been performed, the status quo will have irreversibly changed.  And if Aetna has authorized coverage and expended Plan funds contrary to Plan terms the Court's Order does not purport to modify and contrary to medical science the Court has not found invalid and contrary to unambiguous

## C.    A Stay Will Not Injure, But Rather Will Protect, Other Interested Parties

Plaintiffs assert that "Aetna is required to administer plans in accordance with applicable federal law and can suffer no injury from this compliance." Opp. at 5. But it is equally true that Plaintiffs' rights under the ACA likewise are defined by federal law, and they can suffer no injury from the correct application of that law. Plaintiffs' argument begs the threshold legal question Aetna's appeal would allow the Second Circuit to address.

If a stay is granted pending appeal and Plaintiffs prevail before the Second Circuit on that legal question—despite the overwhelming precedent against them—they will suffer only the delay necessary to allow the appeal to proceed.

Absent a stay, however, the status quo will be irreversibly altered, possibly mooting Aetna's appeal even before the Second Circuit can consider the very legal question that defines both parties' rights and responsibilities. And even if Aetna were to prevail on appeal, then the employers will already have paid benefits they do not legally owe (with no assurance whatsoever that those funds may be recovered and returned to the employers' Plans) and Plaintiffs will already have received benefits to which they are not legally entitled.

## D.    A Stay Will Promote Important Public Interests

It is unsurprising that Plaintiffs dismiss the important public interests underlying the doctrine of *stare decisis* given that their entire case depends upon ignoring the controlling and unambiguous Supreme Court precedent of *Skrmetti*. The Second Circuit recognizes that interest, however, even if Plaintiffs do not. "[W]e are bound to follow the existing precedent of the Supreme

---

Supreme Court authority, Aetna very likely could be responsible to the Plan sponsors for unwarranted use of Plan funds. And in any event, the Second Circuit has recognized that it is "very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999). *See also Mercer Health & Benefits LLC v. DiGregorio*, 307 F. Supp. 3d 326, 347 (S.D.N.Y. 2018) ("It is well established in this Circuit that the loss of client relationships and customer goodwill … generally constitutes irreparable harm.").

Court until that Court tells us otherwise." *Baroni v. Port Auth. of New York & New Jersey,* 161 F.4th 48, 57 (2d Cir. 2025); *see also Ramirez v. Town of Oxford,* No. 21-cv-240 (JAM), 2022 WL 3646203, at *9 (D. Conn. Aug. 24, 2022) ("[T]he result in a given Supreme Court case binds all lower courts [and] the reasoning of a Supreme Court case also binds lower courts.").

The stay Aetna requests here will promote stability, predictability, and fairness in the law by allowing the Second Circuit to consider the precedential impact of *Skrmetti* before Aetna and Plaintiffs' plan sponsors suffer the irreparable harm caused by the injunction.

**E.    The Court Should Deny Plaintiffs' Motion to Enforce and Grant At Least a Temporary Stay.**

The question whether Plaintiffs are entitled to the injunctive relief they request, and conversely whether their Plans owe the benefits they seek, hinges entirely on the application of the Supreme Court's decision in *Skrmetti*. A stay is appropriate to allow that Second Circuit to address this controlling question of law.

In the alternative, Aetna requests a temporary stay for 30 days to allow Aetna to seek a stay from the Second Circuit. *See Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 235-36 (2d Cir. 1999) (district court may issue temporary stay to permit the appellate court an opportunity to consider an application for a stay; such brief stays are "frequently issued."); *Bronx Harbor Health Care Complex, Inc. v. McDonald*, No. 24-cv-1573 (GTS)(PJE), 2025 WL 3761723, at *11 (N.D.N.Y. Dec. 30, 2025); *Doe v. Gonzales*, 386 F. Supp. 2d 66, 83 (D. Conn. 2005).

## CONCLUSION

Aetna requests that the Court stay and suspend its order and injunction dated March 8, 2026, pending Aetna's appeal to the Second Circuit. Aetna also requests that the Court deny Plaintiffs' Emergency Motion in its entirety.

10

Respectfully submitted,

*Theodore J. Tucci*
Theodore J. Tucci (ct05249)
Abby M. Warren (ct30077)
Christopher A. Costain (ct31612)
Robinson & Cole LLP
One State Street
Hartford, CT 06103
Tel.: (860) 275-8200
Fax: (860) 275-8299
ttucci@rc.com
awarren@rc.com
ccostain@rc.com

Sarah Reeves (*pro hac vice*)
Earl B. Austin (*pro hac vice*)
Baker Botts LLP
30 Rockefeller Plaza
New York, NY 10112
Tel.: (212) 408-2649
Fax: (212) 408-2449
sarah.reeves@bakerbotts.com
earl.austin@bakerbotts.com

*Counsel for Defendant*
*Aetna Life Insurance Company*

11