**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

<table>
<tr><td>

BINAH GORDON, *et al.*,
    *Plaintiffs*,

v.

AETNA LIFE INSURANCE COMPANY,
    *Defendant.*

</td><td>

No. 3:24-cv-1447 (VAB)

</td></tr>
</table>

**RULING AND ORDER ON PENDING MOTIONS**

Previously, Dr. Homnick and Dr. Herley ("Plaintiffs") filed a motion for a preliminary injunction against Aetna Life Insurance Company ("Defendant") to enjoin the application of Aetna's Clinical Policy Bulletin 0615 ("CPB 0615"), which excludes gender-affirming facial reconstruction surgeries when used to treat gender dysphoria from insurance coverage.

This Court granted the Plaintiffs' motion for a preliminary injunction and required Aetna to make individualized coverage determinations as to Dr. Homnick and Dr. Herley only, on the basis of medical necessity, as opposed to categorically excluding their claims under CPB 0615.

The Plaintiffs have filed an emergency motion requesting that the Court enforce its preliminary injunction and order Aetna to show cause why it shall not be held in contempt for its refusal to comply with the Court's injunction. *See* Emergency Mot. to Enforce, ECF No. 155 ("Mot. to Enforce").

Aetna has filed a motion to stay the Court's order pending the interlocutory appeal of the Court's ruling granting the Plaintiffs' motion for a preliminary injunction. Mot. to Stay, ECF No. 157; *see* Not. of Appeal, ECF No. 156.

For the following reasons, Aetna's motion to stay is **DENIED** and the Plaintiffs' motion to enforce is **DENIED** without prejudice to renewal.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Binah Gordon, Kay Mayers, Alma Avalle, Jamie Homnick, Gennifer Herley, and S.N. filed a Complaint on behalf of themselves and a putative class of similarly situated individuals against Aetna Life Insurance Company alleging a violation of the prohibition of discrimination on the basis of sex in federally funded health programs and activities under Section 1557 of the Affordable Care Act ("ACA"), 42 U.S.C. § 18116 ("Section 1557"); Compl., ECF No. 1.

The Plaintiffs are transgender women who are seeking or have received gender-affirming facial reconstruction ("GAFR"), which they allege is or was medically necessary to treat their gender dysphoria. Gender dysphoria is defined as "a marked incongruence between one's experienced/expressed gender and assigned gender of at least six months' duration," as manifested by at least two characteristics of an enumerated list. *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (5th ed., text revision 2022) ("DSM-5").

They are or were enrolled in health insurance plans that are designed, sold, or administered by Aetna and funded by their or their spouses' employers. Aetna is a health insurance company that receives federal financial assistance, and is therefore required to comply with the prohibition of discrimination on the basis of sex in federally funded health programs and activities under Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116.

### B.  Procedural History

On September 4, 2024, the Plaintiffs filed a Complaint on behalf of themselves and a putative class of similarly situated individuals against Aetna challenging Aetna's categorical exclusion of gender-affirming facial reconstruction procedures used to treat gender dysphoria. Complaint, ECF No. 1.

2

On December 3, 2024, the Plaintiffs filed an Amended Complaint. Am. Compl., ECF No. 46.

On March 3, 2025, the Plaintiffs filed a Second Amended Complaint. Second Am. Compl., ECF No. 60.

On March 3, 2025, Jamie Homnick and Gennifer Herley separately filed a motion for a preliminary injunction to enjoin Aetna from enforcing the categorical exclusion of claims for gender-affirming facial reconstruction as outlined in Clinical Policy Bulletin 0615. Mot. for Prelim. Inj., ECF No. 61. On the same day, Dr. Homnick and Dr. Herley filed a memorandum in support of the motion for a preliminary injunction. Mem. in Support of Mot. for Prelim. Inj., ECF No. 62.

On April 11, 2025, Aetna filed a motion to dismiss the Plaintiffs' Second Amended Complaint. Mot. to Dismiss, ECF No. 78.

On January 8, 2026, the Court held a hearing on the pending motion to dismiss, as well as the pending motion for a preliminary injunction, and ordered supplemental briefing. *See* Minute Entry, ECF No. 138.

On March 8, 2026, the Court denied Aetna's motion to dismiss and granted the motion for a preliminary injunction brought by Dr. Homnick and Dr. Herley. Order, ECF No. 153. As a result of this Ruling and Order, Aetna was required to make individualized coverage determinations as to Dr. Homnick and Dr. Herley only, on the basis of medical necessity, as opposed to categorically excluding their claims under CPB 0615.

On March 11, 2026, counsel for the Plaintiffs asked Aetna's counsel, in advance of a scheduled meet-and-confer, how Aetna intended to re-process Dr. Herley and Dr. Homnick's claims. Mot. to Enforce at 2. During the meet-and-confer, Aetna's counsel allegedly informed

Plaintiffs' counsel that Aetna was considering whether to appeal the Order. Mem. in Opp. to Mot. to Enforce at 6, n.1. On March 20, 2026, Plaintiffs' counsel requested a status update by email. Mot. to Enforce at 2. On March 23, 2026, Aetna's counsel informed Plaintiffs' counsel that Aetna intended to appeal the Court's Order and would also seek a stay. *Id.* On March 27, 2026, Plaintiffs' counsel sent an e-mail to Aetna's counsel asking what actions Aetna had taken to comply with the injunction. *Id.* On March 30, 2026, Aetna's counsel sent an e-mail to Plaintiffs' counsel arguing that Aetna would face irreparable harm if required to comply with the Court's Order. *Id.* at 3.

On March 31, 2026, Dr. Herley and Dr. Homnick filed an emergency motion to enforce the Court's ruling and order granting the preliminary injunction. The Plaintiffs also asked the Court to order Aetna to show cause why it should not be held in contempt for its alleged refusal to comply with this Court's order. Mot. to Enforce.

On March 31, 2026, Aetna filed a notice of appeal and a motion to stay the injunction pending appeal. Mot. to Stay, ECF No. 157.

On April 2, 2026, Aetna filed a memorandum in opposition to the Plaintiffs' motion to enforce. Mem. in Opp. to Emergency Mot. to Enforce, ECF No. 158 ("Mem. in Opp. to Mot. to Enforce").

On April 10, 2026, the Plaintiffs filed a memorandum in opposition to Aetna's motion to stay. Mem. in Opp. to Mot. to Stay, ECF No. 163 ("Mem. in Opp. to Mot. to Stay").

On April 17, 2026, Aetna filed its reply to the Plaintiffs' memorandum in opposition. Reply, ECF No. 167 ("Reply").

## II.    STANDARD OF REVIEW

### A.  Motion to Stay

In determining whether a stay is appropriate pending appeal, courts in the Second Circuit consider four factors: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993) (internal quotation marks omitted); *Mitchell v. City of New Haven*, 854 F.Supp.2d 238, 255 (D. Conn. 2012) (denying stay after evaluating the four *Hirschfeld* factors).

"Although the weighing of these factors is flexible and within the Court's discretion, the movant's burden of establishing a favorable balance of these factors is a heavy one and more commonly stay requests will be denied." *Optimum Shipping & Trading, S.A. v. Prestige Marine Services PTE. LTD.*, 613 F.Supp.2d 502, 503 (S.D.N.Y. 2009) (internal quotations and citation omitted).

### B.  Motion to Enforce

Under Rule 70, a court may enforce a judgment by ordering a disobedient party "to perform any other specific act [after] the party fail[ed] to comply within the time specified" or by holding the disobedient party in contempt. Fed. R. Civ. P. 70(a), (e). "A contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (citing *Hart Shaffner & Marx v. Alexander's Dep't Stores, Inc.*, 341 F.2d 101, 102 (2d Cir. 1965)). In the Second Circuit, the movant requesting a finding of contempt

must establish that (1) the order that the contemnor failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the contemnor has not diligently attempted to comply in a reasonable manner. *Id.* (citing *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989)).

## III.    DISCUSSION

### A.  The Motion to Stay

Aetna argues that it meets the four-factor test articulated in *Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993).

First, Aetna argues it will suffer irreparable harm because the Court's Order "alters or modifies the movants' contractual or legal responsibilities or liabilities to third parties over whom the court issuing the injunction has no jurisdiction" and "because Aetna cannot itself authorize the expenditure of Plan funds to pay for these services, payment ultimately can come only from Aetna itself." Mem. of Law in Support of Mot. to Stay 29, 31, ECF No. 157-1 ("Mot. to Stay").

Second, Aetna argues that there is a substantial probability it will succeed on appeal since "the Fourth, Eighth, Ninth, Tenth, and Eleventh Circuits all have applied *Skrmetti* to hold that statutes or health benefit plans that allow medically necessary treatments for certain diagnoses but bar the same treatments for gender dysphoria are not *per se* or facially discriminatory." *Id.* at 9-10 (citing *United States v. Skrmetti*, 605 U.S. 495 (2025)).

Third, Aetna argues that a stay "will protect important rights of the third-party employers" while posing "no meaningful harm from a short delay" to the Plaintiffs. *Id.* at 34.

Finally, Aetna argues that the Court's injunction "undermines the public policy goals of ERISA in a manner that, if allowed to stand, might 'unduly discourage employers from offering

6

welfare plans in the first place,'" *id.* at 36 (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)), and that the principle of stare decisis requires adherence to the Supreme Court's decision in *Skrmetti*.

In response, the Plaintiffs argue first that the Court's Order does not subject Aetna to irreparable harm by requiring it "to administer plans in accordance with applicable federal law" nor does it interfere with Aetna's contractual obligations, since the plan sponsors "willingly cede to Aetna the discretionary authority to determine members' entitlement to benefits." Mem. in Opp. to Mot. to Stay at 10. And "[e]ven if Aetna's contracts with Bausch & Lomb and MTA explicitly incorporated the GAFR Exclusion," the Plaintiffs argue that "Aetna's obligation to comply with a federal court order supersedes any conflicting term in a private contract." *Id.* at 11.

And because the Order narrowly "applies to only two women who participate in two plans sponsored by two employers," *id.* at 13, in their view, Aetna cannot establish irreparable harm based on potential loss of goodwill or business relationships. Nor can Aetna argue it will suffer monetary harm where the Plaintiffs "are only seeking declaratory and injunctive relief" and "have never asked Aetna to bear the costs of their future surgeries," especially since "Aetna has no contractual obligation with their plan sponsors to do so." *Id.* at 15.

Second, they argue that Aetna has not shown a substantial probability of success on appeal, since the Court's Order already considered Aetna's arguments and decided against them. Specifically, "[t]he Fourth Circuit's recent ruling in *Anderson v. Crouch* does not change determinative distinctions in law and fact between the present case and *Skrmetti*," *Skrmetti* does not apply to statutory discrimination claims, because "the Court in *Skrmetti* expressly refused to

speculate about how the decision might apply to statutory sex discrimination claims, if at all," and this Court is not bound by the out-of-circuit authority Aetna cites. *Id.* at 20-21.

Third, the Plaintiffs argue that Aetna's focus on the plan sponsors "misstates the governing standard and ignores the only interests that matter here: those of Drs. Homnick and Herley." *Id.* at 17. They argue that issuance of a stay would cause substantial injury to the Plaintiffs for the same reasons underlying the irreparable harm prong of the Court's preliminary injunction analysis. *Id.* at 16.

Finally, the Plaintiffs argue that Aetna's identified public interests are overridden by the fact that "ERISA does not preempt or invalidate federal anti-discrimination laws." *Id.* at 19. And, in any case, "Aetna fails to provide any evidence that requiring compliance with anti-discrimination laws deters employers from providing healthcare benefit plans." *Id.*

In reply, Aetna argues that, without a stay, it would be required to "simply approve their requests for facial feminization surgery" and the plan sponsors would be required to "summarily pay for the procedures," thereby "irreparably alter[ing] the status quo as to moot Aetna's appeal" before the Second Circuit may address "a dispositive question of law regarding the application of *Skrmetti* on which five other circuits have already unanimously aligned." Reply at 6, 9.

The Court disagrees.

In the Second Circuit, "[t]he probability of success on appeal and irreparable harm are 'the two most critical factors.'" *Delux Pub. Charter, LLC v. Cnty. of Westchester*, No. 22-CV-01930 (PMH), 2024 WL 3744167, at *1 (S.D.N.Y. July 25, 2024) (quoting *Doe v. Trump Corp.*, No. 18-CV-09936, 2020 WL 2538400, at *6 (S.D.N.Y. May 18, 2020)). And "[i]n determining whether there is a substantial likelihood that the moving party will prevail on the merits of his appeal, [the Second Circuit] seek[s] to determine whether the district court applied the proper

legal principles and acted within the bounds of its discretion." *United States v. E. Air Lines, Inc.*, 923 F.2d 241, 244 (2d Cir. 1991). While other courts of appeal have read *Skrmetti* to deny claims brought there under *Bostock*, *see Anderson v. Crouch,* No. 22-1927, 2026 WL 667919 (4th Cir. Mar. 10, 2026); *Pritchard on behalf of C.P. v. Blue Cross Blue Shield of Ill.*, 159 F.4th 646 (9th Cir. 2025); *Lange v. Houston Co.,* 152 F.4th 1245 (11th Cir. 2025) (*en banc*); *Brandt by and through Brandt v. Griffin*, 147 F.4th 867 (8th Cir. 2025); *Poe by and through Poe v. Drummond*, 149 F.4th 1107 (10th Cir. 2025), the Supreme Court in *Skrmetti* did not "consider[ ] whether *Bostock's* reasoning reaches beyond the Title VII context, and we need not do so here." *Skrmetti*, 605 U.S. at 520.

Put another way, there is binding precedent on how to address the statutory claims of sex discrimination presented in this case: *Bostock*, not *Skrmetti*. *See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989) (holding that, if the "precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions"). *Bostock* and its progeny thus dictate the "proper legal principles" to be applied here. *United States v. E. Air Lines, Inc.*, 923 F.2d at 244.

As to Aetna's argument that under *Bostock's* logic alone, sex is not a but-for cause of the policy's operation because even if the Plaintiffs' sex were to change, they would not receive a medical necessity determination because they would lack a qualifying medical diagnosis, Mot. to Stay at 18, this Court already determined that "because the availability of a medical necessity determination would change based on the patient's sex assigned at birth, the 'but-for' test to establish sex discrimination set forth in *Bostock* has been satisfied." Order at 51.

And if Dr. Homnick and Dr. Herley's sex assigned at birth changed, and they sought the same procedures to affirm the same gender identity they possess, they would necessarily receive a medical necessity determination because they would not seek these procedures "as a component of a gender transition." *See Gender Affirming Surgery, Clinical Policy Bulletin 0615*, Aetna Inc. (Apr. 30, 2026, at 1:13 p.m. ET), https://www.aetna.com/cpb/medical/data/600_699/0615.html. Applying *Bostock's* but-for causation standard and changing *only* the Plaintiffs' sex would yield a non-discriminatory application of CPB 0615. As a result, based on the current law — whose scope should be further determined by the Supreme Court, not this Court — and the underlying facts in this case, not some other one not before this Court, Aetna does not possess a substantial likelihood of success on appeal.

Of course, "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury that the plaintiff will suffer absent the stay; simply stated, 'more of one excuses less of the other.'" *In re Anderson*, 560 B.R. 84, 91 (S.D.N.Y. 2016) (quoting *In re 473 West End Realty Corp.*, 507 B.R. at 502 and citing *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002)). The Court thus also considers Aetna's allegedly irreparable injuries: complying with the injunction would alter or modify its contractual obligations towards the plan sponsors, and denying the stay would moot Aetna's appeal.

As to the first alleged injury, the plan sponsors expressly delegated coverage determinations for gender-affirming care to Aetna, and agreed to cover the costs of surgeries deemed medically necessary under Aetna's qualifications. *See* Order at 27 ("Although Aetna argues that it does not control the design of, or payments under, the Plaintiffs' plans, a favorable decision from this Court would not modify the plans themselves. As is, the plans delegate all

coverage determinations for gender-affirming procedures to Aetna."). And Aetna suffers no irreparable harm from complying with federal law. Order at 53; *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 620 (S.D.N.Y. 2018) (defendant "cannot suffer any harm from an injunction that terminates an unlawful practice").

As to the second alleged injury, the majority of courts in this Circuit have found that the mooting of an appeal, without more, does not constitute irreparable injury. *State Emps. Fed. Credit Union v. S.G.F. Props., LLC*, No. 1:15-CV-00418 (MAD), 2015 WL 7573220, at *3 (N.D.N.Y. Nov. 25, 2015) ("In certain circumstances, the risk that an appeal may become moot in the absence of a stay pending appeal satisfies the irreparable injury requirement. However, a majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm.") (internal citations and quotation marks omitted); *Eastman Kodak Co. v. Bayer Corp.*, No. 04 CIV. 5132 (MGC), 2005 WL 3090985, at *2 (S.D.N.Y. Nov. 18, 2005) ("The only irreparable injury that plaintiff contends he may suffer in the absence of a stay is the mooting of his appeal by the issuance of a favorable benefit determination during the pendency of the appeal . . . Plaintiff cites several cases in which a stay was granted, thereby preventing the mooting of the movant's appeal. However, in each of these cases, the mooting of the appeal was not itself the irreparable harm that the movant might have suffered in the absence of a stay."); *In re DBSD N. Am., Inc.*, No. 09 Civ. 10156, 2010 WL 1838630, at *1 (S.D.N.Y. May 7, 2010) ("There is a division of authority as to whether the risk that an appeal may become moot in the absence of a stay pending appeal constitutes threatened irreparable injury."); *In re Adelphia Commc'ns Corp.,* 361 B.R. 337, 347 (S.D.N.Y. 2007) ("A majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm.") (collecting cases); *In re Mongiello*, No. 24-CV-694 (CS), 2024 WL 729865, at *2 (S.D.N.Y. Feb. 22, 2024),

reconsideration denied (Feb. 23, 2024) ("[T]he mere threat of equitable mootness is not grounds, per se, for granting stay relief."). And the Second Circuit has not decided this question. *See id.* ("Courts are divided, and the Second Circuit has not yet spoken, on the issue of whether the risk that an appeal may become moot in the absence of a stay pending appeal satisfies the irreparable injury requirement."); *but see U.S. S.E.C. v. Daspin*, 557 F. App'x 46, 49 (2d Cir. 2014) (finding that the movant was not entitled to a stay pending appeal despite the fact that his appeal would be mooted absent a stay).

Here, absent other injury, the mooting of an appeal is insufficient to warrant a stay of the Court's order. *Cf. In re Moreau*, 135 B.R. 209, 215 (N.D.N.Y. 1992) (finding that the potential mooting of an appeal, coupled with the risk of substantial monetary loss, is sufficient to establish irreparable injury); *see also In re St. Johnsbury Trucking Co.,* 185 B.R. at 690 n. 1 (concluding that the risk of the government's appeal being mooted satisfied the irreparable injury requirement only because mootness would preclude the government from, *inter alia,* enforcing provisions of federal law; it was "that threatened loss rather than the loss of the right to appeal *vel non* that [gave] rise to the Court's irreparable injury finding").

Significantly, the issue central to Aetna's appeal, whether CPB 0615 discriminates on the basis of sex in violation of Section 1557, is not mooted by Aetna's compliance with the Court's Order, since that issue remains central to the remaining plaintiffs' claims as well. *See Liberty Synergistics, Inc. v. Microflo Ltd.*, No. 11-CV-523 MKB, 2013 WL 101427, at *2 n.3 (E.D.N.Y. Jan. 8, 2013) ("Moreover, courts that have found that the threat of mootness establishes an irreparable injury have done so where 'the denial of a stay pending appeal risks mooting any appeal of a significant claim of error.'" (citing *In re DBSD N. Am., Inc.,* 2010 WL 1838630, at *1)); *see also In re Adelphia Commc'ns Corp.,* 361 B.R. at 348 ("[T]he fact is that loss of

12

appellate rights is a quintessential form of prejudice. Thus, where the denial of a stay pending appeal risks mooting any appeal of significant claims of error, the irreparable harm requirement is satisfied." (internal quotation marks and citation omitted)).

The last two *Hirschfeld* factors focus on whether another party will suffer substantial injury if a stay is issued and what public interests may be affected. *Hirschfeld*, 984 F.2d at 39 ("(3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected.")[1].

As the Court already determined, Dr. Homnick and Dr. Herley face significant harm in the absence of the injunction. Order at 45. And while "the employers and plan administrators may have an interest in the outcome of this litigation," the specific relief the Plaintiffs seek in the injunction simply requires Aetna to comply with federal anti-discrimination law. *Id.* at 2. Aetna seeks to assert the plan sponsors' alleged interests, but these plan sponsors have neither sought to intervene in this matter nor have they lost their independent ability to alter their plans to protect their alleged interests. Finally, denying the motion to stay preserves the public's interest in

---

[1] Aetna argues that granting a stay will protect the rights of the third-party employers and that the Plaintiffs "face no meaningful harm from a short delay while the Second Circuit considers Aetna's appeal." Mot. to Stay at 34. Next, Aetna argues that denying the stay "undermines the public policy goals of ERISA in a manner that, if allowed to stand, might 'unduly discourage employers from offering welfare plans in the first place.'" *Id.* at 35-36 (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)). Aetna also argues that, in light of the ruling in *Skrmetti*, the principle of stare decisis commands issuance of the motion to stay. *Id.* at 36.

The Plaintiffs respond that the issuance of a stay would cause substantial injury to them for the same reasons animating the irreparable harm prong of the Court's preliminary injunction analysis. Mem. in Opp. to Mot. to Stay at 16. The Plaintiffs argue that Aetna's focus on the plan sponsors, which the Court has already decided are not necessary parties to the litigation, "misstates the governing standard and ignores the only interests that matter here: those of Drs. Homnick and Herley." *Id.* at 17. To support this argument, the Plaintiffs note that "Drs. Homnick's and Herley's plan sponsors have had ample opportunity to intervene in this litigation and have chosen not to." *Id.* at 18. In response to the public interests prong, the Plaintiffs argue that "ERISA does not preempt or invalidate federal anti-discrimination laws" and "Aetna fails to provide any evidence that requiring compliance with anti-discrimination laws deters employers from providing healthcare benefit plans." *Id.* at 19.

"furthering access to medically necessary care and requiring Aetna to administer its health insurance plans according to the law." Order at 53.

Accordingly, Aetna's motion to stay will be denied.

### B. The Motion to Enforce

The Plaintiffs move to enforce the Court's Order granting the motion for a preliminary injunction and ask this Court to order Aetna to show cause why it should not be held in contempt for its failure to comply with the Court's Order. Mot. to Enforce at 1.

In support of their motion, the Plaintiffs argue that "in the absence of [] a stay, [Aetna's] compliance with the Preliminary Injunction is mandatory." *Id.* at 4. The Plaintiffs also argue that the Court should issue an order to show cause because (1) the Court's Order was clear and unambiguous; (2) the evidence of noncompliance is clear and convincing; and (3) Aetna has not diligently attempted to comply. *Id.* at 5 (citing *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004)).

In response, Aetna argues that the relief requested is not warranted because it "is entitled to notice an appeal of the Order and to request that the Order be stayed pending appeal." Mem. in Opp. to Mot. to Enforce at 5. Aetna also argues that the Plaintiffs "cannot demonstrate good cause for the emergency relief they seek as required under Local Rule 7(a)(6)" since "the Court's Order did not require immediate compliance by Aetna or set any fixed deadline for compliance." *Id.* at 5, 10.

The Court agrees, in part.

The Court did not require Aetna to make the individualized medical necessity determinations "immediately" or by a fixed deadline. Aetna thus has not "fail[ed] to comply within the time specified." Fed. R. Civ. P. 70(a). Nonetheless, the Court's Order was clear and

unambiguous, as is Aetna's failure to comply thus far. *See N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d at 1351 ("A court's inherent power to hold a party in civil contempt may be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply."). While the Court does not yet find it appropriate to require Aetna to show cause as to why it has not complied with its Order, now having denied Aetna's motion to stay, the Court expects Aetna to act with reasonable diligence in complying. To the extent that Aetna fails to make reasonable and diligent steps to comply with the Court's Order, the Plaintiffs may renew their motion.

Accordingly, the Plaintiffs' motion to enforce will be denied without prejudice to renewal at a later date.

## IV.    CONCLUSION

For the foregoing reasons, Aetna's motion to stay is **DENIED** and the Plaintiffs' motion to enforce is **DENIED** without prejudice to renewal.

**SO ORDERED** at New Haven, Connecticut, this 15th day of May, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE